IN THE HOUSTON 14TH COURT OF APPEALS OF TEXAS

WRIT NO. 01-15-00295-CR

FILED IN
1ST COURT OF APPEALS
HOUSTON, TEXAS

MAR 31 2015

CHRISTOPHER A. PRINE
CLERK

IN RE. THOMAS W. FLORENCE, RELATOR

Petition For Writ Of Mandamus To ~~ORDER~~ TRIAL COURT TO FOLLOW THE LAW DISMISS 10CR1217 CRIMINAL INDICTMENT

COMES NOW PRO SE, APPLICANT (RELATOR) TO MOVE THE COURT (LAW CLERKS) TO LIBERALLY CONSTRUE MY PRO SE PLEADINGS, HAINES v. KERNER. 404 US 519, 520 (1972).

SEE, (HABEAS CORPUS CASES). PRO SE ALLEGATIONS ACCEPTED AS TRUE UNLESS THEY ARE CLEARLY FRIVOLOUS, U.S. v. HAYES. 622 F.2d 66 (3RD CIR. 1980), BLAND v. CALIFORNIA DEPT. OF CORR. 20 F3d 1469 (9TH CIR 1994), FARR v. STOKES. 423 F3d 1024 (9TH CIR. 2005). PETITIONER's UNDISPUTED STATEMENTS HELD TO BE TRUE.

UNDISPUTED MATERIAL FACTUAL ISSUES HERE THE GALVESTON POLICE DEPARTMENT OFFICER CLEMENTE J. GARCIA III. FILED A G.P.D. #2010-13986 CHIEF FABRICATED POLICE REPORT ON 2-26-27-2010 ALLEGING FABRICATED EVENTS THAT ALLEGALLY OCCURED ON Id. DATES.

GALVESTON POLICE DEPARTMENT DETECTIVE, HOLLY JOHNSON, USED Id. REPORT #2010-13986 TO OBTAIN A ARREST WARRANT BASED ON Id. REPORT TO CHARGE ME VIA G.P.D. #2010-13986, AFFIDAVIT ~~AND~~ COMPLAINT FOR ARREST WARRANT ON APRIL 22 2010. ~~COMPLAINT~~ (ALLEGEDLY) FILED IN

1

JUSTICE OF THE PEACE PCT. #1, SEE, EXHIBIT A(a) A(b) WHICH VERIFIES NO SUCH RECORD OR FILING (SEE, T.C.C.P. ART. 15.26).

RELATOR MOVE COURT TO TAKE MANDATED I.R.E. 201 JUDICIAL NOTICE OF LOCKRIDGE FRANKS v. DELAWARE HEARING (APPEAL # 01-11-00823CR) R.R. VOL. 1-2. SEE, KINDLEY v. STATE 879 SW2d 263, 264, (TEX. APP. HOUSTON 14 DIST. 198 ) APPELLANT (RELATOR) MUST PRESENT AR- GUMENT, RECORD AND SPECIFIC POINTS FACTS. ( SUPPORTED BY RECORD, Id 264.)

SEE, LOCKRIDGE, R.R. VOL 5 of 9 P. 176, EX. A12 ADMIT- TED TO BY FORMER CHIEF A.D.A. TRIAL COURT LONNIE COX. THE ONLY DOCUMENTS PRESENTED TO THE 7-14-2010 GRAND JURY WAS THE FABRICATED (TESTIMONY) GPD # 2010-13986, CHIEF REPORT AND GPD # 2010-13986 CHARTER 45. ART'S 45.018 (a); 45.019 AFFIDAVIT AND COMPLAINT FOR ARREST WARRANT FILED (AL- LEGEDLY) IN J.P. CT. PCT. #1 1922 MOODY AVE. GAL- VESTON, TX. 77550, ( FRANKS 7-29-2011 EXHIBITS R.R. VOL. 2, SUPRA).

C. GARCIA's AND M. JOHNSON's FALSE TESTIMONY IN Id. # 2010-13986 WAS TESTIMONIAL, SEE PAUL v. STATE __ SW 3d __ # 12 10-0028CR. (TEX. APP. TYLER 2012).

SEE, R.R. VOL. 5 of 9, P. 176, SUPRA NO VERBAL TESTIMONY FROM NO ONE WAS PRESENTED TO

2

THE GRAND JURY, Id. 176,, 'KINDLEY, 264, SUPRA.

SEE, EXPARTE THOMAS, 956 SW2d 782,786 (TEX. APP. WACO 1997), CASANOVA v. CITY OF BROOKSHIRE, 119 F. SUPP. 2d 639, 651, 652 (S.D. TEX. 2001), THE STANDARD(S) FOR PROBABLE CAUSE TO INDICT IS THE SAME AS THAT FOR ARREST. THOMAS, 786 SUPRA.

BY THE STATE PRESENTING ONLY GPD#2010-13986 NULL, INVALIDATED, VOID AFFIDAVIT FOR ARREST WARRANT AND COMPLAINT, (ART. 45.019, REQUISITES), SEE, EXHIBIT A2-A3 ATTACHED, STATE v. ZORRILLA, 404 SW3d 734, 737 N. 3 CITING, Id. 45.018; 45.019, (TEX. APP. SAN ANTONIO 2013)), TO THE GRAND JURY TO ISSUE AN INDICTMENT BASED ON GPD#2010-13-986, SUPRA.

D. DO NOT INVEST JURISDICTION OR SUBJECT-MATTER JURISDICTION UPON THE GRAND JURY TO ISSUE THE 7-14-2010, INDICTMENT, SEE, EXPARTE THOMAS, 786, SUPRA. EXH. A14

THE TRIAL COURT ALSO DID NOT HAVE SUBJECT-MATTER JURISDICTION OVER THE RELATOR TO ISSUE ANY NON FAVORABLE JUDGMENTS AGAINST RELATOR.

THE TRIAL COURT ONLY HAD JURISDICTION TO DISMISS CAUSE NO. 10CR1217, SEE, ZORRILLA, SUPRA.

SEE, NIX v. STATE, 65 SW3d 664, 668 (TEX,

3

APP. CRIM. 2001), (APPEALED FROM HOUSTON 14TH COURT OF APPEALS) HELD: A JUDGMENT FOR A CRIME (GPD#2010-13986, 2-26-27-2010, ALLEGE CRIME) (10CR1217) IS VOID WHEN THE DOCUMENT (GPD#2010-13986, ART. 45.018; 45.019 AFFIDAVIT AND COMPLAINT) TO BE THE CHARGING INSTRUMENT (G.P.D.#2010-13986, 4-22-2010 ARREST / CHARGING DOCUMENT R.R. VOL. 2 OF 2 FRANKS EXHIBIT'S, SUPRA). I.E. INDICTMENT, INFORMATION OR COMPLAINT

*DOES NOT* SATISFY CONSTITUTIONAL REQUISITES OF A CHARGING INSTRUMENT, THUS THE TRIAL COURT HAS NO JURISDICTION OVER (RELATOR), DEFENDANT. THE TRIAL COURT LACKS SUBJECT-MATTER JURISDICTION ~~OR~~ OVER (GPD#2010-13986) OFFENCE CHARGED.

SEE. Id. 664, 668, FOR A [FN] JUDGMENT TO BE VOID THE RECORD MUST LEAVE NO QUESTION, ABOUT THE EXISTANCE OF THE FUNDAMENTAL DEFECT.

SEE, RELATOR'S FRANKS 10CR1217 7-29-2011, EXHIBIT'S, R.R. VOL. 2, SUPRA.

THERE IS NO QUESTION GPD#2010-13986 CHARGING 4-22-2010 INSTRUMENT FILED UNDER ART. 45.018(a) DOES NOT MEET ART. 45.019(a)(2),(4),(7) CONSTITUTIONAL REQUISIDES, PURPORTING TO BE AN CHARGING AND ARREST INSTRUMENT, SEE N.D.K. ~~~~ 664, 668, SUPRA.

FN1, 10CR1217, DERIVED FROM #2010-13986

4

A JUDGMENT VOIDING DEFECT SHOULD BE ONE THAT CAN BE ASCERTAINED FROM (KINDLEY 264) RECORD WITH LITTLE DIFFICULTY.

SEE. 10CR12017, EXHIBIT'S 7-29-2011 R.R. VOL 2 AND AUGUST 2011 R.R. VOL. 5 of 9 P.'s 172-176.

THE RECORD AND EXHIBIT'S SHOWS WITHOUT A DOUBT THE FUNDAMENTAL DEFECT AND CAN BE ASCERTAINED FROM THE RECORD IN THIS CASE WITH LITTLE DIFFICULTY. NIX. 664, 668.

EXH. A12
SEE. R.R. VOL. 5 of 9 P. 173, 11-19. DETECTIVE MOLLY JOHNSON FALSELY STATE A MATERIAL MIS-STATEMENT THAT AUGUST 2011 EXHIBIT #11 HER 45.018(a) CHARGING DOCUMENT COMPLIES WITH ART. 45.019 (a)(2), ART. 1.23. SEE. FRANKS
(X). SUPRA RECORD, EXHIBIT'S AND TRIAL EXHIBIT NO. 11.

EXH. A12
SEE. R.R. VOL. 5 of 9 P. 174 10-13, THE STATE CLAIM'S FOR A LEGAL CONCLUSION ON Id. # EXH. 11.
TRIAL COURT FAILED TO MAKE ONE.

SEE. Id. P. 175[19] WHERE THE STATE ARBITRARILY STATE THAT THE STYLE OF THE WARRANT FS NOT RELEVENT.

THAT'S TRUE THIS WAS NOT ABOUT THE STYLE OF THE ARREST WARRANT, IT WAS A ATTACK ON THE SUFFENCY OF CPD# 2010-139860, CHARGING AND ARREST 4-22-2010 DOCUMENT THAT DID NOT COMPLY WITH ART. 1.25, 45.019 (a)(2)(4) (1) WHICH DEPRIVED (1) MAGISTRATE OF JURISDICT-

AND SUBJECT MATTER JURISDICTION TO ISSUE A WARRANT BASED OFF GPD# 2010-13986, CITED IN THE WARRANT, R.R. VOL 2, SUPRA (7-29-11).

2.) THE GRAND JURY WAS DEPRIVED OF JURISDICTION AND SUBJECT MATTER JURISDICTION TO ISSUE THE 7-14-2010 INDICTMENT ISSUED BASED ON GPD# 2010-13986, R.R. VOL 5 of 9 P. 176; SEE EXPARTE THOMAS, SUPRA. NTC. 606.4, 668, SUPRA. SEE. Id. P.176 ~EXH. A12~ WHERE THE BIAS AND IMPARTIAL JUDGE (FORMER A.D.D.) COX, SUSTAINED AN ILLEGAL BAD FAITH OBJECTION RELATED TO THIS AFFIDAVIT # 2010-13986 AND THE TRIAL JUDGE THEN TOLD PRO SE DEFENDANT TO MOVE ALONG, Id. P. 176 17-19, EXH. A12

ONCE THE DEFENDANT (RELATOR) ~TOOK~ WAS SUBMITTING EXHIBIT #11 INTO EVIDENCE, BECAUSE IT DID NOT COMPLY WITH, I.C. C.P. STATE, OBJECTED A FREVOLOUS OBJECTION THAT IT'S HEARSAY ALL IN GPD# 2010-13986 EXH.11 (AND FRANKS 7-29-2011 Id. DOCUMENT), BUT THIS IS THE LEAD PROSECUTOR WHO ON 4-21-2010 ORDERED ME CHARGED AND TO BE ARRESTED AND NOW 17-18 MONTH'S LATER SHE'S CRYING WOLF IT'S A HEARSAY NOW, KNEW THESE GPD# 2010-13986 DOCUMENT'S WAS FALSE, SEE. R.R. VOL. III. P. 470-471, AND KNOW NEW AFFIDAVIT FROM CROWN VILLEGE VICTIM A5 a-d, e THE COURT HEARD THE STATE "CRY WOLF" SO THAT EXHIBIT NO. 11, COULD NOT BE

6

FILED INTO EVIDENCE AND THEN PUBLISHED TO THE JURY. THE COURT ARBITRARILY CALLED THE END OF COURT FOR THE JURY TO GO HOME. P.177, R.R. VOL. 5 of 9 (P.176).

X THE JUDGE NEW THAT THIS WAS A CHALLENGE TO THE SUFFICIENCY OF THE COMPLAINT (#20-10-13598(0) IS (AND WAS) A QUESTION OF LAW, ZORRILLA, 736, CITING STATE v. MOFF, 601. AND LONNIE COX THEIR FORMER CO-WORKER KNEW HE WOULD HAVE TO BE THE ONE TO INSTRUCT THE JURY TO THE LAW AND KNEW HE WOULD HAVE TO DISMISS 10CR1271.

THESE ACTS OF OMISSIONS BY THE TRIAL COURT WAS CLEAR STRUCTURAL ERROR(S) SEE BRECHT v. COLLINS, 113 S.CT. 853, 860 (1993), CITING IN RE MURCHISON, 349 US 133, 136 (1955). THE SUPREME COURT LONG AGO HELD I HAVE A CONSTITUTIONAL RIGHT TO A FAIR TRIAL IN A FAIR TRIBUNAL. SEE, BRECHT v. ABRAMSON 113 S. CT. 1710, 1717 (1993) AND ARIZONA v. FULMINANTE, 111 S. CT. 1246, 1863 (1991). SEE EXHIBITS A41-A69, HURLEY v. RYAN, 706 F3d 1021 (9TH CIR. 2013) ATTACHED TO APPELLATE COURT. SEE, ALSO PORTER v. SINGLETARY 49 F3d 1483 (11TH CIR. 1995), ARIZONA v. FULMONTE/TUMEY v. OHIO 273 US 510 (1927) MARSHALL v. JERICO 446 US 238 (1980).

SEE, KINDLY 264, SUPRA, SAID WRIT IS SUPPORTED BY ARGUMENT, RECORD AND AUTHORITY FOR RELIEF. Id. 264.

7

SEE, 644 SW2d 53 (TEX. CRIM. APP. 1982)
THE DOCUMENT (GPD# 201013986, SUPRA) IS
FUNDAMENTALLY DEFECTIVE AND THIS (GPD#
2010-13986 45.018(a), 45.019(a)(2)(4)(7))
VOID COMPLAINT IS A DEFECT OF SUB-
STANCE RATHER THAN FORM. NIX,
664, 668, SUPRA.

SEE, 01-11-00822CR APPEAL 7-30-2013, NULL
AND VOID JUDGMENT BY BONB E. KEYES OVER
MY OBJECTIONS TO RECUSE HER T.R.A.P. SEE,
01-11-00822CR DKT. SHEET. SEE, MURCHISON
136, SUPRA, HERRERA, 800, SUPRA.

THE FIRST COURT OF APPEALS APPOINTED THE
HIRED ATTORNEY ALLEN ISBELL TO CONDUCT
THE STATES APPEAL.

MR. ISBELL MADE A FRIVOLOUS ARGUMENT
~~OOOOOOOOOO OOOOOOOOO~~ THAT ~~KISSIN #3~~ A
COMPLAINT IN TEXAS DOES NOT HAVE TO COM-
PLY WITH ART. 1.23.

ISBELL ARGUES (ART'S 15.04, 15.05) THE
GPD# 2010-13986 COMPLAINT WAS ~~OOOO~~ FILED
UNDER 15.04-15.05, SUPRA.

WHEN IN FACT IT WAS NOT FILED UP UN-
DER 15.04-15.05, Id. BUT FILED UNDER ART'S
45.018, 45.019.

EVEN IF ~~OOOOOOOOOOO~~ STATE MAKES A 15.05
ARGUMENT, IT STILL VOID BECAUSE THE GPD

8

# 2010-13986, ARREST AFFIDAVIT IS STILL VOID AND VITIATED AND DEPRIVED THE MAGISTRATE AND TRIAL COURT LACKED SUBJECT-MATTER JURISDICTION OVER RELATOR.

SEE, <u>YOUNG v. STATE</u>, 776, SW2d 673, 677, (TEX. APP. AMARILLO 1989). [T]he REQUIREMENT THAT AN AFFIANT STATE THAT HE OR SHE DOES BELIEVE (ART. 15.05(2)) THE ACCUSED COMMITTED AN OFFENCE IS A Id. 15.05(2) STATUTORY REQUIREMENT AND ITs ABSENCE <u>VITIATES A</u> (G.P.D.# 201013986) <u>COMPLAINT</u>. Id. COMPLAINT DOES NOT STATE, <u>15.05(2)</u> SUPRA

SEE, ISSUE NO. 3, 01-11-00822CR APPEAL P.14 EXH.A7 WHERE THE COURT AS THE TRIAL COURT NEVER MAKES A LEGAL CONCLUSION ON THE SUFFICIENCY OF GPD# 2010-13986 COMPLAINT. <u>ZORRILLA</u> 736, SUPRA. CITING <u>MOFF</u>, 601, SUPRA.

THE APPEAL COURT P. 14, SUPRA (7-30-13 VOID OPINION) DOES NOT USE OR APPLY ANY GUIDING PRINCIPLES TO <u>ISSUE #3</u>.

SEE, <u>JOHNSON v. FORTH COURT OF APPEALS</u>, 700 SW2d 916, 917 (TEX. S. CT. 1985), CLEAR ABUSE OR DISCRETION WARRANTING CORRECTION BY MANDAMUS, OCCURES WHEN A (<u>56TH DISTRICT CT. GAL.CO.TEX. AND 1ST CT. OF AP. HOUSTON</u>) COURT(S) ISSUES A (7-30-2013 DECISION; AUG. 5,2011) WITHOUT GUIDING PRINCIPLES, SEE, <u>R.R. VOL. 5 of 9 P: 172-177</u>, 01-11-00822CR ISSUE #3, P. 14 EXH.A7 SUPRA).

P.14 EXH.A7 SUPRA THE APPEAL COURT ERRONEOUSLY

9

MIS-STATED MY ARGUMENT AND THE LAW TO DENY MY ISSUE #3 AND OTHERS, BY STATING THAT A SEARCH AFFIDAVIT ART. 18 (15.05, 45.018, 45.019 ARE THE ONLY CHAPTER'S FOR SUCH AFFIDAVITS) DOES NOT HAVE TO COMPLY WITH ART. 1.23. THE REVATOR NEVER ARGUED TO THE TRIAL COURT OR IN HIS PRO SE BRIEF'S TO THE 1ST COURT OF APPEALS THAT HE WAS CHALLENGING THE SEARCH AFFIDAVIT.

THE APPEAL COURT AT P.14 EXH.A7, SUPRA GOES ON TO STATE THAT A COMPLAINT DOES NOT HAVE TO COMPLY WITH ART.'S 1.23, 45.018, 45.019 (a) (2) (4) (7), (15.05 (2)).

HAD THE APPEAL COURT OR TRIAL COURT USED T.C.C.P. ART. 1.23, 45.018 (b), 45.019 (a) (2) (4) (7) AS GUIDING PRINCIPLES AND REVIEWED AND LIBERALLY CONSTRUED MY PRO SE PLEADINGS, REHEARING; REHEARING ENBANC THE REVATOR WOULD NOT STILL BE UNLAWFULLY RESTRAINED, DETAINED AND IMPRISONED BY OFF. GPD# 2010-13986 CHARGING AND ARREST AND INDICTING DOCUMENT, R.R. VOL 5 of 9 176, SUPRA.

THE TRIAL COURT OR 1ST CT. OF APPEALS HAD NO DISCRETION IN DETERMINING WHAT THE LAW IS OR APPLYING THE LAW TO FACTS, IN RE EL-PASO HEALTH CARE SYSTEM, 969 SW2d 68, 72 (TEX. APP. ELPASO 1998).

SEE, CURRY v. STATE, 815 SW2d 263, 265 (TEX. APP. HOUSTON 14 DIST. 1991, HELD THAT THE COURT'S

MUST FIRST DIRECT IT'S ATTEN-
ION TO THE VALIDITY OF THE ARR-
EST AFFIDAVIT (GPD # 2010-13986) OR WARR-
ANT WITHOUT ANY REQUIREMENT TO THE GOOD-
FAITH EXCEPTION. Id. 265.

THE RECORD IN THIS CASE THE TRIAL COURT OR
APPEAL COURT MADE NO SUCH DETERMINATION
TO THE VALIDITY OF G.P.D. # 2010-13986 COM-
PLAINT 4-22-2010 FOR ARREST WARRANT.

RELATOR MOVE THE COURT TO TAKE JUDICIAL
NOTICE NECESSARY TO DETERMINE WHETHER
LONNIE COX'S ORDER OR IN ACTIONS TO ADD-
RESS SUFFICIENCY OF GPD # 2010-13986 4-22-10
AFFIDAVIT (MOF 601 SUPRA) IN LOCKHART
WAS VOID WHICH WOULD PRECLUDED THE
FIRST COURT OF APPEALS 7-30-2013 VOID
APPELLATE REVIEW DUE TO JURISDICTION. SEE,
FREEDOM COMM'NS INC. v. CORONADO __ SW3d
__ (TEX. S. CT. 2012) (#09-0745; 6-22-2012). SEE,
DALLAS CO. APPRASIAL v. FUNDS RECOVERY, 887,
SW2d 465 (TEX. APP. DALLAS 1994), HELD OF THE
TRIAL (GAL. CO. 56th DIST. CT.) COURT VACKED
JURISDICTION, THEN AN APPELLATE (HOUSTON 1st
COURT OF APPEALS # 01-11-00822-CR 7-30-2013)
COURT ONLY HAS JURISDICTION TO SET (LOCKHART)
THE JUDGMENT ASIDE AND DISMISS (LOCKHART)
THE CAUSE. Id 468.

SEE, Id. 468. AS AN APPELLATE COURT WE

ARE **BOUND** BY **SUPREME COURT AUTHORITY** THAT'S HAS NOT BEEN OVER-RULED.

THE TRIAL COURT AND APPEAL COURT OVER LOOKIAN SHOWED A CLEAR ABUSE OF DISCRETION WITH NO GUIDING RULES OR PRINCIPLES DISREGARD SUPREME COURT AUTHORITY THAT HAS NOT BEEN OVER-RULED. SEE, MADCO v. FOR-REST 795 SW2d 700, 703 (TEX. S. CT. 1990)' HARRESON v. TDCJ, 134 SW3d 490, 492-93 (TEX. APP. WACO 1994).

SEE, EX PARTE ~~CLINE~~ CLUBB (CR. APP.) (CR. APP. 1950) 155 TEX. CRIM. 285, 234 SW2d 874)' EX PARTE YOUNG, (CR. APP. 1967, 418 SW 2d 284)' SEE, PEARSON v. STATE, 14-13-00277CR (TEX. APP. 14 HOUSTON 2014), CITING, LEVY v. STATE, 818 SW2d 801 (TEX. CRIM. APP. 1991)' AND LAPORTE v. STATE, 840 SW2d 412, 415 (TEX. CRIM. APP. 1992), A DEFECT WHICH RENDER'S A SENTENCE VOID MAY BE RAISED AT ANY TIME.

THE COURT MUST DIRECT THE TRIAL COURT TO PERFORM HIS MANDATORY NONE DISCRETIONARY ACT DISMISS LOOKIAN. SEE, IN RE COLLUM AND CORNEY CLINIC ASSO, 62 SW 3d 924 (TEX. APP. TEXARKIANA 2001), A WRIT OF MANDAMUS COMMANDS A LOWER COURT TO PERFORM SOME ACT.

THERE WAS NO OTHER REMEDY AT LAW BUT FOR THE TRIAL COURT TO DISMISS CAUSE LOOKIAN, ZORRELLA, 737 N3, CITING CASE. SEE, DALLAS

12

APPRAISAL 468, "MARCO 703 SUPRA". SEE, IN RE SHELBY, 297 SW3d 494 (TEX. APP. DALLAS 2009), MANDAMUS WILL BE AVAILABLE WHEN THE TRIAL JUDGE ABUSES HIS OR HER AUTHORITY OR VIOLATES A LEGAL DUTY AND THERE IS NO ADEQUATE REMEDY AT LAW.

01-11-00822CR COURT ONLY HAD AUTHORITY TO SET ASIDE LOCKIZIT AND REMAND TO TRIAL COURT WITH ORDER TO DISMISS. DALLAS APPR. 468, SUPRA.

HAD APPEAL COURT <u>PROPERLY</u> INTERPRETED ISSUE #3, EXHIBIT'S AND CASE LAWS WAS SENT TO COURT OF APPEAL SEE, <u>REHEARING 49.1, "EN-BANC MOTION, 01-11-00822CR.</u>

SEE, <u>KOZACK v. KOZACK, 883 SW2d 760 (TEX. APP. WACO 1994),</u> MANDAMUS IS AVAILABLE TO CORRECT JUDICIAL ACTION THAT IGNORES CLEAR BINDING PRECEDENT BECAUSE A TRIAL JUDGE (APPEAL JUSTICE) DO NOT ENJOY FREEDOM TO IGNORE THE LAW.

SEE, <u>IN RE WINGFIELD 171 SW3d 374 (WL 58350 (TEX. APP. TYLER, 2005)</u> MANDAMUS MAY BE USED TO CORRECT JUDICIAL ACTION THAT IS CONTRARY TO WELL SETTLED LAW ( <u>ZORRILLA, CURRY, KINDLEY</u> ART. 1.23, 15.05 (a), 45.019 (a)(2)(4)(7), ZORRILLA 737 N2) WHETHER THE LAW IS DERIVED FROM STATUTE, RULE OR CLEAR BINDING PRECEDENT FROM A COURT OF SUPERIOR JURISDICTION. LOCKIZIT DERIVED FROM

13

GPD#S 2010-13986 CHECK REPORT USED TO OBTAIN GPD # 2010-13986 4-22-2010 AFFIDAVIT AND USED TO PRESENT TO 7-14-2010 GRAND JURY R.R. VOL 5 OF 9 P.176, MEETS THE REQUIREMENT TO HAVE MANDAMUS ISSUED.

THIS CAUSE WAS FULL OF CLEAR STRUCTURAL ERRORS, FUNDAMENTAL ERROR'S AND DEFECTS HERRERA, 810; BRECHT, 1717; FULMINATE, 1263 SUPRA.

SEE, ADAMS v. STATE, 683 525, 526, 529 (TEX.APP. DALLAS 1984), MAGISTRATES MUST ISSUE ARREST DOCUMENT'S IN PROPER FORM (45.019 (a) (2) (4) (7), 15.05(2)) THIS MAGISTRATE ABANDONED HIS NEUTRAL AND DETACHED JUDICIAL ROLE. (IF HE ACTUALLY SIGNED SAID PLEADINGS SEE, EXHIBIT A1a-b.

SEE, MILLER v. STATE, 736 SW2d 643 (TEX. CRIM. APP. 1987), COURT'S MUST PROTECT CITIZENS RIGHT'S. (STATE v. TERRAZAS , SW2d , (TEX.CR.APP.19 ) SAID GPD#2010-13986 DOCUMENT'S WAS PRESENTED TO TRIAL AND APPEAL COURT MILLER, SUPRA.

SEE HASSAN v. STATE, 346 SW3d 234, 238 (TEX.APP. HOUSTON 14 DIST.2011), CITING ART'S 45.018 (a), 45.019 (a).

SEE, MONTGOMERY v. STATE, 810 SW2d 372, 380 (TEX. CRIM. APP.1990), A TRIAL COURT ABUSE'S IT'S DISCRETION IF IT ACTS WITHOUT REFRENCE TO GUIDING RULES ( R.R. VOL. 5 of 9 P's 172-176-177), AND ACTS ARBITRARILY AND UNREASONABLE. Id. P.176-177.

MANDAMUS IN THIS CAUSE IS PROPER. SEE MC-BETH v. CAMPBELL, 12 SW2d 119,122 (TEX.COM.1929),

14

THE COURTS JURISDICTION IS NOT UNLIMITED WHEN IT COMES TO PROTECTING CITIZENS RIGHTS NO MATTER WHAT WALKS OF LIFE HE OR SHE MAY BE FROM.

SEE, EVANS v. CAIN, 577 F3d 620 (5TH CIR. 2009), [A]N ABSENCE OF JURISDICTION IN THE CONVICTING COURT [10CR1217 56TH DIST. CT. GAL. CO. TEX), IS A BASES FOR FEDERAL (STATE REVIEW) UNDER (U.S.C.A. 4TH, 5TH, 14TH) DUE PROCESS CLAUSE. SEE, DETERS v. COLLINS, 985 F2d 789, 794 (5TH CIR. 1993) STATE (1ST, 14TH) (56TH) COURTS HAVE CONCURRENT JURISDICTION (MACBETH 122, SUPRA) AND EQUIVELENT JURISDICTION AND RESPONSIBILITY TO PROTECT FEDERAL RIGHTS.

THE FIRST COURT OF APPEALS (TRIAL COURT) FAILED TO DO SO. FN2

SEE, PARKER v. STATE, 745 SW2d 934, 937 (TEX. APP. HOUSTON 1st DIST. 1988), NO ONE, UNDER ANY CIRCUMSTANCES SHOULD BE DEPRIVED OF ANY RIGHT GIVEN (FLORENCE) HIM BY THE LAWS (15.05(2), ART. 1.23, 45.019(a)(2)(4)(7)) OF THIS STATE AND IF ANY OF OUR C.C.P HAS BEEN OVER LOOKED OR DISREGARDED, IF IN THE REMOTEST DEGREE, IT COULD OF BEEN HURTFUL AND HARMFUL TO THE PERSON ON TRIAL, THE VERDICT SHOULD BE SET ASIDE. HE HAS THE RIGHT TO BE TRIED IN ACCORDANCE WITH THE RULES AND FORM OF LAW AND IF

FN. 2. GIBSON v. STATE, 667 SW2d 54,56 (TX. APP. HOU. 14 DIST. 1983)

/5

THIS SORT OF TRIAL IS NOT ACCORDED HIM
HE HAS THE RIGHT TO COMPLAIN and to
THIS WE WILL ALWAYS GIVE AN ATT-
ENTIVE EAR.

THE 7-30-2013 PANEL OF (Id. 937) COURT
DID NOT HAVE AN ATTENTIVE EAR OR EYE TO NOT-
HING FILED BY PRO SE RELATOR TO ENCLUDE
HIS TIMELY FILED REPLY BRIEF, EXHIBITS, RE-
HEARING AND EVERY OTHER PLEADING, THE
PANEL TURNED A BLIND EYE TO THIS TAX-
PAYER AND STUDENT (COLLEGE GRAD.), BUT SOLEY
HIS APPLIED OR WAS STATED THE LAW
AND FLAVORED ALLEN ISBELL FRIVOLOUS BRIEF
ON ISSUE #3, P 18-19 Id., SEE, BELCHER v. STATE
93, SW3d 593, 601, (TEX. APP. 14 HOUSTON 2002),
(GALVESTON CO.), AN ATTORNEY HAS A AFFIRM-
ATIVE DUTY TO BRING TO THE COURTS ATTENTION
MISTAKEN BELIEF ON A CRUCIAL ISSUE.
SEE, ZORRILLA, 736, CITING REYES v. STATE
ARGUED BY ISBELL IN 1982 KNEW THAT SAID
COMPLAINT DID NOT COMPLY WITH 15.05(2).
AS HE STATES AND STATES[FN3] ART. 1.23 DOES
NOT APPLY TO COMPLAINT(S) SEE, ART. 45.019(2)
(4)(7), SEE, A6-6B, STATES REPLY TO ISSUE #3, SEE,
A9-A10, SHOWING VALID COMPLAINTS THAT RE-
FUTES STATE'S ARGUMENT A6-6B AND REFUTES THE

FN 3. EXPARTE COOPER, 589 SW2d 130, 131 (TEX. CR. 1979)

16

APPEAL COURTS OPINION 7-30-2013 A17 ON
ISSUE NO. 3.

SEE, 48(3) A8(4), 10CR1217 DOCKET SHEET IGNORED
BY APPEAL COURT AND TRIAL COURT.

SEE, MARRIERA 860, CITING IN RE MURSHI-
SON, 136, RELATOR WAS NEVER GIVEN A FULL
AND FAIR NON BIAS REVIEW BY THE STATE
TRIAL COURT OR APPELLATE COURT.

CLEAR STRUCTRUAL ERROR'S INFECTED BOTH
THE TRIAL AND APPELLATE PROCESS REVIEW.

PETITIONER HAS BROUGHT MATTER'S TO THIS
COURTS ATTENTION IN 2011 SEE, EXHIBIT A4.

RELATOR HAS FILED A WRIT OF HABEUS COR-
PUS 10-26-2010 ART. 11.07 SEC(2) AFTER INDICT-
MENT 10CR1217-83-1, WAS NEVER TRANSMITTED
TO COURT OF CRIMINAL APPEALS AND ADMITTED
BY STATE IN ART. 11.07 10CR1217-83-3 P. 2.

THE TRIAL COURT WAS REPRESENTED WITH THIS
ISSUE IN 10CR1217-83-3, 10CR1217-83-4 WRITS
AND 10CR1217-83-2 (APPEAL PENDING AT TIME).
THE C.C.A. DENIED REVIEF SOLEY ON THE TRIAL
COURT ABUSE OF DISCRETION NONE FACT FIND-
ING. (SEE, IN RE EL PASO HEALTH CARE SYS, 72,
JOHNSON, 917, KOZIAEK, WINGFIELD, SHELBY SUPRA;
BUT ONLY ADOPTED THE STATES FALSE AND ON-
GOING FRIVOLOUS REPLIES.

NO TEXAS STATE COURT TRIAL, APPEAL OR
COURT OF CRIMINAL APPEALS HAS ADDRESS-
ED ISSUE #3. SEE, WALKER V. PACKER, 827

17

827 SW2d 833, 840 (Tex. S. Ct. 1992), MANDAMUS WILL ISSUE TO CORRECT A CLEAR ABUSE OF DISCRETION.

MANDAMUS IS AVAILABLE TO CORRECT JUDICIAL, SUPRA ACTION THAT IGNORES CLEAR BINDING PRECEDENT BECAUSE JUDGES OR JUSTICES DO NOT ENJOY FREEDOM TO IGNORE THE LAW (AS IN LOCKRIDGE, '01-11-00822 ISSUE #3,' SEE, EXHIBITS ATTACHED) KOZIACK v. KOZIACK, SUPRA.

SEE, IN RE WINGFIELD, 375, SUPRA, MANDAMUS MAY BE USED TO CORRECT JUDICIAL ACTION THAT'S CONTRARY TO WELL SETTLED LAW, WHETHER THE LAW IS DERIVED FROM STATUTE, RULE OR CLEAR BINDING PRECEDENT FROM A COURT OF SUPERIOR JURISDICTION.

SEE, EXHIBIT'S A1 - A69 ATTACHED I CERTIFY SAID EXHIBITS ARE TRUE AND CORRECT COPIES UNDER PENALTY OF PERJURY AND CERTIFY SAID PLEADING UNDER T.R.A.P. 10.3 FN.2 THE PREPONDERANCE OF THE EVIDENCE IS EVIDENCE WHICH IS MORE CONVINCING THAN THE EVIDENCE OFFERED IN OPPOSITION TO IT.

RELATOR DIRECTS THE COURT TO EXHIBIT A14 INDICTMENT 2-27-2010 DATE OF OFFENCE SEE, LOCKRIDGE JUDGMENT 2-27-2010 DATE OK

FN.2, GREENWISH v. BORROWS 990 F2d 730, 736 (3RD CIR 1993)

18

OFFENCE 2-27-2010; SEE, CHARGE TO THE JURY 2-27-2010; SEE, TDCJ WEB SITE AND TDCJ CLASSIFICATION AND RECORDS THAT SHOWS AND STATE FEBRUARY 27, 2010. SEE, EXHIBIT, E.

SEE, EXHIBITS A41-A69, HURLES V. RYAN, 706 F3d 1021 (9TH CIR, 2013). C.R. VOL III

SEE, 10CR1217 DOCKET SHEET p 415; 'RECUSAL OF JUDGE COX (MOTION).

SEE, 10CR1217-83-4 ART. 11.07 TRIAL COURT ~~RESPONDENT ORDER~~ INTENTIONALLY VIOLATE EX PARTE, SINEGUR, 324 SW3d 57 8 (TEX, CRIM, APP. 2011), T.R.A.P. 18(a)(2), 18 b, (2), (A), (B), f (iii), SEE, BLOSSOM V. KM-ZIAN, 28 SW3d 235, 238 (TEX. APP. BEAU-MONT 2000), KNEW HIS ACTIONS WAS VOID AND UNLAWFUL. SEE, HURLEY, EXHIBIT A41 A69, SUPRA.

SEE, T.R.A.P. RECUSAL OF JUSTICE'S A NUMBER OF RECUSAL MOTIONS TIMELY FILED ON JUSTICE E. KEYES 7-30-13 AUTHOR OF 01-11-00822CR VOID AFFIRMATION OF 10CR1217 FAILED TO RECUSAL SELF AND FAILED TO CERTIFY SAID MOTION TO COURT EN BANC BUT INSTEAD DENIED AND SIGNED EACH MOTION AND EVEN ILLEGALLY SAT ON EN BANC PANEL TO HEAR AND VOTE TO

TO DENY STATE MOTION ON VIOLATION OF T.R.A.P. (USCA 4TH-14TH).

SEE, SEE, CURTIS v. STATE, 762 SW2d 958, 960 (TEX. APP. DALLAS 1988), HON KEYES ACTIONS VOIDED THE 7-30-2013 JUDGMENT.

SEE, ARNOT v. ARNOT, 709 2d 281, 282 (TEX. APP. HOUSTON 14 DIST. 1986).

SEE, EXHIBIT'S A41-A69, MURIEL v. RYAN, 706 F3d 1021 (9TH CIR. 2013), RELIEF GRANT-JUDICIAL BIAS.

RELATOR CERTIFY STATE PLEADING AND HEREBY CERTIFY THAT TDCJ MAIL ROOM STAFF AND WITNESSESS VERIFIED THIS MAILING TO HOUSTON CLERK 14TH COURT OF APPEALS 301 FANNIN ST. ROOM 245 HOUSTON TEXAS 77002 MARCH 20, 2013, EXHIBITS A1-A72 ATTACHED. RESPECTFULLY SUBMITTED Pro Se Thomas W. Florence

PRAYER: RULE 2 APPLIED AND 01-11-00822-CR. APPEAL ISSUE # 3 GRANTED. OR THE TRIAL COURT DIRECTED TO DISMISS 10CR-1217 AS MANDATED OR CASE SENT TO SENIOR OR VISITING OR APPOINTED JUSTICE OR JUDGE TO ORDER 10CR1217 DISMISSED ALL RELIEF BY LAW GRANTED.

CERT OF SERV: I THOMAS FLORENCE CERTIFY THAT A TRUE AND CORRECT COPY WAS SENT TO GAL. CO. DIST. JUDGE LONNIE COX 3-20-2015 600 59TH ST. STE 4001 CLERK. GAL. TX. 77551

10/17/2014

I Mary Mason Swear by this statment. On Friday October 10, 2014. I went to the Precint 1 to obtain copies of some paper work for my son, Thomas Florence. The worker who waited on me as She looked the paper work over she said she didn't understand what I needed and by that time another worker came from the back and without looking at the paper work, because the worker trying to help me Still had the papers said they didn't have the paper worked I needed. How she Knew what I needed was a mist to me. because she never looked at the paper work.

I went back on Friday 10/17/2014 and asked the same worker, who didn't look at the paper work to sign one of the papers stating they didn't have the paper work and at first she said no, then she just wrote on the paper that they didn't have the paper work and it is attached to this statement. and She Still did'n sign it.

Mary Mason

Mary Mason

Oct 20, 2014



ROSEMARY LIMONES
NOTARY PUBLIC
STATE OF TEXAS
My Commission Expires
January 29, 2017

File with ↓

rticle Number 7013 1710 0000 3000 6403

TO MY NUMEROUS LETTERS RELATED TO GPD#2010 10125' GPD#2010-13986 ARREST AFFIDAVIT AND ARREST WARRANT ILLEGALLY FILED IN JUSTICE OF THE PEACE PCT.#1 GALVESTON TX.

WERE REQUESTING CERTIFIED COPIES OF GPD#2010-10125 FEBRUARY 12,2010; GPD#2010-13986 ARREST AFFIDAVITS AND FEBRUARY 26,2010 (WARRANTS). APPROVED OF BY J.P. HON. JIM SCHWEITZER.

DEAR, CLERK Please Stamp File, THESE DOCUMENTS AND RETURN TO MY MOTHER MARY MASON FOR UR STAMPED FILED COPY SINCERLY THOMAS W. FLORENCE

AND

Mary Mason
MARY MASON

october
~~SEPTEMBER~~ 8 2014

NOTE: GPD#2010-10125 FILED 2-12-2010 GPD#2010-13986 FILED 4-22-2010

JP#1 COURT DOES NOT HAVE THIS



# Galveston Police Department

Case : 2010-00010125

Unit: 1952

Type of Incident: ACBI – Family member

Date of Incident: 2-12-2010

Reporting Officer: C. Teague          Badge #: 834

Date of Report: 2-12-2010

## Case Disposition:

All required charge/warrant documents were completed for this case offense of ACBI-Family member, filed in JP-1 court, with $7500.00 bond requested.

Approved by
Supervisor  Mitchell                    Badge #:          343  Page 2 of 2      A1(C)


DEFENDANT'S EXHIBIT

*11*

*A1(d)*

# AFFIDAVIT AND COMPLAINT FOR ARREST WARRANT

THE STATE OF TEXAS

COUNTY OF GALVESTON

The undersigned Affiant, being a Peace Officer under the Laws of Texas and being duly sworn, on oath makes the following statements and accusations:

1. There is in the Galveston County, Texas, a person described as follows:

   **Thomas Wayne Florence**; Date of Birth: **6/26/1968**; Race: **Black**; Sex: **Male**; Height: **5'08"**; Weight: **207**; Hair: **Black**; Eyes: **Brown**; Social Security Number: **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**; Address: **5102 Avenue O ½, Galveston Texas 77551**

2. The said **Thomas Wayne Florence** is the suspect in an alleged **Sexual Assault of a Child**.

3. It is the belief of Affiant, and he hereby charges and accuses, that:

4. **Thomas Wayne Florence**, in Galveston County, Texas, on or about the date of February 26, 2010, did then and there intentionally or knowingly cause the penetration of the vagina of Amber Guarnelo, a child who was then and there younger than 17 years of age and not the spouse of the defendant, by defendant's penis.

5. Affiant has probable cause for said belief by reason of the following facts:

   Your Affiant, **Detective Holly Johnson #340**, is employed as a Peace Officer with the Galveston Police Department and charged with investigating crimes that occur in the City of Galveston, Galveston County, in the State of Texas. Affiant has been a Texas Peace Officer for over 9 years employed by the Galveston Police Department. Affiant is currently assigned to the Criminal Investigations Unit of the Galveston Police Department.

   On **March 2, 2010**, Affiant was assigned follow-up investigation to Galveston Police Department **case number 2010-13986** (Sexual Assault of a Child). Affiant learned the following facts from the case report:

   1.) Affiant learned from reading Galveston Police Department case #2010-12135 (runaway report) that on February 19, 2010 Amber Guarnelo had not returned home and was entered into TCIC/NCIC as a runaway.
   2.) Affiant learned from reading Galveston Police Department case #2010-13986 that on February 26, 2010 Officer Garcia #733 called Thomas Wayne Florence in regards to Amber Guarnelo's whereabouts. Officer Garcia reported that Thomas Florence had given him information in the past when Amber Guarnelo had runaway and was able to provide information on her whereabouts. Affiant learned from reading the police report #2010-13986 that on February 26, 2010 at about 10: 09 p.m. Officer Garcia received a phone call from Lisa Ruiz stating her and Amber Guarnelo would turn themselves into the Galveston Police Department. Affiant also learned from reading

*A1(d)*

the police report that Amber Guarnelo was transported to Ben Taub Hospital for a Psychiatric evaluation for drug abuse, suicidal thoughts and attempts.

3.) Affiant learned from reading case #2010-13986 that on February 26, 2010 Officer Garcia #733 received a phone call from Robbie Guarnelo stating that while at Ben Taub Hospital a pregnancy test was administered to her daughter, Amber Guarnelo the result was positive. Affiant also learned from the police report that when Robbie Guarnelo asked Amber who the father was Amber replied, "T" (A.K.A. Thomas Florence).

4.) On March 9, 2010 Forensic Interviewer Cheryl McCarty conducted a videotaped interview with Amber Guarnelo at the Child's Advocacy Center. Affiant observed this interview from a separate room. Affiant observed Amber stated that she is at the Advocacy Center to talk about her and another person named Thomas. Amber said she met Thomas through a friend. Affiant observed Amber say that she is about one month pregnant and the father might be Thomas Florence. Amber describes sex as when "my everything touches their everything and the boy part goes inside the girl part." Affiant observed Amber say that she has had sex with Thomas about eight times at different houses in Galveston. Amber said the last time they had sex was on February 26, 2010. Amber said this happened at a house in Galveston on a mattress on the floor.

5.) Affiant spoke with Thomas Florence's wife; Wanette Florence who stated Thomas told her he thought Amber was eighteen years old.

6.) Affiant spoke with A.D.A. Kayla Allen who advised to charge Thomas Florence with Sexual Assault of a Child and recommended bond be set at $250,000.

Based on the above probable cause Affiant requests an arrest warrant be issued for the above listed **Thomas Wayne Florence**.

WHEREFORE, Affiant requests for issuance of a warrant that will authorize him to arrest the said **Thomas Wayne Florence**.

_____
Affiant

Sworn and subscribed to before me by said Affiant on this the 22nd day of **April**, 2010

_____
Magistrate, Galveston County, Texas

*/K/K/K/1*  *EXHIBIT A 2* $A1(f)$

THE STATE OF TEXAS
vs.
FLORENCE, THOMAS W
5102 AVE O 1/2
GALVESTON TX 77550

DEFENDANT'S EXHIBIT

*13*

**WARRANT OF ARREST**

Case No.  G10100086
Bond:$250,000.00

DL #11505205
DOB 06-26-1968      RACE: B  /SEX: M

THE STATE OF TEXAS

TO ANY SHERIFF, CONSTABLE OR PEACE OFFICER OF THE STATE OF TEXAS, GREETINGS:

You are hereby commanded to arrest
        FLORENCE, THOMAS W
if to be found in your county and bring them before me, a Justice of the Peace in and for Pct. 1, of Galveston County Texas, at my office at 1922 Sealy, Galveston, TX 77550, in said county, immediately, then and there to answer the State of Texas for an offense against the laws of said State, to-wit:

        SEXUAL ASSAULT OF A CHILD

of which offense the Defendant,
        FLORENCE, THOMAS W
is accused by the written complaint, under oath, of
OFFICER JOHNSON, H                filed before me.
        Herein Fail Not, but of this writ make due return, showing how you have executed the same.
        WITNESSED my official signature this the  22nd  day of
April     2010 .

                            Justice of the Peace, Pct. 1
                            Galveston County, Texas

                        OFFICER'S RETURN
        Came to hand on the  22nd  day of  April      , 20 10 , at
0840 o'clock A M., and executed on the  22nd day of  April  .
20 10 at 0840 o'clock A M., by arresting the within named
FLORENCE, THOMAS W            , the 22nd day of  April  .
20 10 , at  Galveston County      , in  Galveston County, Texas
and *Taking his bond, *placing him in jail at  Galveston County .
        I actually and necessarily traveled ___ miles in the service of this writ, in addition to any other mileage I may have traveled in the service of other process in this cause during the same trip.

FEES:
Making Arrest ..$_____          _____Constable/Sheriff
Mileage.........$_____
Taking Bond ....$_____          _____County, Texas
Commitment......$_____
Release ........$_____      by  Durr, J. #449          Deputy
                                                        Officer
TOTAL ..........$_____

* strike according to facts
GPD#10-13986

$A1(f)$

COMMITMENT                                        NO. G10100086        A1(9)

T H E  S T A T E  O F  T E X A S                  IN JUSTICE'S COURT
                                                  PRECINCT NO. 1
COUNTY OF GALVESTON


The State of Texas, to the Sheriff of GALVESTON County, Greeting:

YOU ARE HEREBY COMMANDED to commit to the jail of GALVESTON

County the body of **FLORENCE, THOMAS W**

on the charge of **SEXUAL ASSAULT OF A CHILD**

The said defendant may be released on **Bond Amount:** $250,000

Fine Amount:$            $.

WITNESS my official signature, this date of April    22nd , 2010

_____
Justice of the Peace, Precinct 1

A1(9)

404 S.W.3d 734 (2013)

The **STATE** of Texas, Appellant

v.

Boris ZORRILLA, Appellee.

No. 04-12-00360-CR.

Court of Appeals of Texas, San Antonio.

May 22, 2013.

*735 Paul J. Goeke, Attorney At Law, San Antonio, TX, for Appellant.

Lauren A. Scott, Assistant District Attorney, San Antonio, TX, for Appellee.

Sitting: KAREN ANGELINI, Justice, SANDEE BRYAN MARION, Justice, PATRICIA O. ALVAREZ, Justice.

## OPINION

Opinion by: SANDEE BRYAN MARION, Justice.

The State of Texas appeals the trial court's granting of appellee's motion to quash the complaint. Because we conclude the complaint was sufficient, we reverse and remand.

## ANALYSIS

The complaint states as follows:

> Before me the undersigned authority on this day personally appeared affiant, who after being duly sworn by me on oath deposes and says that affiant has good reason to believe and does believe that in the County of Bexar and the **State** of Texas, and before the making and filing of this complaint, on this 1 [sic] day of October, 2009, Zorrilla, Boris committed the offense of Criminal Trespass — Habitation against the peace and dignity of the **State**.

An information based on the complaint was also filed. The information alleged that "in said County of Bexar and **State** of Texas, and before the making and filing of this information, on or about the 1st Day of October, 2009, BORIS ZORRILLA, hereinafter called defendant, did intentionally and knowingly REMAIN in a HABITATION of another, namely: Lori Green, without effective consent of Lori Green, and the said defendant having RECEIVED NOTICE TO DEPART BUT FAILED TO DO SO ...."

Appellee filed a motion to quash both the information and the complaint alleging, among other things, that both documents failed to comply with the statutory and judicially-created requirements for a valid information and **complaint** because the documents did not **state** the time and place of the commission of the offense as definitely as could be done by the affiant. After a hearing, the trial court granted the motion to quash.

A valid complaint is a prerequisite to a valid information. TEX.CODE CRIM. PROC. ANN. art. 21.22 (West 2006); _Villarreal v. State,_ 729 S.W.2d 348, 349 (Tex. App.-El Paso 1987, no pet.). The purpose of a complaint is to apprise the accused of the facts surrounding the offense with which he is charged so that he may prepare a defense. _Vallejo v. State,_ 408 S.W.2d 113, 114 (Tex.Crim.App.1966); _Kindley v. State,_ 879 S.W.2d 261, 262 (Tex.App.-Houston [14th Dist.] 1994, no pet.).

*736 The particularity in pleading that is required for an indictment or an information[1] is not required for a complaint, and a complaint will not be dismissed due to a mere informality. _Vallejo,_ 408 S.W.2d at 114. "A complaint shall be sufficient, without regard to form, if it has these four 'substantial requisites'":

> 1. It must **state** the name of the accused, if known, and if not known, must give some reasonably definite description of him.

> 2. It must show that the accused has committed some offense against the laws of the **State**, either directly or that the affiant has good reason to believe and does believe, that the accused has committed such offense.



3. It must **state** the time and place of the commission of the offense, as definitely as can be done by the affiant.

4. It must be signed by the affiant by writing his name or affixing his mark.

TEX. CODE CRIM. PROC. ANN. art. 15.05 (West 2005).

Here, the only disputed requisite at trial and on appeal is the third, which requires the complaint to **state** the "place of the commission of the offense, as definitely as can be done by the affiant." *Id.* On appeal, the **State** asserts the complaint satisfied this requisite because "the complaint states that the affiant believed that the offense was committed on the 1st day of October, 2009 in Bexar County." Appellee counters that this argument would re-write article 15.05 to require the venue, as opposed to the place, of the offense.

The sufficiency of a complaint is a question of law. *See State v. Moff,* 154 S.W.3d 599, 601 (Tex.Crim.App.2004) (considering sufficiency of indictment). The narrow issue before us is whether merely stating "County of Bexar" is sufficient or did the **State** need to allege a more specific location of the habitation appellee is accused of trespassing upon. Because the resolution of this question of law does not turn on an evaluation of the credibility and demeanor of a witness, the trial court in this case was not in a better position to make the determination; therefore, we conduct a de novo review of the issue. *Id.* With one exception[2] we have found no case that specifically answers this issue. However, in other cases, although the issue \*737 was not whether "place" was adequately described, courts have concluded the complaints that alleged only the county of the alleged offense to be sufficient.

For example, in *Reyes v. State,* the complaint charging defendant with aggravated robbery was sufficient because it alleged "the affiant has good reason to believe" that in Harris County, Texas, Carlton Reyes Franklin (aka Franklin Carlton Reyes) did on or about November 30, 1979, then and there commit the two counts of the offense of aggravated robbery ...." 630 S.W.2d 822, 822-23 (Tex.App.–Houston [1st Dist.] 1982, no pet.). Likewise, in *Vallejo,* the complaint stated, in pertinent part, as follows:

> ... ONE HERMAN R VALLEJO JR [] ON OR ABOUT THE 31 DAY OF MAR —, 1965, AND BEFORE THE MAKING AND FILING OF THIS COMPLAINT, WITHIN THE INCORPORATED LIMITS OF THE CITY OF AUSTIN, IN TRAVIS COUNTY, TEXAS, [] did drive and operate a motor vehicle upon a public street therein situated at a speed which was greater than was then reasonable and prudent under the circumstances then existing, to-wit, at a speed of 45 miles per hour, at which time and place the lawful maximum prima facie reasonable and prudent speed indicated by an official sign then and there posted was 30 miles per hour ....

408 S.W.2d at 114. The Court of Criminal Appeals held the complaint sufficient because the appellant "from reading the complaint, could ascertain with reasonable certainty with what he was being charged so as to properly prepare a defense." *Id.; see also Cisco v. State,* 411 S.W.2d 547, 548 (Tex.Crim.App.1967) (driving while intoxicated "upon a public highway in said Harris County"); *Nam Hoai Le v. State,* 963 S.W.2d 838, 844 (Tex.App.–Corpus Christi 1998, pet. ref'd) (speeding "upon a public highway outside an urban district upon a federal highway" "in the County of Jackson"); *Kindley,* 879 S.W.2d at 263 (displaying an expired license plate "in the County of Harris").

Based on these cases, we are constrained to conclude the complaint in this case, which only alleged Bexar County as the place of the offense, satisfied the requisites of article 15.05 sufficiently to apprise appellee of the offense with which he was charged so that he could prepare a defense. Therefore, the trial court erred in granting appellee's motion to quash.

## CONCLUSION

We sustain the **State's** issue on appeal and reverse the trial court's order. We remand the cause for further proceedings.

[1] Similarly, the purpose of an information is to notify the accused of the charged offense and its elements so that he may properly prepare his defense. *State v. Laird,* 208 S.W.3d 667, 670 (Tex.App.–Fort Worth 2006, no pet.). The Texas Code of Criminal Procedure sets forth nine requisites for a valid information, including "that the place where the offense is charged to have been committed is within the jurisdiction of the court where the information is filed; ... [t]hat the time mentioned be some date anterior to the filing of the information, and that the offense does not appear to be barred by limitation; ... [and] [t]hat the offense be set forth in plain and intelligible words ...." TEX.CODE CRIM. PROC. ANN. art. 21.21(5)-(7).

[2] The only case that contains similar facts is *Villarreal,* in which the following complaint charging the defendant with criminal trespass was held not sufficient: "[O]n (or about) the 27 (sic) day of September, A.D. 1985, and before the making and filing of this complaint, in Justice of Peace Precinct No. 3 of Jeff Davis County, State of Texas, [the accused] did then and there unlawfully and willfully commit criminal trespass Sec. 30.05 class B against the peace and dignity of the State." 729 S.W.2d at 349. The *Villarreal* court, with no further analysis, held article 15.05, section 3, requires the designation of the place of the offense," reversed the conviction and remanded with instructions to dismiss. *Id.* However, in that case, the complaint was filed in a justice of the peace court and section 15.05 does not apply to the sufficiency of complaints in justice or municipal courts. *See* TEX.CODE CRIM. PROC. art. 45.019 ("Requisites of Complaint in Justice and Municipal Courts).

Save trees - read court opinions online on Google Scholar.

*Exhibit* A4



**FOURTEENTH COURT OF APPEALS**
1307 San Jacinto, 11th Floor
Houston, Texas 77002

Tuesday, February 15, 2011

RE: Case No. 14-10-01228-CR

Style: In Re Thomas Florence

Please be advised that on this date the Court DENIED relator's motion for revaluation of relator's writ of mandamus in the above cause.

Christopher A. Prine, Clerk

T. C. Case # 10CR1217

JASON MURRAY
DISTRICT CLERK GALVESTON COUNTY
600 59TH STREET
ROOM 4001
GALVESTON TX 77551

A4

261

A5(a)

## AFFIDAVIT

My name is Ms. Amber Maries Guarnelo I am over 18 years of age and I swear my statement is true under penalty of perjury.

I was not found about one month pregnant on February 24 or 27 2010, as I've stated in my prior statement the police report that I've read the events are false.

I found out I was about one month pregnant was on February 14, 2010 when at the hospital. I was not found pregnant on February 24 or 27, 2010 at Ben Taub.
Mr. Garcia, Ms. Holly Johnson and Galveston Assistant District Attorney who harassed and threaten me. Ms. Rebecca Russell, Mr. Brandon Sims and the District Attorney that prosecuted Thomas Florence all knew I was no found pregnant on February 26 or 27, 2010 at Ben Taub , but February 14, 2010. The District Attorney's peoples were mad I refuse to lie for them on Thomas Florence and refuse to come to court on my own.

Ms. Holly Johnson came back to my house on January 19, 2011 to get my DNA after she had obtained Thomas and my baby's DNA on January 4, 2011.
I refuse to open the door for her to give her my DNA. She called my mother on the phone at work and told her I wouldn't open the door. Ms. Johnson told me if didn't open the door and give it to her she would have CPS take my child. Mr. Johnson, Mr. Garcia and the D.A. all knew that my child was born on October 22, 2010 by my mother. I did not call them as they stated and told them I had my baby.

I'm not a victim and I'm not a complaining witness on Thomas Florence as they stated.
I was told by the owner of the Children Center to color for the video in a coloring book. When we go in her and Ms. H. Johnson kept bugging me, but I kept refusing until they got on my nerves, telling me what I need to say and do. This video was done after I had my baby not before.
Thomas wife kept harassing my mother by phone and told us when my baby is born she was bringing her and Thomas daughter down to Galveston to give DNA. This was right before Thomas was setup by his wife to be arrested. I told him his wife was no good and was talking to Mr. Garcia and them. He did not believe me until it was days after when he was arrested.

I ask that my affidavit be given to the Courts and reviewed.

Thanks,

X *Amber Guarnelo*

X *Rey*

12/13/14

REYNALDO MARTINEZ
My Commission Expires
November 12, 2017
NOTARY PUBLIC STATE OF TEXAS

A5(a)

THE STATE IN IT'S BRIEF AT 14-16 CITES THE VIDEO AND FALSE AFFIDAVIT AND AMBER'S VIDEO.

THE STATE ATTEMPTED TO RAILROAD APPELLANT BY USING A FABRICATED 2-26 or 27-10 DATE OF A RAPE FOR CODE 22.011(a)(2)(1); r.r. 1 of 2 PAGE 101-102, GARCIA'S OWN ADMITTANCE, SEE, C.R. VOL 4 of 6 AT 697-698 G.P.D. REPORT NO. 2010-13986, FRANKS PREPONDERANCE OF EVIDENCE, SEE, RIO JONES, SUPRA.

FALSE HOSPITAL VISIT(S) ON 2-26 or 27-2010. AMBER REVEALED THIS VIDEO WAS DONE AFTER HAVING HER BABY OCTOBER 22, 2010; SEE VIDEO WHEN ASKED A QUESTION SHE CLEARLY STATES THAT WAS A LONG TIME AGO, FEBRUARY 26-27-10 TO MARCH 9, 2010 IS WEEKS APART.

SEE VIDEO WHERE McGARY COMES OUT AND LEADS AMBER BY STATING AFTER FEBRUARY 14, 2010. SEE VIDEO WHERE AMBER STATES I FEEL BAD ABOUT DOING THIS (VIDEO) EXHIBIT 3 FRANKS r.r. 2 of 2.

THROUGHOUT THE FRANKS HEARING IT ALLEGED Id. EVENTS OCCURED 2-26 or 27-10.

SEE, NORRIDES VIDEO EXHIBIT 5 FRANKS r.r. 2 of 2 NORRIDE DOES NOT KNOW WHO AMBER WAS WITH ON THESE FICTIOUS DATES AND IT DOES NOT MAKE IT TO 2-26-28 2010 FOR CAR NO. 2010-13986; 2010-13774 TO BE FILED SEE HOLLY JOHNSON FOLLOW UP REPORT FILED WITH COURT.

THE STATES WHOLE CAUSE NO. 2010-13986 IS A LIE AND VIOLATED APPELLANTS DUE COURSE AND DUE PROCESS RIGHTS, SEE, DUGGIAN, SUPRA 469, A LIE IS A LIE NO MATTER IT'S SUBJECT NOR DOES IT MATTER THAT THE FALSEHOOD GOES MERLY TO AN ISSUE OF CREDIBILITY.

THE STATES ILLEGALLY FILED BRIEF VIOLATES T.r.a.r. RULE 52.11(c)(d), THE APPELLANT MOVE THE COURT TO TAKE Id. NOTICE. THE FRANKS HEARING SPEAKS FOR ITSELF THE FALSEHOODS, LIES BY THE STATE, DUGGIAN, 469 SUPRA.

EVIDENCE TOUCH

I Amber Guarnelo would like to 11 MAY 13 AM... to the judge and district ... that officer G. Gonzalez ... Crossroads police ... has been calling my mother, about the case against thomas Florence an has told my mom to ask me "If I was still mad at him for putting thomas in Jail." He also hes came to my House and showed my mom Thomas criminal records I was in the next room and i heard him tell my mom to Help us put him away and that thomas florence is already wanted for other domestic charges I do not wish to pursure any charges against thomas florence these allegations are false

*Amber Guarnelo*

SWORN TO BEFORE ME ON THIS 23 February 2011.



RICHARD CARRASCO
MY COMMISSION EXPIRES
September 2, 2012

*Richard Carrasco*
NOTARY PUBLIC
STATE OF TEXAS

PHYSICAL
EVIDENCE

I Amber Guarnelo dont wish
to do with tha case against
thomas wayne florence that
involves me and i do not wish
to pursure with charges against
thomas florence also also I would
to add in the police report that
I have reading there are false
allegations against thomas florence

Amber Guarnelo

SWORN TO BEFORE ME ON THIS 23 Feb. 2011

Richard Carrasco
NOTARY PUBLIC
STATE OF TEXAS

RICHARD CARRASCO
MY COMMISSION EXPIRES
September 2, 2012




IOCR1217

# Galveston Police Department

Type of Incident: Sexual Assault of a Child

Reporting Officer: H. Johnson    Badge #: 340

No: 2010-13986

Date of Incident: 2/26/2010

Date of Report: 2/26/2010

currently at Ben Taub Hospital where Amber was receiving medical and psychiatric treatment for drug abuse and suicidal thoughts. Robbie told Officer Garcia that a pregnancy test was given to Amber and it was positive that she was pregnant and Amber told her the father was Thomas Florence.

Robbie also told Officer Garcia that she received a phone call from a female indentifying herself as Thomas Florence's wife; Wannette Jackson. Robbie said Wannette told her that Thomas was a drug dealer and assaulted her (#2010-10125). Robbie said Wannette told her she was aware of the relationship between Thomas and Amber.

## CID follow up:

**March 9, 2010**

*SEE. VIDEO/ EVIDENCE SUBMITTED*
*SEE COACHED VIDEO & THE FALSE STATEMENT BY JOHNSON IN AFF. (2-26-10) FALSE CHARGE.*

Forensic Interviewer Cheryl McCarty conducted a voluntary videotaped interview with Amber Guarnelo at the Child's Advocacy Center (I observed this interview from a separate room) Amber said she was at the Child's Advocacy Center to talk about her and another person named Thomas. Amber said she met Thomas through a friend and is about one month pregnant and the father might be Thomas. Amber describes sex as when "my everything touches their everything and the boy part goes inside the girl part." Amber said she has had sex with Thomas about eight times at different houses in Galveston. Amber said the last time she had sex with Thomas was on February 26, 2010. Amber said this happened at a house in Galveston on a mattress on the floor. See Amber Guarnelo's videotaped interview.

X SEE EXH.19

**March 10, 2010**

FALSIFIED SEE CASE # 2010-1005 ROBBIE MAKES
FALSE STATEMENT THEN | THIS REPORT IS SAID TO BE DONE IN 2009

I conducted a voluntary videotaped interview with Robbie Guarnelo at the Galveston Police Department. Robbie stated that Amber ran away on January 4, 2010 and three days later Officer Garcia located Amber and returned her home. Robbie said Amber's probation officer sent Amber to Juvenile Detention for 18 days on hopes of drug rehabilitation. Robbie said an opening did not become available during those days so Amber was sent home. ✓ WOULD BE 1-7-10

Robbie said Amber was home for a day and a half and ran away again. Robbie said Amber was gone for five days. Robbie said Amber was home for about a week and ran away again for eight days. When she was located after being gone for eight days, this police report was made (#2010-13986). Robbie said Amber would not tell her where she had been. FABRICATED/ FALSIFIED

Robbie said on the way to Ben Taub hospital Amber blurted out that she might be pregnant. Robbie said Amber starting saying, please Mom don't lock him up. Amber told Robbie that Thomas had planned it. Robbie said when they got to Ben Taub, Amber was given a pregnancy test and the results were positive. Robbie said Amber said to her again please don't lock him up.

Robbie said Amber told her she was positive that Thomas was the father because "customers" had to use condoms but he (Thomas) did not.

→ IT DOES NOT MAKE IT TO FEBRUARY 19, 2010 FOR GPD # 2010-12135 ALLEGE RUNAWAY REPORT TO BE GENERATED ALLEGE PART OF THE ALLEGE 7-8 DAY'S LEADING UP TO THE 2-26 or 1-2010 SEXUAL ASSAULT AND GPD # 2010-13774, 2010-13986 EVENTS TO OCCURE ARE FOR EITHER GPD #'S TO BE KNO- ... PUT IN TCIC, NCIC or ALLEGE 2-27-10 EVIDENCE 708 A5(E) ... BE COLLECTED AND PUT IN PROPERTY ROOM. SEE. COOPER V.

IT MAKES IT TO 2-14-16-2010 DAY'S CAN'T THEY SELF

A5(E)

CAUSE NO. 10CR1217

THE STATE OF TEXAS

VS.

THOMAS WAYNE FLORENCE

IN THE DISTRICT COURT

GALVESTON COUNTY, TEXAS

56th JUDICIAL DISTRICT

## MOTION FOR MATERIAL WITNESS BOND

COME NOW THE STATE OF TEXAS, by and through her Assistant District Attorney, Kayla Allen, and request this Honorable Court to issue a writ and a material witness bond on Amber Guarnelo. The State hereby requests that the bond be set at $25,000 based on the following facts:

(1.) Amber Guarnelo is a material fact witness in Cause no. 10CR1217, offense of Sexual Assault of a Child that occurred on February 27, 2010. She is a material witness, crucial to the presentation of this Sexual Assault of a Child case. Amber Guarnelo is the victim in this case.

(2.) The District Clerk's Office issued a subpoena for Amber Guarnelo on May 23, 2011. Amber Guarnelo was served at the District Attorney's Office on May 23, 2011 by Investigator Harry Millo. Also Robbie Guarnelo, who is the victim's mother, was also served at the Galveston County District Attorney's Office on July 11, 2011 by investigator Carol Adkins. On July 28, 2011 the Defendant subpoenaed both Robbie and Amber Guarnelo for his Franks Hearing on July 29, 2011, in which both appeared and were told be return Tuesday, August 2, 2011 at 8:30 a.m.

(3.) Amber Guarnelo has been uncooperative and has stated to the District Attorney's Office that she will not testify in the above cause number which was set for trial on August 1, 2011. On August 1, 2011, the District Attorney's Office was contacted by Robbie Guarnelo, the mother of Amber Guarnelo, and she informed them that Amber had left to go to the store and never returned. Robbie Guarnelo also informed the District Attorney's Office that family members of the Defendant had been in contact with her and were persuading her from cooperating with the State.

(4.) Credible information was received that Amber Guarnelo has been receiving money and benefits from the defendant's sister Sharon Florence in order to persuade her to be unavailable as a witness for trial. Amber reported to her mother that Sharon Florence had given her $120. Robbie Guarnelo believed that would be enough to pay for her to go to Louisiana where the Defendant's brother is living.

I Don't Have Any family Or A Brother Or An /That lives In Louissiana



## AFFIDAVIT for SEARCH WARRANT

In the name and by the authority of the State of Texas, County of Galveston:

I, Detective H. Johnson (affiant), being a peace officer under the laws of Texas, and being fully sworn, on oath make the following statements and accusations:

Affiant is a police detective assigned to investigate crimes that occur in Galveston. Affiant has over 10 years of experience as a peace officer. Affiant has personally investigated Galveston police case number 2010-13986.

A. There is in Galveston County, Texas, a suspected person described and located as follows:

Thomas Wayne Florence (Black male, date of birth: 6/26/1968 who is currently in the Galveston County Jail.)

B. There is at suspected place and premises an item or items that constitute evidence that tends to show that a particular person committed an offense, to-wit; Sexual Assault of a Child.

Affiant requests that a search warrant be issued to search for and seize:
A sufficient quantity of a known sample of the
- Saliva

from the body of Thomas Wayne Florence, in order that it may be forwarded to a competent forensic laboratory where the known samples can be compared to the suspected samples recovered and preserved as evidence in this case; all in accordance with accepted medical practice.

C. It is the belief of the affiant and he hereby charges and accuses that:

heretofore, to-wit, on or about the 26th day of February A.D. 2010, and before the making and filing of this complaint, in the County of Galveston and State of Texas, Thomas Wayne Florence, did then and there intentionally or knowingly cause the penetration of the vagina of Amber Guarnelo, a child who was then and there younger than 17 years of age and not the spouse of the defendant, by defendant's penis.

D. Affiant has probable cause for said belief by reason of the following facts:

1. Affiant learned from reading Galveston Police Department case #2010-12135 (runaway report) that on February 19, 2010 Amber Guarnelo had not returned home and was entered into TCIC/NCIC as a runaway.
2. Affiant learned from reading Galveston Police Department case #2010-13986 that on February 26, 2010 Officer Garcia #733 called Thomas Wayne Florence in regards to Amber Guarnelo's whereabouts. Officer Garcia reported that Thomas Florence had given him information in the past when Amber Guarnelo had runaway and was able to provide information on her whereabouts. Affiant learned from reading the police report #2010-13986 that on February 26, 2010 at about 10: 09 p.m. Officer Garcia received a phone call from Lisa Ruiz stating her and Amber Guarnelo would turn themselves into the Galveston Police Department. Affiant also learned from reading the police report that Amber Guarnelo was transported to Ben Taub Hospital for a Psychiatric evaluation for drug abuse, suicidal thoughts and

737



3. Affiant learned from reading case #2010-13986 that on February 26, 2010 Officer Garcia #733 received a phone call from Robbie Guarnelo stating that while at Ben Taub Hospital a pregnancy test was administered to her daughter, Amber Guarnelo the result was positive. Affiant also learned from the police report that when Robbie Guarnelo asked Amber who the father was Amber replied, "T" (A.K.A. Thomas Florence).

4. On March 9, 2010 Forensic Interviewer Cheryl McCarty conducted a videotaped interview with Amber Guarnelo at the Child's Advocacy Center. Affiant observed this interview from a separate room. Affiant observed Amber stated that she is at the Advocacy Center to talk about her and another person named Thomas. Amber said she met Thomas through a friend. Affiant observed Amber say that she is about one month pregnant and the father might be Thomas Florence. Amber describes sex as when "my everything touches their everything and the boy part goes inside the girl part." Affiant observed Amber say that she has had sex with Thomas about eight times at different houses in Galveston. Amber said the last time they had sex was on February 26, 2010. Amber said this happened at a house in Galveston on a mattress on the floor.

5. Affiant spoke with Thomas Florence's wife; Wanette Florence who stated Thomas told her he thought Amber was eighteen years old.

6. Affiant learned from Amber Guarnelo that she gave birth to her daughter on October 22, 2010.

At this time, Affiant has not received known comparison samples as requested above. Affiant believes that a laboratory analysis of the samples is needed for comparison. Such laboratory analysis will constitute evidence that Thomas Wayne Florence committed the offense of Sexual Assault of a Child.

Based on aforementioned facts: affiant requests that a search warrant be granted ordering that the said Thomas Wanye Florence be taken to a qualified POLICE person, and that a sufficient quantity of saliva be taken from the body of the previously described person to perform tests, analysis and comparisons; all in accordance with accepted medical and police practice.

*Det. N. Johnson #340*

Sworn to and subscribed before me, this _____ day of _____ 2011 at _____ AM/PM.

_____
Magistrate, Galveston County, Texas

_____
Court

THE COURT: That is true.

MR. HALL: Then with regards to Amber, if he's talking about outside the time period when he knew her, which is the window during which this sexual assault is alleged to have occurred -- because she's not on trial for making her pregnant. He's on trial for this sexual assault. So, the only relevant time period can be the time period that he knew her. So, anything that happened outside that time period can't be relevant.

THE COURT: Well, anything that can happen during the gestation period is relevant.

MR. HALL: That's right, Judge.

THE COURT: Okay. And right now we haven't exactly established when that period is.

MR. HALL: Right.

THE COURT: We have established a period that the State would like it to be, you know, a specific time.

So, I guess my instruction to you is: Can you narrow down your question? Number one. It's not relevant when she -- when the witness had sex with other men. Not her. You can talk about Amber within a reasonable time frame. Not like forever, but a reasonable time frame.



## RESPONSES OF LT. CHAMBERS TO DEPOSITION ON WRITTEN QUESTIONS

REQUEST NO. 1: Wasn't you the Lt. on duty March 27, 2010?

Response:    Yes.

REQUEST NO. 2: On March 27, 2010 when G.P.D. Officer Clemente Garcia III spoke to you, didn't he tell you that I was allegally wanted for a parole violation?

Response:    No.

REQUEST NO. 3: Isn't it true that Clemente Garcia III told you on March 27, 2010 that I committed a February 26 or 27 2010 sexual assault?

Response:    Yes.

REQUEST NO. 4: Did you sign off on G.P.D. police report no. 2010-20649 March 27, 2010?

Response:    I approved a portion of that report.

REQUEST NO. 5:    Did Clemente Garcia III tell you that he was about to illegally and unlawfully arrest stalk me with a statutory null and void TACT BPP arrest warrant that was not signed to (illegally) legally and lawfully arrest me? (with on 3-27-2010).

Response:    No.

REQUEST NO. 6:    Does the shift Lt.(s) on March 27, 2010 review(ed) use of force investigation: documents and video of shift (sgt's) investigation?

Response:    Yes.

REQUEST NO. 7: Was Clemente Garcia and your cell phones used on 3-27-10 (GPD No. 2010-20649) was issused by the City of Galveston?

Response:    I do not remember.

REQUEST NO. 8: If so what carrier is the city contracted with on 3-27-10?

Response:    I do not remember.

REQUEST NO. 9: What was you and C. Garcia's cell phone(s) numbers on file: records with GPD on 3-27-10?

Response:    Objection. FED.R.CIV.P. 26(b). The requested information is beyond that which is relevant to any claim or defense at issue in this case.



3

**REQUEST NO. 10:** Isn't it a crime to fabricate police reports to cover up an illegal arrest and assault upon a working: college citizen.

Response:     It is a crime to culpably engage in illegal activity.

ASK

14.     Clemente Garcia III, when you exited the personal SUV that you and A. Mommad was in while I was already in handcuffs by Sgt. Chapman, didn't you walk up and said remember me "mother fucker" and kneed me in the top of my eye busting it open?

ANSWER:     No.

15.     Clemente Garcia III, wasn't you referring to March 24, 2010 when you seen [sic] me at G.P.D.?

ANSWER:     I don't understand this question.

16.     Clemente Garcia III isn't it true that your allege sexual assault delusions in chief Report No. 2010-13986 was alleged to had occurred on February 26, 2010? And changed to February 27, 2010 events?

ANSWER:     No.

17.     Sgt. Archie Chapman, didn't you run your patrol car upon the curb in front of a trailer and hit me with your car and knocked me down and I did not slip as you falsely state in your report and that [I] bumped your car after you tried to block me?

ANSWER:     I am not Sgt. Archie Chapman.

18.     Sgt. Chapman, didn't you, A. Mohammad and other officers present witness Clemente Garcia III, walk up and stated remember me mother fucker and kneed me in the face busting my top eye which EMS stated needed 3-4 stitches?

ANSWER:     I am not Sgt. Archie Chapman.

19.     Clemente Garcia III, you're aware that Galveston Police Department policies and procedures prohibits unnecessary unprovoked use of force upon a citizen?

ANSWER:     I am aware that police department policy prohibits use of unreasonable force.

20.     Clemente Garcia III, aren't you're aware that you never had valid, legal documents on 3-27-2010 to arrest, detain me before and after you and Sgt. Chapman assaulted me?

ANSWER:     No. I certainly did not assault you and am aware of no information suggesting Sergeant Chapman assaulted you.

## RESPONSES TO REQUEST FOR ADMISSION

(1) ~~Defendant, Clemente Garcia III, isn't it true that none of the events cited in GPD No. 2010-13986, your chief report ever took place on either 2-26 or 27, 2010?~~

~~Response:    Deny.~~

(2) ~~Defendant, Clemente Garcia III, didn't you testify that you spoke to me on 2-26-2010 via cell phone at trial and in GPD No. 2010-13986 and that you had a Cricket cell phone?~~

~~Response:    Deny.~~

(3) ~~Defendant, Clemente Garcia III, didn't you state in (GPD No. 2010-13986) that you called me on my cell phone no. (832) 388-8329 on February 26, 2010 and February 19, 2010 GPD No. 2010-12135?~~

~~Response:    Admit.~~

(4) Defendant Clemente Garcia III, did you call (832) 388-8329 any other dates January or February 2010?

Response:    Objection. FED.R.CIV.P. 36(a); 33.

(5) Defendant, Clemente Garcia III, was cell phone no. (Cricket) (409) 443-6434 your cell phone on February 26, 2010 are any other dates?

Response:    Objection. FED.R.CIV.P. 36(a); 33.

(6) Defendant, Clemente Garcia III, was (409) 443-6434 truly your cell phone?

Response:    Objection. FED.R.CIV.P. 36(a); 33.

(7) ~~Defendant, Clemente Garcia III, didn't you testify at Lock 1217-2010-13986 trial and stated you never received a Cricket bill for your cell phone? (409) 443-6434?~~

~~Response:    Admit.~~

(8) Defendant, Clemente Garcia III, did you pay your Cricket (409) 443-6434) monthly bill?

Response:    Objection. FED.R.CIV.P. 36(a); 33.

3



## AMENDED RESPONSES TO REQUEST FOR ADMISSION

(1)  Defendant, Clemente Garcia III, isn't it true that none of the events cited in GPD No. 2010-13986, your chief report ever took place on either 2-26 or 27, 2010?

Response:  Deny.

(2)  Defendant, Clemente Garcia III, didn't you testify that you spoke to me on 2-26-2010 via cell phone at trial and in GPD No. 2010-13986 and that you had a Cricket cell phone?

Response:  Deny.

(3)  Defendant, Clemente Garcia III, didn't you state in (GPD No. 2010-13986) that you called me on my cell phone no. (832) 388-8329 on February 26, 2010 and February 19, 2010 GPD No. 2010-12135?

Response:  Admit.

(4)  Defendant Clemente Garcia III, did you call (832) 388-8329 any other dates January or February 2010?

Response:  Objection. FED.R.CIV.P. 36(a); 33.

(5)  Defendant, Clemente Garcia III, was cell phone no. (Cricket) (409) 443-6434 your cell phone on February 26, 2010 are any other dates?

Response:  Objection. FED.R.CIV.P. 36(a); 33.

(6)  Defendant, Clemente Garcia III, was (409) 443-6434 truly your cell phone?

Response:  Objection. FED.R.CIV.P. 36(a); 33.

(7)  Defendant, Clemente Garcia III, didn't you testify at Lock1217-2010-13986 trial and stated you never received a Cricket bill for your cell phone? (409) 443-6434?

Response:  Admit.

(8)  Defendant, Clemente Garcia III, did you pay your Cricket (409) 443-6434) monthly bill?

Response:  Objection. FED.R.CIV.P. 36(a); 33.

3



2010.

Assuming for argument's sake, that the offending sentence was removed from the affidavit, the remaining portions of the affidavit state probable cause for the arrest warrant and for the search warrant.

In Issue No. 3, appellant claims a different matter. He says that the complaint does not meet the statutory requirements because it does not state "in the name and authority of the State of Texas nor conclude with against the dignity of the State." Appellant's reliance on *Texas Code of Criminal Procedure*, Art. 1.23 is misplaced. He does not appear to know the difference between an indictment or information and an affidavit alleging a criminal act, that is, a "complaint".

*Texas Code of Criminal Procedure*, Art. 15.04 defines a "complaint." If an affidavit before the magistrate or district or county attorney charges the commission of an offense it is called a "complaint." Article 15.05 says that a complaint shall be sufficient, without regard to form, if it has these substantial requisites:







1. It must state the name of the accused, if known, and if not known, must give some reasonably definite description of him.

2. It must show that the accused has committed some offense against the laws of the State, either directly or that the affiant has good reason to believe, and does believe, that the accused has committed such offense.

3. It must state the time and place of the commission of the offense, as definitely as can be done by the affiant.

4. It must be signed by the affiant by writing his name or affixing his mark.

The affidavit filed by Officer Holly Johnson in this case meets the requirements of *Texas Code of Criminal Procedure*, Art. 15.05.

Appellant's issue No. 6 should be overruled because it is multifarious, and because appellant did not carry his burden of proof in the *Franks* Hearing. The burden is on the defendant to establish the allegation of perjury or reckless disregard of the truth in an affidavit. He must do this by a preponderance of the evidence. Only if the defendant meets that burden, is the affidavit's false material set aside. If the remaining content of the affidavit still presents probable cause, the complaint or





my complaint was filed
( mississippi ) by J.P. Ct. 4-22-10

The Appeal court stated
that A complaint does not
have to state ART. 1.23 In
Texas. And Intentionally
stated I was talking About
A search Warrant.
They Knew they would
have had to grant my appeal.
See Also my Reply Brief
The Court omits.

98 S. Ct. at 2676 (holding that affidavit must be voided only if remaining content is insufficient to support probable cause). Regarding his complaint that the affidavit alleged an "impossible date" for the offense, appellant cites no authority that the affidavit was required to allege the exact date of the offense to be valid, and, indeed, the law does not support such a conclusion. *See* TEX. CODE CRIM. PROC. ANN. art. 18.01 (Vernon 2005) (providing requirements for affidavit in support of search warrant). Thus, we conclude that the trial court did not err in denying appellant's motion to suppress the arrest warrant and DNA evidence.

Appellant also argues that the complaint associated with the search warrant did not meet the requirements of Code of Criminal Procedure article 1.23, because it did not state "in the name and authority of the State of Texas nor conclude with against the dignity of the State." However, these requirements pertain to an indictment, not a "complaint." *See id.* art. 1.23 (Vernon 2005). Appellant's indictment contained the statutorily required language.

Finally, appellant argues that the trial court erred in failing to make findings of fact and conclusions of law in denying his motion to suppress. However, appellant does not cite any authority indicating the trial court was required to do so. Rather, when the trial court does not make findings of fact, we assume that it made implicit findings of fact that support its ruling, as long as the findings are supported by the record. *See Torres*, 182 S.W.3d at 902.

14

SEE BARRON v STATE (960 SW2d 703, 704 (TEX APP BEA-UMONT 1988) SEE, P 21,24,26 OF APPELLANTS BRIEF REFUTES THIS

A7

01-11-00822-CR

FILED IN
1ST COURT OF APPEALS
HOUSTON, TEXAS

OCT 28 2011

M KARINNE McCULLOUGH

CLERK_____

# CLERK'S RECORD

## TRIAL COURT NO. 10CR1217

In the 56TH District Court of Galveston County, Texas. Honorable LONNIE COX, Judge Presiding

### THE STATE OF TEXAS

**MAIL RECEIVED**

### VS.

### THOMAS WAYNE FLORENCE

Appealed to the FIRST Judicial District Court of Appeals for Texas, in Houston, Texas

Attorney for Appellant:
Name: DIANE D. CLARK
Address: 3025 MARINA BAY DRIVE
SUITE 108
LEAGUE CITY, TX 77573

Phone No.: (281) 535-3500

Bar No. 04276600

Attorney for Appellee:
JACK ROADY
Criminal District Attorney
600 59TH STREET, SUITE 1001
GALVESTON, TEXAS 77551

Phone No.: (409) 766-2355

Bar No.: 24027780

Delivered to the FIRST Judicial District Court of Appeals for Texas, in Houston, Texas, by mail on the 27th day of October, 2011.

Jason E. Murray
JASON E. MURRAY
District Clerk
Galveston County

By: Brandi Maples , Deputy Clerk

### Court of Appeals Cause No. 01-11-00822-CR

Filed in the FIRST Court of Appeals, Houston, Texas, on this the _____ day of _____, 2011.

M. KARINNE MCCULLOUGH, CLERK

By:_____, Deputy Clerk

Evidence/Property Receipt ............................................................ 568

Motion for Independent Examination of DNA Evidence ............ 572

Motion to Appoint Expert to Review the State's DNA Testing Results. ... 575

State's Fourth Amended Proposed Witness List ....................... 580

State's First Motion for Continuance ......................................... 582

State's Fifth Amended Proposed Witness List ........................... 599

Motion for Appointment of Investigator ..................................... 617

Supplemental Evidence/Property Receipt .................................. 619

Motion for Independent Handwriting Analysis. .......................... 621

Order on Motion to Recuse After Hearing .................................. 624

## VOLUME IV

Pro Se Defendant's Objection to the Impeding of Discovery by the States District Attorney's Brandon Sims, Kayla Allen in Bad Faith Filing Falsified, Altered, Omitted Records ............................................................. 625

Pro Se Defendant's Objections to Stated Issues ...................... 629

Pro Se Motion for Court to Order the January 4, 2011 Video Turned Over and Held That's in Possession of the Sheriff ................. 631

Pro Se Motion for Evidence Favorable to the Defendant and Brief in Support Thereof ........................................................... 636

Pro Se Motion to Dismiss Court-Appointed Counsel ............... 640

Pro Se Defendant's Objection to the Impeding of Discovery by the States District Attorney's Brandon Sims, Kayla Allen in Bad Faith Fiing Falsified, Altered, Omitted Records ................... 643

Pro Se Motion for Change of Venue .......................................... 663

Pro Se Defendant's Motion for a Franks Hearing to Suppress the Invalid Falsified Indictment ...................................................... 667

Pro Se Defendant's Motion for Bond Dismissal ........................ 670

Pro Se Letter ............................................................................. 672

Pro Se Defendant's Motion for a Franks Evidentiary Hearing this is the Defendant's 2nd Motion Others Filed Went Unanswered ... 674

Order to Release Medical Records ............................................. 771

State Commission on Judicial Conduct ...................................... 772

State Commission on Judicial Conduct ...................................... 793

## VOLUME V

809

Pro Se Letter

Pro Se Defendant's Motion for Disclosure of Grand Jury Material in Reference to  
Cause No. 10CR1217 Under Tex. Code Crim. Proc. Ann. Art. 20.02(d).   908

Pro Se Defendant Motion to Honorable Judge Lonnie Cox of Said Court to Order  
an Investigation into the Fabrication, Falsified Charge and Documents File and  
Submitted to his Court in the Bad Faith Malicious Prosecution and Acts by the   918  
State and Agents   940

Pro Se Letter   946

District Attorney's Discovery List   947

Notice of Filing of Medical Records   948

State's Sixth Amended Proposed Witness List   951

Notice of Filing Business Records

Pro Se Defendant's Refiled Motion for the Request of Funds for Expert Witness   1015  
Funds, See April 15, 2011 Letter from this Court to the Defendant

## VOLUME VI

Pro Se Defendant's Motion for the Court to Order the Following to Produce   1017  
the Following Original Documents to the Defendant and Court to Review

Pro Se Defendant's Supplement to his Motion to Suppress Evidence Fruits of  
Illegal Search and Arrest Motions that was filed March 21, 2011, April 1, 2011   1020  
April 20, 2011   1037

District Attorney's Discovery List   1038

District Attorney's Discovery List   1039

Motion to Quash Subpoenas

Pro Se Defendant's Motion to Request for Continuance To Have His Own  
Expert Rick W. Staub PhD and Orchid Cell Mark to Conduct an Independent   1041  
Examination of the State's Primary DNA Evidence   1049

Defendant's Motion in Limine   1056

State's First Amended Motion in Limine   1059

State's Seventh Amended Proposed Witness List   1062

Arraignment – Felony   1063

Pro Se Punishment Election   1064

Defense Attorney Strike List   1068

District Attorney Strike List   1072

Jury List

Pro Se Motion to Quash Indictment ... 1073

Motion for Material Witness Bond and Order. ... 1076

Fourth Amended State's Intent to Introduce Extraneous Offenses in Case in Chief and in Punishment Phase of Trial ... 1079

Pro Se Art. 29.13 Motion for Continuance After Trial Begins and Order. ... 1082

Pro Se Defendant's Motion to Dismiss / Mistrial ... 1085

Charge of the Court and Verdict. ... 1087

Jury Communication ... 1092

Charge of the Court on Punishment and Verdict on Punishment ... 1093

Jury Communication ... 1100

Jury Communication ... 1101

Jury Communication ... 1102

Judgment of Conviction by Jury ... 1103

Trial Court Certification of Defendants Right of Appeal ... 1110

Motion to Withdraw as Attorney of Record and Request for Appointment of Counsel on Appeal and Order.. ... 1111

Notice of Appeal ... 1112

Pauper's Oath . ... 1113

Notice of Appointment. ... 1114

Pro Se Motion for New Trial ... 1115

Pro Se Supplement to Motion for New Trial ... 1148

Pro Se Letter - Change of Address ... 1152

Motion for Withdrawal of Counsel and Order. . ... 1154

Supplemental Motion for New Trial ... 1157

Request for Preparation of Reporter's Record and Designation of Matters to be Included and Order. ... 1159

Receipt letter from Court of Appeals ... 1162

Writ of Attachment and Return ... 1164

Judgment NISI . ... 1165

Precept and Return ... 1166

Correspondence from First Court of Appeals . ... 1167

Pro Se Defendant's Motion for Immediate Discharge; Release from the Voided Conviction Without Delay     1168

Pro Se Notice to the Court     1172

Pro Se Defendant's Motion to File Evidence Take Judicial Notice     1182

Pro Se Notice to Court Reporter T.R.A.P. Requirements     1185

Bench Warrant and Return     1188

Pro Se Defendant Motion to Honorable Judge Lonnie Cox of Said Court to Order an Investigation into the Fabricated Falsified Charge and Documents File and Submitted to His Court in the Bad Faith Malicious prosecution and Acts by the State and Agents     1190

Pro Se Petitioner's Motion Under T.R.A.P. 2. Suspension of Rules     1198

Sheriff's Certificate     1202

Clerk's Certificate     1203

CASE NUMBER 10CR1217          IN THE 56TH DISTRICT COURT

THE STATE OF TEXAS
VS                                    GALVESTON COUNTY, TEXAS

THOMAS WAYNE FLORENCE          TRANSCRIPT                    PAGE

INDEX                                                          1

VOLUME I                                                       2

Title Page                                                    10

Index                                                         11

Caption                                                       13

Indictment                                                   19

Docket Sheet                                                 21

Pauper's Oath                                                22

Statutory Magistrate's Warning                               23

Request for Counsel                                          24

Notice of Appointment                                        25

Notice of Appointment                                        28

Motion for Substitution of Counsel and Order                 29

Pro Se Letter                                                30

Pro Se Motion to Appear Before the Grand Jury of Galveston County    33

Motion to Withdraw as Counsel and Order                      36

Pro Se Motion to Appear Before the Grand Jury of Galveston County    37

Precept and Return                                           64

Pro Se Defendant's Motion to Quash Indictment                84

Pro Se Habeas Corpus Combined Writ of Mandamus               91

Pro Se Habeas Corpus Combined Writ of Mandamus               92

Pro Se Motion for Fair and Speedy Trial                      97

Pro Se Defendant's Motion to Quash Indictment                97

Pro Se Defendant's Motion for the Request of Experts Testimony and Evidence
to be Produced at the Probable Cause Hearing                  99

Pro Se Defendant's Motion for Immediate Probable Cause Hearing, Falsely
Charged, Arrested and Detained

Pro Se Motion for Fair and Speedy Trial · · · · · · 110

Pro Se Motion for an Immediate Probable Cause Hearing Falsely Charged Arrested and Detained · · · · · · 111

Pro Se Letter · · · · · 132

Pro Se Motion to Quash Indictment · · · · · · · 136

Pro Se Letter · · · · · · 138

Criminal Docket Control Order · · · · · 142

Agreed Discovery Order · · · · · 143

Pro Se Letter · · · · · · 145

Pro Se Motion for Court to Rule on the Defendant's Probable Cause Motion · · 164

Notice of State's Intent to Use Statement of Child Abuse Victim as to Jennifer Reece 173

State's Proposed Witness List · · · · · 175

Notice of State's Intent to Introduce Extraneous Offenses in Case in Chief and Punishment Phase · · · · 177

Court Correspondence to Attorney Briggs · · · · · 180

Pro Se Letter · · · · · · 182

State's Motion for Continuance and Request for Preferential Setting and Order · 192

Pro Se Judicial and Legal Notice to the Honorable Court · · · 195

Court of Appeals Memorandum Opinion · · · · 202

Pro Se Defendant's Motion to Set Aside Indictment · · · · 204

Pro Se Defendant's Motion for Approval of Private Investigator in the Above Styled Cause · · · · · 222

VOLUME II

Pro Se Defendant's Motion to Dismiss · · · · · 224

Pro Se Defendant's Motion for Approval of Expert Witness Funds · · 259

Court of Appeals Correspondence · · · · · 261

State's Motion for Release of Medical Information and Order · · · 262

State's Motion for Release of Medical Information and Order · · · 265

Inmate Response Letter · · · · · 268

Notice of Filing Business – Medical Records · · · · 289

State's Motion for Discovery of Expert Witness Article 39.14(b) C.C.P. · · 291

A8 (b)

A8 (C)

State's First Amended Proposed Witness List ... 292

First Amended State's Intent to Introduce Extraneous Offenses in Case in Chief and in Punishment Phase of Trial ... 294

State's Motion in Limine ... 296

Second Amended State's Intent to Introduce Extraneous Offenses in Case in Chief and in Punishment Phase of Trial ... 299

Notice of Filing Business – Medical Records ... 302

Motion for Independent Examination of DNA Evidence ... 303

Motion for Independent Examination of DNA Evidence ... 305

First Amended Motion for Independent Examination of DNA Evidence and Order ... 307

Pro Se Defendant's Motion for Subpoena of Records that's Evidence in Said Cause ... 312

Pro Se Defendant's Motion for Approval of Private Investigator Funds in the above Styled Cause ... 314

Pro Se Defendant's Motion for Approval of Expert Witness Funds ... 316

Pro Se Notice to the Court and State that Defendant will be a part of his Defense Team at Trial ... 318

Motion to Withdraw as Counsel and Order ... 319

Deputy Reporter Statement ... 322

Pro Se Motion for Discovery and Inspection of Evidence ... 323

Pro Se Notice to Court, District Clerk Under Art. 1.05 Rights of Accused ... 326

Pro Se Defendant's Motion for Discharge for Delay and Defendant's Motion to Set Aside Indictment ... 328

Pro Se Defendant's Motion for Approval of Expert Witness Fund ... 334

Notice of Appointment ... 339

Pro Se Defendant's Notice to the Court Under the Penalty of Perjury ... 340

Pro Se Letter ... 394

Pro Se Defendant's Motion and Notice to Court Judge Lonnie Cox the Defendant Needs Said Record and Evidence Subpoenaed to Defendant ASAP ... 396

Pro Se Motion for Independent Examination and Review of the Galveston Police Department Video Statement of Robbie Guarnelo and the Child Advocacy Video Statement of Amber Guarnelo ... 402

Pro Se Defendant's Motion to the Court to Conduct an in Camera Review of Evidence and Reports in 10CR1217 ... 404

Pro Se Defendant's Motion for Expert Witness Funds for a Handwriting Expert ... 407

A8 (C)

VOLUME III

Pro Se Motion to Recuse Judge – Defendant's Motion for Transfer of Cause 10CR1217   415

Pro Se Defendant's Motion to Suppress Fruits of Illegal Arrest and Detention of Defendant   418

Pro Se Defendant's Supplement to Motion to Suppress the Fruits of Illegal Arrest and Detention of Defendant   425

Pro Se Defendant's Notice to the Court Under the Penalty of Perjury   427

Pro Se Letter   434

Pro Se Letter   435

Pro Se Defendant's Second Motion for Speedy Trial Act Pursuant to Vernon's Ann. Tex. C.C.P. Art. 32A.02; and Grestein v. Pugh, 4120 US 103.114 (U.S.) Court   436

Pro Se Defendant's Motion for Franks Hearing – Defendant's Motion to Dismiss   445

Pro Se Defendant's Motion to Suppress Fruits of Illegal Arrest and Detention of Defendant   449

Pro Se Notice to Galveston County Sheriff   458

Order on Motion to Recuse and to Refer to Presiding Judge   459

Pro Se Defendant's Motion to the Court to Order the State to Produce a Copy of the Original Chain of Custody Records from the Galveston County Police Department of Holly Johnson   460

Pro Se Notice to Galveston County Sheriff   469

Statements from Amber Guarnelo   470

Pro Se Notice to Court to Take Judicial Notice   473

Notice of Hearing / Acknowledgment / Order of Assignment   485

Order Denying Defendant's Motion for an Expert Witness   488

Order Granting Defendant's Motion for DNA Testing   489

Order Granting Defendant's Motion for an Investigator   490

Order Denying Defendant's Motion for Discharge   491

Pro Se Defendant's Motion for Bond Dismissal   492

Notice of Filing Business – Medical Records   496

Third Amended State's Intent to Introduce Extraneous Offenses in Case in Chief and in Punishment Phase of Trial   561

State's Second Amended Proposed Witness List   564

State's Third Amended Proposed Witness List   566

20,191

## IN THE NAME AND BY THE AUTHORITY OF THE STATE OF TEXAS

BEFORE ME, the undersigned authority, this day personally appeared _____

Brantley Foster, D.P.S Narcotic Agent _____

who, after being sworn, upon oath deposes and says (that he has good reason to believe and does believe

and charge) that one ___ Jerry Wayne Rumph ___

_____

on (or about) the ___ 9th ___ day of ___ October ___, A. D. 19 72, and before the making

and filing of this complaint, in Justice of Peace Precinct No. ___ 4 ___ of ___ Bell ___

County, State of Texas, did then and there unlawfully and wilfully ___

___ Sale of Heroin ___

_____

_____

against the peace and dignity of the State.

**FILED**

_____ a. m. 2 10 p. m. o'clock

Sworn to and subscribed before me, this ___ 10th ___ day of ___ October ___, A. D. 19 72

OCT 25 1972

HUGH L. TAGGART
District Court Bell County, Texas

By _____ Deputy

*—also "allege knowingly" when necessary.

_Brantley Foster_

Justice of the Peace, Precinct No. 4, Place No. 1,

___ Bell ___ County, Texas.

**COMPLAINT—CLERK'S ORIGINAL**

2007 MAY -7 A 10 42

NAME: Robledo, Roberto

OFFENSE CHARGE: Failure to Identify (Give false Info)
CODE

MAG NO: 927633          COUNTY COURT CASE NO: 213125

IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:

Before me the undersigned authority on this day personally appeared affiant, who, after being by me duly sworn on oath deposes and says that affiant has good reason to believe and does believe that in the County of Bexar and the State of Texas, and before the making and filing of this complaint, on the 30th day of April, 200 7

Robledo, Roberto committed the offense of

Failure to Identify (Give false Info) against the peace and dignity of the State.

E Rubo 139
Affiant

SWORN TO AND SUBSCRIBED before me by the Affiant, a credible person, on this _____ day of MAY 0 1 2007 , 200___.

Deputy Clerk, Municipal Court
City of San Antonio
Bexar County, Texas

# AFFIDAVIT AND COMPLAINT FOR ARREST WARRANT

THE STATE OF TEXAS

COUNTY OF GALVESTON

G10100056

The undersigned Affiant, being a Peace Officer under the Laws of Texas and being duly sworn, on oath makes the following statements and accusations:

1. There is in the Galveston County, Texas, a person described as follows:

   **Thomas Wayne Florence**; Date of Birth: **6/26/1968**; Race: **Black**; Sex: **Male**; Height: **5'08"**; Weight: **207**; Hair: **Black**; Eyes: **Brown**; Social Security Number: 466-~~██████~~ Address: 5102 Avenue O ½, Galveston Texas 77551

2. The said **Thomas Wayne Florence** is the suspect in an alleged **Sexual Assault of a Child.**

3. It is the belief of Affiant, and he hereby charges and accuses, that:

4. **Thomas Wayne Florence**, in Galveston County, Texas, on or about the date of February 26, 2010, did then and there intentionally or knowingly cause the penetration of the vagina of Amber Guarnelo, a child who was then and there younger than 17 years of age and not the spouse of the defendant, by defendant's penis.

   Affiant has probable cause for said belief by reason of the following facts:

   Your Affiant, **Detective Holly Johnson #340**, is employed as a Peace Officer with the Galveston Police Department and charged with investigating crimes that occur in the City of Galveston, Galveston County, in the State of Texas. Affiant has been a Texas Peace Officer for over 9 years employed by the Galveston Police Department. Affiant is currently assigned to the Criminal Investigations Unit of the Galveston Police Department.

   On **March 2, 2010**, Affiant was assigned follow-up investigation to Galveston Police Department **case number 2010-13986** (Sexual Assault of a Child). Affiant learned the following facts from the case report:

   1.) Affiant learned from reading Galveston Police Department case #2010-12135 (runaway report) that on February 19, 2010 Amber Guarnelo had not returned home and was entered into TCIC/NCIC as a runaway.

   2.) Affiant learned from reading Galveston Police Department case #2010-13986 that on February 26, 2010 Officer Garcia #733 called Thomas Wayne Florence in regards to Amber Guarnelo's whereabouts. Officer Garcia reported that Thomas Florence had given him information in the past when Amber Guarnelo had runaway and was able to provide information on her whereabouts. Affiant learned from reading the police report #2010-13986 that on February 26, 2010 at about 10:09 p.m. Officer Garcia received a phone call from Lisa Ruiz stating her and Amber Guarnelo would turn themselves into the Galveston Police Department. Affiant also learned from reading




the police report that Amber Guarnelo was transported to Ben Taub Hospital for a Psychiatric evaluation for drug abuse, suicidal thoughts and attempts.

3.) Affiant learned from reading case #2010-13986 that on February 26, 2010 Officer Garcia #733 received a phone call from Robbie Guarnelo stating that while at Ben Taub Hospital a pregnancy test was administered to her daughter, Amber Guarnelo the result was positive. Affiant also learned from the police report that when Robbie Guarnelo asked Amber who the father was Amber replied, "T" (A.K.A. Thomas Florence).

4.) On March 9, 2010 Forensic Interviewer Cheryl McCarty conducted a videotaped interview with Amber Guarnelo at the Child's Advocacy Center. Affiant observed this interview from a separate room. Affiant observed Amber stated that she is at the Advocacy Center to talk about her and another person named Thomas. Amber said she met Thomas through a friend. Affiant observed Amber say that she is about one month pregnant and the father might be Thomas Florence. Amber describes sex as when "my everything touches their everything and the boy part goes inside the girl part." Affiant observed Amber say that she has had sex with Thomas about eight times at different houses in Galveston. Amber said the last time they had sex was on February 26, 2010. Amber said this happened at a house in Galveston on a mattress on the floor.

5.) Affiant spoke with Thomas Florence's wife; Wanette Florence who stated Thomas told her he thought Amber was eighteen years old.

6.) Affiant spoke with A.D.A. Kayla Allen who advised to charge Thomas Florence with Sexual Assault of a Child and recommended bond be set at $250,000.

Based on the above probable cause Affiant requests an arrest warrant be issued for the above listed **Thomas Wayne Florence**.

WHEREFORE, Affiant requests for issuance of a warrant that will authorize him to arrest the said **Thomas Wayne Florence**.

Det H Johnson #340
Affiant

Sworn and subscribed to before me by said Affiant on this the 22nd day of **April, 2010**

Magistrate, Galveston County, Texas



THE STATE OF TEXAS
vs.
FLORENCE, THOMAS W
5102 AVE O 1/2
GALVESTON TX 77550

DL #11505205
DOB 06-26-1958

FILED

2010 APR 34 PM 2:37

RACE: B / SEX: M
JUSTICE OF THE PEACE
PRECINCT ONE
GALVESTON COUNTY, TEXAS

WARRANT OF ARREST

Case No. G10100086
Bond:$250,000.00

THE STATE OF TEXAS

TO ANY SHERIFF, CONSTABLE OR PEACE OFFICER OF THE STATE OF TEXAS, GREETINGS:

You are hereby commanded to arrest
    FLORENCE, THOMAS W
if to be found in your county and bring them before me, a Justice of the Peace in and for Pct. 1, of Galveston County Texas, at my office at 1922 Sealy, Galveston, TX 77550, in said county, immediately, then and there to answer the State of Texas for an offense against the laws of said State, to-wit:

SEXUAL ASSAULT OF A CHILD

of which offense the Defendant,
    FLORENCE, THOMAS W
is accused by the written complaint, under oath, of
OFFICER JOHNSON, H                    filed before me.
    Herein Fail Not, but of this writ make due return, showing how you have executed the same.
    WITNESSED my official signature this the  22nd  day of
April    2010 .

_____
Justice of the Peace, Pct. 1
Galveston County, Texas

OFFICER'S RETURN
    Came to hand on the _22nd_ day of _April_, 20_10_, at _0740_ o'clock _A_ M., and executed on the _22nd_ day of _April_, 20_10_ at _0740_ o'clock _A_ M., by arresting the within named FLORENCE, THOMAS W _____, the _22nd_ day of _April_, 20_10_, at _Galveston County_, in _Galveston_ County, Texas and *Taking his bond, *placing him in jail at _Galveston County_.
    I actually and necessarily traveled ___ miles in the service of this writ, in addition to any other mileage I may have traveled in the service of other process in this cause during the same trip.

FEES:
Making Arrest ..$_____                    _____Constable/Sheriff
Mileage.........$_____
Taking Bond ....$_____                    _____County, Texas
Commitment......$_____
Release ........$_____    by _D___ J. #449_    _Deputy_
                                                      Officer
TOTAL .........$_____

* strike according to facts
GPD#10-13986



DEFENDANT'S
EXHIBIT

14

# AFFIDAVIT AND COMPLAINT FOR ARREST WARRANT

THE STATE OF TEXAS

G10100086

COUNTY OF GALVESTON

The undersigned Affiant, being a Peace Officer under the Laws of Texas and being duly sworn, on oath makes the following statements and accusations:

1.  There is in the Galveston County, Texas, a person described as follows:

    **Thomas Wayne Florence**; Date of Birth: **6/26/1968**; Race: **Black**; Sex: **Male**; Height: **5'08"**; Weight: **207**; Hair: **Black**; Eyes: **Brown**; Social Security Number: **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**; Address: **5102 Avenue O ½, Galveston Texas 77551**

2.  The said **Thomas Wayne Florence** is the suspect in an alleged **Sexual Assault of a Child**.

3.  It is the belief of Affiant, and he hereby charges and accuses, that:

4.  **Thomas Wayne Florence**, in Galveston County, Texas, on or about the date of February 26, 2010, did then and there intentionally or knowingly cause the penetration of the vagina of Amber Guarnelo, a child who was then and there younger than 17 years of age and not the spouse of the defendant, by defendant's penis.

5.  Affiant has probable cause for said belief by reason of the following facts:

    Your Affiant, **Detective Holly Johnson #340**, is employed as a Peace Officer with the Galveston Police Department and charged with investigating crimes that occur in the City of Galveston, Galveston County, in the State of Texas. Affiant has been a Texas Peace Officer for over 9 years employed by the Galveston Police Department. Affiant is currently assigned to the Criminal Investigations Unit of the Galveston Police Department.

    On **March 2, 2010**, Affiant was assigned follow-up investigation to Galveston Police Department **case number 2010-13986** (Sexual Assault of a Child). Affiant learned the following facts from the case report:

    1.) Affiant learned from reading Galveston Police Department case #2010-12135 (runaway report) that on February 19, 2010 Amber Guarnelo had not returned home and was entered into TCIC/NCIC as a runaway.
    2.) Affiant learned from reading Galveston Police Department case #2010-13986 that on February 26, 2010 Officer Garcia #733 called Thomas Wayne Florence in regards to Amber Guarnelo's whereabouts. Officer Garcia reported that Thomas Florence had given him information in the past when Amber Guarnelo had runaway and was able to provide information on her whereabouts. Affiant learned from reading the police report #2010-13986 that on February 26, 2010 at about 10: 09 p.m. Officer Garcia received a phone call from Lisa Ruiz stating her and Amber Guarnelo would turn themselves into the Galveston Police Department. Affiant also learned from reading



the police report that Amber Guarnelo was transported to Ben Taub Hospital for a Psychiatric evaluation for drug abuse, suicidal thoughts and attempts.

3.) Affiant learned from reading case #2010-13986 that on February 26, 2010 Officer Garcia #733 received a phone call from Robbie Guarnelo stating that while at Ben Taub Hospital a pregnancy test was administered to her daughter, Amber Guarnelo the result was positive. Affiant also learned from the police report that when Robbie Guarnelo asked Amber who the father was Amber replied, "T" (A.K.A. Thomas Florence).

4.) On March 9, 2010 Forensic Interviewer Cheryl McCarty conducted a videotaped interview with Amber Guarnelo at the Child's Advocacy Center. Affiant observed this interview from a separate room. Affiant observed Amber stated that she is at the Advocacy Center to talk about her and another person named Thomas. Amber said she met Thomas through a friend. Affiant observed Amber say that she is about one month pregnant and the father might be Thomas Florence. Amber describes sex as when "my everything touches their everything and the boy part goes inside the girl part." Affiant observed Amber say that she has had sex with Thomas about eight times at different houses in Galveston. ~~Amber said the last time they had sex was on February 26, 2010.~~ Amber said this happened at a house in Galveston on a mattress on the floor.

5.) Affiant spoke with Thomas Florence's wife; Wanette Florence who stated Thomas told her he thought Amber was eighteen years old.

6.) Affiant spoke with A.D.A. Kayla Allen who advised to charge Thomas Florence with Sexual Assault of a Child and recommended bond be set at $250,000.

Based on the above probable cause Affiant requests an arrest warrant be issued for the above listed **Thomas Wayne Florence**.

WHEREFORE, Affiant requests for issuance of a warrant that will authorize him to arrest the said **Thomas Wayne Florence**.

_Det H Johnson #340_
Affiant

Sworn and subscribed to before me by said Affiant on this the 22nd day of **April**, 2010

Magistrate, Galveston County, Texas




THE DEFENDANT: Can I approach the witness, let her refresh her memory, your Honor?

MS. ALLEN: Your Honor, if she's not familiar with it, I don't understand the relevance here.

THE COURT: Yeah. If she's not familiar with it, she's just not familiar. She did not say that she didn't remember it.

THE DEFENDANT: I'll rephrase the question.

THE COURT: Okay.

Q. (BY THE DEFENDANT) Are you aware that all prosecutions in the State of Texas should be carried on in the name and authority of the State of Texas and conclude with, "Against the peace and the dignity of the State"?

A. Yes.

Q. And your probable cause for affidavit for warrant failed to comply with that; is that correct?

A. No.

THE DEFENDANT: Your Honor, may I approach the witness?

THE COURT: Sure.

THE DEFENDANT: Exhibit, I would like to show Exhibit No. 11, affidavit for probable cause for arrest warrant.






MS. ALLEN: Defendant's 11?

THE DEFENDANT: Yes, ma'am.

MS. ALLEN: You're going to show it to her?

THE DEFENDANT: Then I'm going to submit it into evidence.

THE COURT: One step at a time.

Q. (BY THE DEFENDANT) Review it and see if you see it does comply with Article 1.23?

MS. ALLEN: Your Honor, I'm going to object. It calls for a legal conclusion.

THE COURT: Sustained. I sustained the objection. What's your next question?

THE DEFENDANT: I would just like to ask her do she --

THE COURT: You already asked her that question. Ask her another one.

Q. (BY THE DEFENDANT) You recognize the document?

A. Yes, sir.

Q. What is it?

A. It is my affidavit and complaint for an arrest warrant.

Q. For who?

A. For you.

Q. For what charge?






A. Sexual assault of a child.

Q. Occurring?

A. In -- are you wanting me to read, like, No. 4?

Q. Yes, ma'am.

A. Item No. 4 --

MS. ALLEN: Your Honor, I'm going to object to her reading from the document that's not been entered.

THE COURT: Can't read it out loud.

A. (CONTINUING) Yes.

Q. (BY THE DEFENDANT) States that the crime was allegedly committed on what date?

A. Says on or about February 26th, 2010.

Q. Does that affidavit complaint for arrest warrant states that language, "in the name and authority of the State of Texas"?

MS. ALLEN: Your Honor, I'm going to object to relevance. We have a proper indictment here. And the style of the warrant is not relevant.

THE DEFENDANT: Your Honor, that's the only way --

MS. ALLEN: And the indictment complies with the law.

THE DEFENDANT: That's the only way the indictment got issued, your Honor, was off the probabl



 

cause for affidavit for warrant issued for my arrest.

THE COURT: If I'm not mistaken, when the State read the indictment, she finished with the words, "In the name and by the authority of the State of Texas." That's the indictment. This is the affidavit complaint and arrest warrant. Different.

THE DEFENDANT: This is a document that was presented to the Grand Jury to get me indicted. It wasn't no testimony from no other witnesses or nobody. The State only presented this document here and the police report to the Grand Jury to get me indicted, your Honor.

THE COURT: Right.

Q. (BY THE DEFENDANT) Is that language anywhere on there, ma'am?

MS. ALLEN: Objection, relevance, your Honor.

THE COURT: Sustained.

Not relevant. Move along.

THE DEFENDANT: Your Honor, I'd like to submit Exhibit No. 11 into evidence, your Honor, probable cause affidavit for arrest warrant, because it does not comply with Texas Code of Criminal Procedure, your Honor.

MS. ALLEN: I'm going to object because







there's hearsay all through that document. And it's irrelevant.

THE COURT: Okay. Ladies and gentlemen, now is a great time for you to take your break for the day. I will see you tomorrow at 9:00 o'clock. Please remember, don't talk about the case.

(Open court, Defendant present, no Jury)

MR. FLEMING: For the Court, Mr. Phillip Chacko, C-h-a-c-k-o, is here from UTMB with records that we -- that the defense, that Mr. Florence has subpoenaed for the time period regarding Amber Guarnelo's stay or hospitalization at UTMB. He's brought those records here today by affidavit. And the Court has ordered Mr. Chacko to turn those over to the defense.

THE COURT: Okay. There's really two issues here. One issue is I'm thinking the HIPAA requirement that I order UTMB to turn the documents over. I'm guessing that that's the first thing that you're asking; is that right, sir?

MR. CHACKO: Yes, it is.

THE COURT: In regard to that, yes, I'm ordering you to release those records to the Defendant. But what's even more in question at this particular time now, is there any objection to the authentication of these records?



A13

# EVIDENCE/PROPERTY RECEIPT

C. MURRAY
CLERK DISTRICT COURT
FILED
MAY 25 2011
GALVESTON COUNTY, TEXAS
BY_____
DEPUTY

I, THOMAS WAYNE FLORENCE, ACKNOWLEDGE

RECEIPT OF THE FOLLOWING ITEM/S OF EVIDENCE/PROPERTY FROM

BRANDON SIMS, ASSISTANT DISTRICT ATTORNEY, WITH THE GALVESTON

COUNTY DISTRICT ATTORNEY'S OFFICE.

DATE  5-25-11

CAUSE NUMBER:  10CR1217 – State vs Thomas Wayne Florence

CASE NUMBER:  2010-13986

NAME OF RECEIVING AGENCY:  GPD

ITEM/S:

Thomas Wayne Florence's sexual assault Indictment w/ 2 enhancements

1 DVD:  video recorded statements from Robbie Guarnelo

Waiver of Search from Amber Guarnelo

Affidavit and Complaint for Arrest Warrant

Warrant for Arrest of Thomas Wayne Florence (signed by JP1)

Affidavit for Search Warrant and Search Warrant for Thomas Wayne Florence's Saliva (signed and unsigned copy)

Offense Reports/Supplements for Cause 2010-13986
- C. Garcia
  - Date of Report 2-27-10
  - Date of Report 4-10-10
  - Date of report 4-19-10

- H. Johnson
  - Date of report 2-26-10
  - Date of report 2-26-11

- J. Durr

A13
568

  o  Date of report 4-22-10

Offense Reports/Supplements for GPD Case #'s:

10—1005
- Morse
  - Date of Report 1-4-09
- J. Loyd
  - Date of Report 1-8-10

2010-1231
- B.South/K.Miller
  - Date of report 1-5-10
- C. Garcia
  - Date of Report 1-5-10
- J. Loyd
  - Date of Report 1-8-10

2010-6463
- C. Doucette
  - Date of Report 1-27-10
- C. Garcia
  - Date of Report 1-31-10
  - Date of Report 2-2-10 (includes letter from Amber Guarnelo to her parents)

2010-12135
- C. Doucette
  - Date of report 2-19-10
- C. Garcia
  - Date of report 2-26-10

2010-13774
- J. Lloyd
  - Date of report 2-27-10
  - Date of report 2-26-10

2010-20649
- C. Garcia
  - Date of report 3-27-10

2010-10125
- 3 photos
- Report from C. Teague on 2-12-10

- Report from E. Garcia on 2-12-10
- Report from C. Palmer on 2-16-10
- Report from D Fillmore on 3-24-10

2010-21249
- Report from Sgt. K. Weems on 3-27-10
- Report from A. Mohammud on 3-27-10
- Report from C. Garcia on 3-27-10
- Report from A. Chapman on 3-27-10
- One (1) In Car Video of defendant evading arrest/being arrested on 3-27-2010
- Six (6) photos of defendant's injuries when apprehended on 3-27-10

Amber Guarnelo Waiver of Search from 1-4-10

Paperwork from UNT Center for Human Identification Forensic Laboratory (case # 11-0120)
- Chain of Custody
- Evidence log-in form
- Forensic evidence submission form
- Evidence documentation worksheet
- STR data concordance checklist
- Parentage calculations Part I and Part II
- Pictures
- Forensic case log sheet
- Chelex DNA extraction: blood, stains and other bio material
- Quantifiler duo worksheet
- STR Amplification worksheet
- Forensic DNA report from February 28, 2011
- Letter from Thomas Wayne Florence to Mr. and Mrs. Guarnelo (dated 3-14-11)

Five (5) black and white photos of Jada Guarnelo [color photos will be used at trial and will be provided upon request]

T-Mobile Telephone Records (number registered to Robbie Guarnelo)

Ben Taub Hospital Medical records (Re: Amber Guarnelo)
UTMB Hospital Medical Records (Re: Amber Guarnelo)

State's Motions:
- Notice of filing business-medical records (Ben Taub Hospital)
- 
- Notice of filing-business-medical records (UTMB)
- 
- State's motion for discovery of expert witness

- State's first amended proposed witness list

    o State's second amended proposed witness list

- State's first amended state's intent to introduce extraneous offenses in case in chief and in punishment phase of trial

    o Second amended state's intent to introduce extraneous offenses in case in chief and in punishment phase of trial

    o Third amended state's intent to introduce extraneous offenses in case in chief and in punishment phase of trial

- State's motion in limine

- State's motion for release of medical information (Re: Amber Guarnelo)

- Notice of filing business-medical records (T-Mobile records for telephone number 409-256-9442)

**State will make arrangements for defendant and Marcus Fleming to view the Child Advocacy Video at the District Attorney's Office upon request.

All physical evidence (i.e. blonde wig and cell phone(s)) are being stored at the Galveston Police Department property room. Please contact me to make arrangements to view the evidence before the pretrial conference.

_Robbing Vaurnelos Phone Recs_

_Will Revew & What's Not In Will Let Atty Know_

_____
THOMAS WAYNE FLORENCE, Pro Se Defendant

_MAY 29, 10_
DATE

_____
MARCUSE FLEMING, "stand-by" defense counsel

_5-25-11_
DATE

571

A14

Names of Witnesses:

CODE #11990002-1199
SPN #0133507
JP #1
TRN #9179282644 AOO1
SID #TX03572081
~~2010-07-27-2013~~
JAIL

BOND SET ON __7/15/10__

No. 10CR1217    56TH

THE STATE OF TEXAS

vs.

THOMAS WAYNE FLORENCE

# INDICTMENT

SEXUAL ASSAULT OF A CHILD
WITH TWO ENHANCEMENTS

BOND $ 250,000

_John-Ellison_, Judge

2010 JUL 14  PM 3:52

_Latonia D. Wilson_
DISTRICT CLERK,
GALVESTON COUNTY. TX.

By:_____

Clerk District Court, Galveston County, Texas

By:_____ Deputy

I, LATONIA D. WILSON, District Clerk,
Custodian of Records for District
Court of Galveston County, Texas, do
hereby certify that the foregoing is a
true and correct copy of the original
record, now in my lawful custody and
filed in this office on the _____ day
of _____, 20__, witness my
official hand and seal of this _____
day of _____, 20__.

LATONIA D. WILSON,
DISTRICT CLERK,
GALVESTON COUNTY, TEXAS

By:_____, Deputy

A14

## In the Name and by Authority of the State of Texas:

THE GRAND JURORS for the County of Galveston, State aforesaid, duly organized as such at the JULY Term, A.D., 2010, of the District Court of said County, 122ND Judicial District of Texas, upon their oaths in said Court present that THOMAS WAYNE FLORENCE on or about the 27TH day of FEBRUARY, A.D., 2010, and anterior to the presentment of this indictment in the County of Galveston and State of Texas, did then and there intentionally or knowingly cause the penetration of the sexual organ of Amber Guarnelo, a child who was then and there younger than 17 years of age, by Thomas Wayne Florence's sexual organ;

### FIRST ENHANCEMENT

And it is further presented in and to said Court that, prior to the commission of the aforesaid offense (hereafter styled the primary offense), on the 24th day of December, 1986, in cause number 85CR0840 in the 10th Judicial District Court of Galveston County, Texas, the defendant was convicted of the felony offense of Burglary of a Vehicle,

### SECOND ENHANCEMENT

And it is further presented in and to said Court that, prior to the commission of the primary offense, and after the conviction in cause number 85CR0840 was final, the defendant committed the felony offense of Possession of a Controlled Substance, to-wit: Cocaine and was convicted on the 19th day of February, 1993, in cause number 91CR0155 in the 122nd Judicial District Court of Galveston County, Texas,

against the peace and dignity of the State.

_____
Foreperson of the Grand Jury

first.

Q. So when you received on 2/26/10 or 2/27/10, you did your investigation and you just went off of what they told you; is that what you stated?

A. I documented what was told to me, yes, sir.

Q. So when you see me at the Galveston Police Department or you bring in a Hispanic male on March 24, 2010 and you said, "Oh, you recall -- oh, you T?, when you bringing in a Hispanic? It was March 24th. This alleged crime happened, allegedly, 2/27. Why didn't you detain me? Why didn't you question me then, if being a well-trained police officer?

A. Question you for what, sir?

Q. You said you already received the allegations on 2/27/10. I turned myself in at G. P. D. on March 24th for an alleged crime, alleged family violence. You were bringing in a Hispanic male. Officer Johnson was booking me; and you said, "Oh, you T?" And then you booked in the Hispanic male.

A. It appears that I received the allegations three days after you -- from what you are telling me, three days after you were arrested for whatever incident. I didn't have those allegations at the time. I just remember looking at you and saying, "Are you T?" And you said, "Yeah." And I did not say anything else.

Q. But right here on March, we go back here, go back to 2010, February 26, 2010. This is when you already received this information. You know this information almost a month in advance. That's what you stated in your report.

A. Okay. If I am not mistaken, the allegations were brought to my attention on 2/27, if that's what you are telling me. And you are saying you got arrested on 2/24. Well, I had not received the allegations yet or information pertaining to this offense report yet at the time, so I could not question you about something that would occur in the future.

Q. Now, this was after the fact. You already received this information on 2/26 or 2/27. Me and you don't bump heads until March 24th. You got this information almost a month in advance where you state, you know my name, you know my address.

A. Okay. Well, March 24th, at the time, if I document a report and it gets referred to C. I. D. for investigation, further investigation follow up, it's out of my hands as far as this investigation. I cannot say, well, okay, I am taking you over to the side and question you about what happened. A detective is assigned to that case, and she is in charge of it. So it would have been up to the detective to question you

about what had happened.

Q. So you basically stating that you was the reporting officer regarding this sexual assault and you stating that you knew me, spoke to me on 2/26 2/27, but when you see me a month later coming through the Galveston County Jail, you don't -- and you say, "You T2." You don't try to -- you got the information. You got the right to question --

MR. CAMPBELL: Objection, asked and answered, Your Honor.

THE COURT: Yeah. Let's move on.

Q. (By the Defendant) So Holly Johnson would have been the detective actually, since she was assigned to the case, I guess, March. She was -- first, say, 2/26 and then March? She would have been the proper one doing the investigation you are saying?

A. Yes, sir

THE DEFENDANT: Pass the witness at this time, Your Honor.

THE COURT: Okay. State?

MR. CAMPBELL: Thank you, Your Honor.

CROSS-EXAMINATION

BY MR. CAMPBELL:

Q. Officer, just so we are clear, were you the investigator on the sexual assault?

these two girls together on this date and time?"

MR. HALL: Then it's hearsay because he doesn't know if they were together. That's just what somebody told him.

THE DEFENDANT: He picked them up right here, sir.

MR. HALL: That's already in evidence that he picked them up together on 2-26-10. That's in evidence.

THE COURT: Okay. And how is it in evidence?

MR. HALL: He already testified that he made the calls to Mr. Florence. They exchanged phone calls on 2-26-10 at the Taco Bell, by the Taco Bell in front of the police department. He picked them up. That's already in evidence. So, if that's the only point --

THE COURT: So, what's the conflict?

THE DEFENDANT: He's saying -- what I'm fixing to establish, your Honor, is they saying that Amber and Lisa is supposed to have been together at 11:00 o'clock.

THE COURT: Okay.

THE DEFENDANT: And on my police report it's showing --

THE COURT: On this document right here.

THE DEFENDANT: On the original police report signed -- 13986 signed by Mr. Garcia, my incident -- alleged crime occurred on 2-26 at 11:30, which is going to be impossible. This is the whole thing about the Lisa incident supposed to have occurred with her father right here at 11:00 o'clock. And Amber supposed to have been a witness, your Honor. That's what this document say.

MR. HALL: What he's trying to say, Judge, is that the allegation in the indictment can't be true because Lisa and Amber were together on the evening of 2-26-10. So, he couldn't have sexually assaulted Amber. I think that's what he's arguing. But the information he's trying to get in is already in evidence.

THE COURT: Okay. So, what is your request?

THE DEFENDANT: Your Honor, that I can -- it's a time frame. They're saying on or about. I can prove it's going to be impossible. They saying that --

THE COURT: What is your request?

THE DEFENDANT: That I can use this here, your Honor. Ain't saying nothing about the Lisa incident.

THE COURT: Okay. So, you want to

Lisa's mistaken that Ms. Loyd wasn't the one picked her up? It wasn't you that actually picked her up?

A. What I'm testifying to is I don't know what her state of mind was or how she testified yesterday. But I know for a fact that when we picked her up by Taco Bell on Broadway that I was with Officer Loyd in her patrol unit.

Q. In your report you stated that you was calling, calling, calling Mr. Florence, correct?

A. Yes, sir.

Q. In your police report you stated you know my name, my date of birth, my address and all this, is that correct?

A. What report are you talking about, sir?

Q. Your original Police Report 13986.

A. If I can review what part you're talking about, I'll tell you.

Q. Page --

THE COURT: Why don't you come up and show it to him?

THE DEFENDANT: Yes, sir.

A. (CONTINUING) Yes, sir.

Q. (BY THE DEFENDANT) You stated a crime was reported to you on -- allegedly reported to you the next day, the 27th. That's when you got the information, on



the 27th?

A. Yes, sir.

Q. The alleged event supposed to have occurred?

A. Yes, sir.

Q. And you don't never come to my house. You got probable cause now then. Why you don't never come to my house, arrest me and bring me in for questioning regarding, you know, alleged sexual assault that allegedly occurred on -- well, you say the 26th or 27th since it's on about one of those days?

A. I can explain that. The information I received was -- what I did was document an incident report or a case report and referred it to CID for follow-up. The information I had on Mr. Florence was not the best information. The address I had was at 215 -- I believe it was Market. At the time I did not know he was staying on 50th or 51st Street, whatever his address is on that location. But I got all the information I needed for the report and then referred it to CID for follow-up by a detective. That investigation, there's steps and procedures that have to be followed. And I could not do that on my own at a patrol level.

Q. So, you're saying that you cannot go arrest nobody. Robbie Guarrelo told you that, "My daughter was



sexually assaulted." You being a well-trained police officer, you got probable cause to come arrest me?

A. It's because I'm a well-trained police officer that I know I can't jump the gun. This has to be properly investigated and referred to the right people who can do the proper investigation on this.

Q. Mr. Garcia, after a crime, you see someone in the store robbing somebody or doing -- committing a crime, let's say, for instance, hypothetically I tell you that Willie beat me up. I want to file charges. What steps you going to do?

A. Well, I'm going to investigate it. I'm going to see if there's any witnesses involved. I'm going to listen to what his side of the story is. I'm going to note that if he has any injuries. All this will be documented.

I may review it with another police officer or a sergeant and say, "Look. Here's the information I have. I have a witness and they saw this." What we would do is file a warrant for his arrest. In this investigation here, there's a different procedure.

Q. Your original -- In your original police report, you charge with forceable rape, sexual assault on a child. So, you had more than enough to come straight and arrest me.



A.   No, sir.

Q.   After charging me with forceable rape after you find out this information?

A.   It had to be investigated.  It's not fair to you if I just go and arrest you.  We want to document and investigate everything to find facts of the case.  And it takes time.  There's procedures.

Q.   So, it take, what, two months, three months?

A.   I did what was necessary on patrol level and referred it to CID.  CID takes up the investigation then.  And then there are steps that have to be followed, statements taken, tests run, that -- steps have to be followed.  There's a procedure.

Q.   So, Robbie Guarnelo allegedly returned back from Ben Taub on 2-27.  And she gave you this information at the police station?

A.   No, sir.

Q.   What date did she give you the information?  You say --

A.   I talked to her on the phone and she told me what happened.

Q.   What day was this?

A.   If I can review my report?

Q.   Yes, sir.

MR. HALL:  I'm going to object to asked

13986, are you sure beyond a doubt that this police report was issued on this date, ma'am?

A. It was issued on what date, February 26th?

Q. February 26, 27, you know, which date, you know, this police report was issued from the Galveston Police Department?

A. Right. According to police report 2010-13986, it was generated on February 26, 2010.

Q. Okay, ma'am. This police report 2010-13774 that you posted investigator regarding a Lisa Ruiz who was sexually assaulted by her father?

MR. CAMPBELL: Objection. This is outside the scope of the hearing. This is not contained within the affidavit at all.

THE DEFENDANT: I object because --

THE COURT: Is it in the affidavit? That's the issue you are attacking, the affidavit. Is that --

THE DEFENDANT: No, sir, Your Honor.

THE COURT: Then that is outside the scope of the affidavit.

THE DEFENDANT: Yes, sir.

THE COURT: This would be cross-examination at some other time for some other reason.

THE DEFENDANT: All right. Yes, sir. Because basically I only need -- well, can I just -- I

MR. CAMPBELL: Your Honor, I object on his side bar.

THE COURT: Here is the deal: This is a period of time not to argue about your case. Just ask the questions. You have got a witness. Don't waste your time on me when you have got a witness sitting right here.

THE DEFENDANT: Yes, sir.

Q. Miss Johnson, did you actually -- you say you learned from reading that police report number that Applicant did not return home from the 19th to -- what day it was, from the 19th she was supposed to run away, from February 19 to what?

A. I just have in the No. 1 paragraph that she -- that a report was made on February 19th.

Q. But you said you was investigator of this case 2010-13986, and you ought to have highly -- highly information regarding, you know, this incident. You said you was the investigator. So I just want to know the police report said she ran away on February 19th to when, you said to the Court to when?

A. February 26th, 2010.

Q. Are you sure?

A. That's what I have in my affidavit. That's when I became involved in this case, was February 27th, 2010.



Q. Yes, ma'am.

A. Okay. All I know is that the police report was made February 19th. It was assigned to Sergeant Alemendarez. I don't know regarding this police report, the runaway report, when she was recovered. I do have personal knowledge that she was recovered on February 26th, 2010. I don't know if it's regarding this report or not.

THE DEFENDANT: I call Mr. Alemendarez later, Your Honor. To move on, a warrant was issued for Miss Guarnello by Kathryn Lanan from Juvenile Justice Department on orders of parole officer, probation officer, Sean Parish. That was on 2/19. And according to, like I said, police report 1213, she was arrested on this date. And this is the date, you know, to show that it was impossible for her to basically be on the run from 2/19 to 2/26/10, the date of this crime. So, you know, she was supposed to be gone on an eight-day run. So that's why it's highly relevant to show that if she was arrested on 2/22/10, it is impossible for her to be on the run from 2/19/10 to the date of this offense, this crime.

MR. CAMPBELL: Your Honor, I object to him testifying.

THE COURT: Just what's your question?

themselves into the Galveston Police Department. Affiant also learned from reading the police report that Amber Guarnelo was transported to Ben Taub for psychiatric treatment and evaluation for drugs and suicidal thoughts.

You say you got this information I was reading G. P. D. case report No. 13986, ma'am?

A. Yes, sir.

Q. And you said that Amber Guarnelo, after reading this police report, that Amber Guarnelo and her mother was transported to Ben Taub on February the 26th?

A. Yes, sir.

THE DEFENDANT: If I could get some information, Your Honor.

MR. CAMPBELL: Your Honor, if the Defendant is returning to the table, we would ask he remain there during the questioning.

THE COURT: Here is the deal, Mr. Florence. If you don't need to be up here to point to separate things on your exhibits, then do your questioning from the table.

THE DEFENDANT: Yes, sir.

THE COURT: If you need to, to point out certain things on exhibits or to present exhibits to the witness, then you can approach.



them.

THE DEFENDANT: I would like to submit 13986 as Exhibit 2, Your Honor.

THE COURT: Okay. Any objection?

MR. CAMPBELL: No objection.

THE DEFENDANT: I am ready, Your Honor.

Q. Miss Johnson, we are in Paragraph No. 2 of the affidavit where you say affiant. After reading the police report, did you do your own investigation, ma'am, or basically just blindfolded what Garcia stated in his police report regarding this case?

A. I did my own investigation, but I also had to refer to officers' prior reports, which I used in my investigation.

Q. So basically you are saying that you basically did an investigation of this case?

A. Yes, sir.

Q. So you state that Amber went to Ben Taub on February 26th, 2010?

A. Yes, according to police report 2010-13986, yes.

Q. Miss Johnson, you did an investigation regarding this case? That's a "yes" or "no," ma'am.

A. Yes.

Q. So when Amber went to -- are you sure that Amber went to the hospital on 2/26/10?



A. According to Officer Garcia's police report, yes.

THE DEFENDANT: Well, Your Honor, I would like to go to Exhibit No. 1, Ben Taub Hospital records, Your Honor.

THE COURT: Okay.

THE DEFENDANT: I have got marked my offer of proof where the State has it marked as Exhibit No. 3 so we will be able the understand it better. On this police report --

THE COURT: No argument. Ask questions.

THE DEFENDANT: May I approach, Your Honor, to show her.

THE COURT: Well, only if you think she knows anything about that. That's a report that, unless I am mistaken, she doesn't know anything about.

THE DEFENDANT: But it's the report where she did an investigation.

THE COURT: Is that the hospital record that you are about to show her?

THE DEFENDANT: Yes, sir, where it said, Your Honor, this here related to Miss Johnson stated that Amber Guarnelo transported to Ben Taub for psychiatric evaluation, drug abuse, and suicidal thoughts.

THE COURT: I know where your argument is

going, but it's not time for argument; it's time to ask questions.

Q. (By the Defendant) Miss Johnson, did Amber go to Ben Taub Hospital prior to February the 14th or February the 14th or February the 22nd and prior to -- let me rephrase it. Are you aware that -- did Miss Guarnelo ever go to Ben Taub prior to 2/26/10 for this same treatment?

A. I have no knowledge of that.

Q. On 2/26/10 could you tell, do you know what officer took her to the hospital after your investigation?

MR. CAMPBELL: Your Honor, I would object. She already said she had no relevant knowledge.

THE COURT: I will let her answer the question.

A. I will have to refer to this report. I don't recall which officer or who transported her to Ben Taub on February 26th, 2010.

Q. (By the Defendant) Well, during your investigation in this police report, did you retrieve any of the documents to present to the District Attorney that Amber Guarnelo, did she ever go to the hospital on this here date during your investigation? Did you uncover any documents from 2/26?

A. Have I ever seen the medical records from that date? Is that what the question is?

Q. I am kind of rephrasing that. When you did your investigation, did you get any U. T. M. B. -- I mean Ben Taub records?

A. No.

Q. So how did you know Amber Guarnelo went to the hospital on 2/26/10 for any kind of treatment at all?

A. I received that information from Officer Garcia's police report.

Q. So you are basically going by what Officer Garcia said and not do a thorough investigation as you just said you did regarding this case?

A. I have no reason to believe that Officer Garcia would falsify a police report.

Q. Affiant states in Paragraph 3, after reading police report 13986, February 26, 2010, Officer Garcia received a phone call from Robbie Guarnelo stating that while at Ben Taub Hospital, a pregnancy test was administered to her daughter, Amber Guarnelo. The result was positive. My question is are you sure, then, that Amber Guarnelo actually went to the hospital 2/26/10?

A. According to Officer Garcia's police report, yes, she did.

A 31

state that she had sex with me on 2/26/10, the date of this incident that you charged with me with?

A Yes.

THE DEFENDANT: Your Honor, I would like -- he didn't bring the video. I have got the video down marked as an offer of proof because nowhere in this video does it state that --

THE COURT: So you are through with this witness, right?

THE DEFENDANT: No, sir, basically not yet, Your Honor.

THE COURT: Okay. You want to introduce something through this witness?

THE DEFENDANT: Yes, sir. I would like to introduce the video into evidence, Your Honor.

THE COURT: What is the video of?

THE DEFENDANT: This is the video of the Advocacy Center where the affiant stated that Amber stated that she was sexually assaulted on February 26th, the date of this charge that I am charged with; and nowhere in this video does -- this statement is made nowhere in the video. And this is the basis for the arrest warrant stating that I committed this crime on this date, Your Honor.

THE COURT: Okay. Go through the predicate

and present the video to the witness.

THE DEFENDANT: Your Honor, we don't have possession of Amber Gaurnelo's video.

MR. FLEMING: He wants to introduce into evidence the video of Amber Guarnelo, which the State has.

MR. CAMPBELL: Just in response, I mean, even from under Franks, even you found that not to be true, that simply means that you would redact that sentence and then re-evaluate the affidavit to see if there's probable cause. Even if you found that to be not true, that Amber said she had sex on February 26, 2010, even if that were not true, there's still enough peacing from the affidavit.

THE COURT: So do you want to concede that that statement is in the affidavit is not true? Is that what you are saying?

MR. CAMPBELL: No, Your Honor.

THE COURT: Okay. Come on, then.

MR. FLEMING: Here is a copy of the video, Your Honor.

THE COURT: Mark it.

THE DEFENDANT: I would like it introduced.

THE COURT: Show it to the witness.

Q. (By the Defendant) This is the video at the child

Advocacy Center?

A. I haven't reviewed this, so I am not sure what's on it. I would assume that it's her interview, but without watching it, I don't know. I have not seen this before.

Q. You did an investigation of this case, and you never reviewed the video at the Advocacy Center?

A. I was there, and I watched her interview from another room. But if you are asking me about this particular D. V. D., I have never seen this item right here before. So, I don't know what's on there.

THE DEFENDANT: Your Honor, is it possible that we can play the D. V. D. for her?

THE COURT: Sure.

THE DEFENDANT: Exhibit No. 3, sir.

MR. CAMPBELL: Your Honor, we have no objection to it.

THE COURT: It's admitted. Play it.

THE DEFENDANT: There were some other witnesses. May I approach, Your Honor.

THE COURT: Sure.

THE DEFENDANT: There are some other witnesses that had been put down. I had Mr. Fleming to write the subpoena with Ben Taub Hospital records people because it's highly relevant. He said they can't

subpoena from people out of town, and I don't understand why they don't subpoena people out of town because I need Ben Taub.

THE COURT: Did you ask your attorney that question?

MR. FLEMING: It's out of County.

THE COURT: It's out of County.

THE DEFENDANT: How can we verify these records are true, Your Honor, because on their witness list they have Ben Taub?

THE COURT: Are those Ben Taub records --

MR. FLEMING: The certified copies are already in the file on the report.

THE COURT: And they had been on file for more than 14 days?

MR. FLEMING: Yes, Your Honor.

THE COURT: So they are deemed as being accurate records because they have been on file for a significant number of time, over 14 days; and they have the introductory letter saying that the custodian of records has filed accurate copies of those documents.

THE DEFENDANT: So when you review the exhibits in the Franks evidentiary hearing offer of proof, you are going to evaluate?

THE COURT: If you offer those into evidence

in this hearing, then I consider that as part of the evidence in this hearing.

MR. FLEMING: They are already admitted as Exhibit 1.

THE DEFENDANT: No, sir, not the Franks stuff. I need that.

THE COURT: So are we ready to look at this?

THE DEFENDANT: Yes, sir.

THE COURT: How long is this?

THE WITNESS: I don't know.

MR. FLEMING: I think it's about 10, 15 minutes, Your Honor.

MS. ALLEN: The video is 40 minutes, Your Honor.

(The tape was played.)

THE COURT: Is that it?

THE DEFENDANT: Yes, sir, that's it.

THE COURT: Okay. Continue.

Q. (By the Defendant) Ma'am, did you witness in this video anywhere where Miss Guarnelo stated that I sexually assaulted her on 2/26/10, the date that you allege that I sexually assaulted her?

A. No.

Q. So could you please tell the Court, you know, why you filed this affidavit stating that you witnessed

Amber in the video state that I sexually assaulted on 2/26/10 when there's no statement ever made like that, ma'am?

A. I observed watching this interview that Amber said that the last time that she had sex with you was after Valentine's Day, which would be February. And I also observed her say that the last time she had seen you was the day that she had turned herself in, which would be February 26 th. So I can see where I got confused with the exact day but not the month and year.

Q. But this is a serious matter, ma'am. Messing up dates, getting dates confused, because you went to the Judge with this here under oath and spoke before the Judge that this is true and correct, everything this here.

A. Right. And like I said, when I did this affidavit, I understood that when she said the last time that she had saw you was February 26th; and after reviewing the video I see how where she said it was after Valentine's Day, which would have been just February, 2010.

Q. You remember what you just said? You said she receives after after February 26th which you just said?

A. After Valentine's Day, so I am mistaken on the 26th but not the February of 2010.

Q. So, ma'am, you are saying you are just go to a judge and just give a judge an affidavit and just tell him that this here occurred on this date when it didn't?

MR. CAMPBELL: Objection, argumentative, Your Honor.

THE COURT: I will allow it.

A. I was mistaken on the date. And at that time I believed that after watching her interview the first time that it was on February 26th.

Q. (By the Defendant) So you are saying, ma'am, that you are mistakenly got me arrested on an incident, you are saying you witnessed Amber state that I sexually assaulted her on 2/26/10? That's what you are saying, you made a mistake?

MR. CAMPBELL: Objection, argumentative.

THE COURT: I will allow this question, but we need to move it along.

THE DEFENDANT: This goes to the heart of the affidavit, Your Honor.

THE COURT: I said I will allow the question.

THE DEFENDANT: Yes, sir.

THE COURT: So you can answer it.

A. Yes. I had mistaken watch wall watching her interview on using February 26th. And now I see that

what she was referring to was after Valentine's Day, which would have been February of 2010. And then I see now that ~~she says the last time that she had seen you was February 26th.~~ So I was mistaken on the particular date.

Q. (By the Defendant) So I am not trying to -- basically just to get it over with, you basically made a mistake?

THE COURT: She has answered that question. Let's move along.

Q. (By the Defendant) In the same affidavit, ma'am, you are aware of article -- ~~because this is facing challenge, Your Honor -- under Article 1.23, dignity of the State? Do you consider that -- are you aware that this document is considered prosecution, in prosecution of a document?~~

MR. CAMPBELL: Objection. That question is confusing.

THE COURT: I don't even understand the question.

~~THE DEFENDANT: Basically, Your Honor, I am asking is this document used in prosecutions? This affidavit of arrest warrant, is it used in prosecution because, I guess, they present it to the Grand Jury or present it to the judge to get you arrested? So it's a~~

# IN THE GALVESTON COUNTY 56th DISTRICT COURT
## 10CR1217-83-4
## ART. 11.07

10CR1217-83-4
DCMOT
Motion
952260

A70

EXPARTE, THOMAS WAYNE FLORENCE

2014 NOV -6 PM 3: 16

## MOTION TO ~~RECUSE~~ LONNIE COX FROM PRE SIDING OVER OR BEING INVOLVED IN APPLICANTS ART. 11.07 10CR1217-83-4

COMES NOW PRO SE, APPLICANT THOMAS FLORENCE TO CERTIFY SAID MOTION UNDER THE PENALTY OF PERJURY AND STATE THAT THESE CLAIMS ARE SUPPORTED BY THE RECORDS IN THIS PARTICULAR CASE.

SEE, T.R.C.P. 18(a), BARRON v. ST. OF TEX. ATTY. GEN. 108 SW3d, 379, 382-83 (TYLER APP. CT. 2003 NO PET.), THE PROCEDURAL REQ-UISITES FOR RECUSAL IN 18 a (a) ARE MAN-DATORY AND A PARTY WHO FAILS TO CONFORM WAIVES HIS RIGHT TO COMPLAIN OF JUDGE'S FAILURE TO RECUSE HIMSELF.

LIKEWISE A PARTY'S FAILURE TO OBEY THE 10 DAY RULE NOTICE PROVISION BARS ANY COM-PLAINT ON APPEAL OF THE DENIAL OF THE MO-TION TO RECUSE. THUS, THE PROVISIONS OF RULE 18 a OBLIGATING A TRIAL JUDGE TO EITH-ER RECUSE HIMSELF OR REFER THE MOTION TO THE PRESIDING JUDGE OF THE ADMINISTRA-TIVE JUDICIAL DISTRICT NEVER COME INTO PLAY UNLESS AND UNTIL A FORMAL TIMELY

1

A70

Law Library ALLRED

defect is pointed out would be unreasonable in holding that the state court's fact-finding process was adequate. If the federal court determines, considering only the evidence before the state court, that the adjudication of a claim on the merits resulted in a decision contrary to or involving an unreasonable application of clearly established federal law, or that the state court's decision was based on an unreasonable determination of the facts, the federal court evaluates the claim de novo and may consider evidence properly presented for the first time in federal court.

*Criminal Law & Procedure > Counsel > Effective Assistance > Tests*
*Criminal Law & Procedure > Habeas Corpus > Review > Specific Claims > Ineffective Assistance*

To bring a successful ineffective assistance of counsel claim, a petitioner must show counsel's deficient performance and prejudice. Deficient performance requires a showing that trial counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional norms. A court considering a claim of ineffective assistance must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance. The petitioner bears the burden of showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment. To establish prejudice, the petitioner must show a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding. Counsel's errors must be so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Criminal Law & Procedure > Counsel > Effective Assistance > Tests*
*Criminal Law & Procedure > Habeas Corpus > Review > Antiterrorism & Effective Death Penalty Act*
*Criminal Law & Procedure > Habeas Corpus > Review > Specific Claims > Ineffective Assistance*
*Criminal Law & Procedure > Habeas Corpus > Review > Standards of Review > Deference*

The standards created by Strickland and the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA) are both highly deferential, and when the two apply in tandem, review is doubly so. In considering the state court's denial of a petitioner's ineffective assistance of counsel claims, the pivotal question is whether the state court's application of the Strickland standard was unreasonable. A federal court does not ask, in the first instance, whether counsel's performance fell below Strickland's standard because an unreasonable application of federal law is different from an incorrect application of federal law. The federal court must guard against the danger of equating unreasonableness under Strickland with unreasonableness under AEDPA. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard. Federal courts are mindful that a state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision.

*Criminal Law & Procedure > Habeas Corpus > Exhaustion of Remedies > Satisfaction of Exhaustion*
*Criminal Law & Procedure > Habeas Corpus > Procedural Defaults > General Overview*
*Criminal Law & Procedure > Habeas Corpus > Review > Antiterrorism & Effective Death Penalty Act*

A habeas petitioner must present his claims to the highest state court in order to satisfy the exhaustion requirement of the Anti-Terrorism and Effective Death Penalty Act of 1996. The procedural default rule, barring consideration of a federal claim, applies if it is clear that the state court would hold the claim procedurally barred.

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

---

*Criminal Law & Procedure > Habeas Corpus > Procedural Default > General Overview*
*Criminal Law & Procedure > Habeas Corpus > State Grounds > Independent & Adequate Principle*

For the procedural default rule to apply, the application of the state procedural rule must provide an adequate and independent state law basis on which the state court can deny relief.

*Criminal Law & Procedure > Sentencing > Capital Punishment > Mitigating Circumstances*

A difficult family background is a relevant mitigating circumstance if a defendant can show that something in that background had an effect or impact on his behavior that was beyond the defendant's control.

*Criminal Law & Procedure > Sentencing > Capital Punishment > Mitigating Circumstances*

A sentencer in capital cases must be permitted to consider any relevant mitigating factor.

*Criminal Law & Procedure > Counsel > Effective Assistance > Appeals*
*Criminal Law & Procedure > Counsel > Effective Assistance > Tests*
*Criminal Law & Procedure > Habeas Corpus > Review > Specific Claims > Ineffective Assistance*

A criminal defendant enjoys the right to the effective assistance of counsel on appeal. A federal habeas court considers claims of ineffective assistance of appellate counsel according to the standard set forth in Strickland. A petitioner must show that appellate counsel's representation fell below an objective standard of reasonableness, and that, but for counsel's errors, a reasonable probability exists that he would have prevailed on appeal.

*Criminal Law & Procedure > Habeas Corpus > Review > Burdens of Proof*

In order for a federal habeas court to grant the petition, a petitioner must show that the state court's denial of a claim was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Criminal Law & Procedure > Sentencing > Capital Punishment > Mitigating Circumstances*

The U.S. Constitution requires a sentencer to consider any and all mitigation evidence offered by a defendant at trial. This mandate requires the consideration of nonstatutory mitigating evidence in order to safeguard individualized decisions that are essential in capital cases and that give due respect to the uniqueness of the individual defendant. Moreover, just as the State may not preclude the sentencer from considering any mitigating factor, neither may the sentencer refuse to consider, as a matter of law, any relevant mitigating evidence. In considering mitigating evidence, however, the sentencer may determine the weight to be given relevant mitigating evidence.

*Criminal Law & Procedure > Sentencing > Capital Punishment > Aggravating Circumstances*
*Criminal Law & Procedure > Sentencing > Capital Punishment > Mitigating Circumstances*

Arizona law required sentencing courts to consider all mitigating evidence, even if it did not establish a statutory mitigating factor. In addition, the Arizona Supreme Court specifically directed sentencing courts to consider each mitigating circumstance, whether or not enumerated by statute, both individually and cumulatively. Also, the Arizona Supreme Court would conduct a de novo review of the trial court's rulings concerning aggravation and mitigation to decide, independently, whether the death sentence should stand.

*Criminal Law & Procedure > Habeas Corpus > Review > Antiterrorism & Effective Death Penalty Act*

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

RICHARD D. HURLES, Petitioner-Appellant, v. CHARLES L. RYAN,* Respondent-Appellee. UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

706 F.3d 1021; 2013 U.S. App. LEXIS 1305
No. 08-99032

October 7, 2010, Argued and Submitted, Pasadena, California
January 18, 2013, Filed

**Editorial Information: Subsequent History**

Later proceeding at Hurles v. Ryan, 2013 U.S. App. LEXIS 5404 (9th Cir. Ariz., Mar. 19, 2013)Opinion withdrawn by Hurles v. Ryan, 2014 U.S. App. LEXIS 9254 (9th Cir. Ariz., May 16, 2014)Substituted opinion at Hurles v. Ryan, 2014 U.S. App. LEXIS 9255 (9th Cir. Ariz. May 16, 2014)US Supreme Court certiorari dismissed by Ryan v. Hurles, 2014 U.S. LEXIS 3989 (U.S., June 3, 2014)

**Editorial Information: Prior History**

Appeal from the United States District Court for the District of Arizona. D.C. No. CIV-00-0118-PHX-RCB. Robert C. Broomfield, Senior District Judge. Presiding.Hurles v. Ryan, 650 F.3d 1301, 2011 U.S. App. LEXIS 13819 (9th Cir. Ariz. 2011)

**Disposition:**

AFFIRMED in part; REMANDED.

Counsel  Denise I. Young and Michael Aaron Harwin, Tucson, Arizona, for Petitioner-Appellant. Terry Goddard, Attorney General of Arizona, Phoenix, Arizona, for Respondent-Appellee. Kent E. Cattani and J.D. Nielsen, Arizona Attorney General, Capital Litigation Section, Phoenix, Arizona, for

Judges: Before: Harry Pregerson, Dorothy W. Nelson, and Sandra S. Ikuta, Circuit Judges. Order; Opinion by Judge D.W. Nelson; Dissent by Judge Ikuta.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Petitioner inmate appealed the United States District Court for the District of Arizona's denial of his federal habeas petition challenging his conviction for capital murder and the imposition of his death sentence. The inmate argued that the district court erred in denying his claims of judicial bias and ineffective assistance of sentencing and appellate counsel, and in finding various claims procedurally defaulted. As allegation of judicial bias would have entitled inmate to habeas relief, district court abused its discretion in denying claim without evidentiary hearing. Case presented troubling example of defective fact-finding as state trial judge found involved her own conduct and she based findings on her own untested memory and understanding of events.

**OVERVIEW:** The inmate procedurally defaulted five of his ineffective assistance claims. Further, counsel did not perform below the objective standard of care when she did not establish a causal nexus between the inmate's mental conditions and the crime and counsel conducted a thorough penalty phase investigation and presented voluminous mitigating evidence. The trial court did consider the mitigating evidence offered, as the U.S. Constitution required. The state supreme court's independent review of the death sentence imposed also demonstrated that the inmate did not suffer an error requiring federal habeas intervention. However, because the allegation of judicial bias would have, if proved, entitled the inmate to federal habeas relief, the district court abused its discretion in denying the claim without an evidentiary hearing. The state court's denial of the inmate's judicial bias claim rested on an unreasonable determination of the facts. The case presented an especially troubling example of defective fact-finding because the facts the state trial judge found involved her own conduct, and she based those findings on her untested memory and understanding of the events.

**OUTCOME:** The case was remanded for an evidentiary hearing on the inmate's claim of judicial bias, but was otherwise affirmed.

**LexisNexis Headnotes**

*Criminal Law & Procedure > Habeas Corpus > Appeals > Standards of Review > Clear Error Review*
*Criminal Law & Procedure > Habeas Corpus > Appeals > Standards of Review > De Novo Review*
*Criminal Law & Procedure > Habeas Corpus > Evidentiary Hearings > Review of Denials*

An appellate court reviews de novo a district court's denial of a petitioner's habeas petition and reviews the district court's findings of fact for clear error. The appellate court reviews for abuse of discretion the determination that a petitioner is not entitled to an evidentiary hearing.

*Criminal Law & Procedure > Habeas Corpus > Review > Antiterrorism & Effective Death Penalty Act*
*Criminal Law & Procedure > Habeas Corpus > Review > Scope of Review*
*Criminal Law & Procedure > Habeas Corpus > Review > Standards of Review > Contrary & Unreasonable Standard > General Overview*

The Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA) places limitations on a federal court's power to grant a state prisoner's federal habeas petition. When a state court has adjudicated a claim on the merits, a federal court may grant relief only if the adjudication of that claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C.S. § 2254(d). To determine the relevant clearly established federal law, the federal court looks to the holdings, but not the dicta, of the Supreme Court at the time the state court adjudicated the claim on the merits. In considering whether the state court unreasonably applied clearly established federal law, the federal court is limited to the record before the state court that adjudicated the claim on the merits.

*Criminal Law & Procedure > Habeas Corpus > Review > Standards of Review > Contrary & Unreasonable Standard > Unreasonable Application*

An unreasonable application of federal law results where the state court identifies the correct governing legal rule from U.S. Supreme Court cases but unreasonably applies it to the facts of the particular state prisoner's case, or if it either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. A federal court cannot grant relief unless the state court came to a decision that was objectively unreasonable.

*Criminal Law & Procedure > Habeas Corpus > Review > Scope of Review*
*Criminal Law & Procedure > Habeas Corpus > Review > Standards of Review > Contrary & Unreasonable Standard > General Overview*

A federal court cannot find that the state court made an unreasonable determination of the facts in a case simply because it would reverse in similar circumstances if the case came before the federal court on direct appeal. Instead, the federal must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record before the state court. To find the state court's fact-finding process defective in a material way, or, perhaps, completely lacking, the federal court must more than merely doubt whether the process operated properly. Rather, it must be satisfied that any appellate court to whom the

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

A 44

While the Anti-Terrorism and Effective Death Penalty Act of 1996 stops short of imposing a complete bar on federal court relitigation of claims already rejected in state court proceedings it preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court decision conflicts with the U.S. Supreme Court's precedents.

*Criminal Law & Procedure > Trials > Defendant's Rights > Right to Fair Trial*

A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But the system of law has always endeavored to prevent even the probability of unfairness. This most basic tenet of the judicial system helps to ensure both the litigants' and the public's confidence that each case has been adjudicated fairly by a neutral and detached arbiter.

*Constitutional Law > Bill of Rights > Fundamental Rights > Procedural Due Process > Scope of Protection*
*Criminal Law & Procedure > Pretrial Motions > Disqualification & Recusal*
*Criminal Law & Procedure > Trials > Defendant's Rights > Right to Due Process*

The Due Process Clause of the Fourteenth Amendment establishes a constitutional floor, not a uniform standard, for a judicial bias claim. While most claims of judicial bias are resolved by common law, statute, or the professional standards of the bench and bar, the floor established by the Due Process Clause clearly requires a fair trial in a fair tribunal before a judge with no actual bias against the defendant or interest in the outcome of his particular case. The U.S. Constitution requires recusal where the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable. The inquiry is objective.

*Constitutional Law > Bill of Rights > Fundamental Rights > Procedural Due Process > Scope of Protection*
*Criminal Law & Procedure > Pretrial Motions > Disqualification & Recusal*

A09CASES

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

*Criminal Law & Procedure > Pretrial Motions > Disqualification & Recusal*
*Criminal Law & Procedure > Trials > Defendant's Rights > Right to Due Process*

Every procedure which would offer a possible temptation to the average judge to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear and true between the State and the accused, denies the accused due process of law.

*Constitutional Law > Bill of Rights > Fundamental Rights > Procedural Due Process > Scope of Protection*
*Criminal Law & Procedure > Pretrial Motions > Disqualification & Recusal*
*Criminal Law & Procedure > Trials > Defendant's Rights > Right to Due Process*
*Criminal Law & Procedure > Habeas Corpus > Cognizable Issues > Due Process*
*Criminal Law & Procedure > Habeas Corpus > Review > Specific Claims > General Overview*

A petitioner need not prove actual bias to establish a due process violation, just an intolerable risk of bias. Thus, a federal court must ask whether under a realistic appraisal of psychological tendencies and human weakness, a judge's interest poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented. Due process thus mandates a stringent rule that may sometimes require recusal of judges who have no actual bias and who would do their very best to weigh the scales of justice equally if there exists a probability of unfairness. But this risk of unfairness has no mechanical or static definition. It cannot be defined with precision because circumstances and relationships must be considered.

*Constitutional Law > Bill of Rights > Fundamental Rights > Procedural Due Process > Scope of Protection*
*Criminal Law & Procedure > Pretrial Motions > Disqualification & Recusal*

A44

---

A 45

*Criminal Law & Procedure > Trials > Defendant's Rights > Right to Due Process*

Non-pecuniary conflicts that tempt adjudicators to disregard neutrality offend due process. A judge must withdraw where she acts as part of the accusatory process, becomes embroiled in a running, bitter controversy with one of the litigants, or becomes so enmeshed in matters involving a litigant as to make it appropriate for another judge to sit.

*Criminal Law & Procedure > Habeas Corpus > Review > Antiterrorism & Effective Death Penalty Act*
*Criminal Law & Procedure > Habeas Corpus > Review > Standards of Review > Presumption of Correctness*

Ordinarily, a federal court cloaks the state court's factual findings in a presumption of correctness. 28 U.S.C.S. § 2254(e)(1). However, the federal court affords such deference only if the state court's fact-finding process survives the intrinsic review pursuant to Anti-Terrorism and Effective Death Penalty Act of 1996's unreasonable determination clause.

*Criminal Law & Procedure > Habeas Corpus > Review > Standards of Review > Deference*

Where a state court makes factual findings without an evidentiary hearing or other opportunity for the petitioner to present evidence, the fact-finding process itself is deficient and not entitled to deference.

*Criminal Law & Procedure > Habeas Corpus > Evidentiary Hearings > General Overview*

Where a habeas petitioner has not failed to develop the factual basis of his claim in state court as required by 28 U.S.C.S. § 2254(e)(2), an evidentiary hearing is required if (1) the petitioner has shown his entitlement to an evidentiary hearing pursuant to Townsend, and (2) the allegations, if true, would entitle him to relief. A petitioner who has previously sought and been denied an evidentiary hearing has not failed to develop the factual basis of his claim.

A09CASES

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Under Townsend, a federal court must grant an evidentiary hearing in circumstances where: (1) the state court's factual determinations are not fairly supported by the record as a whole, and (2) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing.

Opinion

Opinion by:       Dorothy W. Nelson

Opinion

{706 F.3d 1027} ORDER AND OPINION

The opinion filed July 7, 2011, and appearing at 650 F.3d 1301, is withdrawn, *Carver v. Lehman,* 558 F.3d 869, 878-79 (9th Cir. 2009), and is replaced by the opinion filed concurrently with this order. Our prior opinion may not be cited as precedent to any court. Moreover, with the original opinion withdrawn, we deem the petition for rehearing and rehearing en banc moot. The parties may file a petition for rehearing and rehearing en banc with respect to the opinion filed together with this order.

IT IS SO ORDERED.

D.W. NELSON, Senior Circuit Judge:

Petitioner Richard D. Hurles appeals the district court's denial of his federal habeas petition challenging his conviction for capital murder and the imposition of his death sentence. Hurles argues that the district court erred in denying his claims of judicial bias and ineffective assistance of sentencing and appellate counsel, and in finding various claims procedurally defaulted. We remand for an evidentiary hearing on Hurles's claim of judicial bias but otherwise affirm the district court.

I. Background

Hurles, on parole after serving nearly fifteen

A 45

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

years for prior crimes, went to the library in Buckeye, Arizona on a November afternoon in 1992. *State v. Hurles*, 185 Ariz. 199, 914 P.2d 1291, 1293 (1996) (en banc). He attacked librarian Kay Blanton by attempting to rape her and then stabbing her thirty-seven times. *Id.* Hurles left the library, cleaned himself up, discarded his bloody clothes and fled on a bus to Las Vegas, Nevada. *Id.* at 1294. The state charged Hurles with burglary, first-degree murder, and attempted first-degree felony murder and attempted sexual assault. *Id.* at 1293.

The court appointed an attorney to represent Hurles, an indigent. That attorney moved for the appointment of co-counsel when the State decided to seek the death penalty. Defense counsel cited numerous reasons necessitating co-counsel, among them, the many witnesses, the State's intention to utilize forensic experts, the need to maintain a productive client relationship and the dense and detailed preparation necessary for both phases of trial. The trial court summarily denied the motion.

Defense counsel brought a petition for special action in the Arizona Court of Appeals. The petition challenged the denial of the motion to appoint co-counsel as violating Hurles's rights to due process, equal protection and the adequate assistance of counsel. The real party in interest, the State of Arizona, declined to respond to the petition because it lacked standing to do so. *Hurles v. Superior Court*, 174 Ariz. 331, 849 P.2d 1, 2 (Ariz. Ct. App. 1993). However, the petition named the trial judge, Ruth Hilliard, as the respondent, as required by Arizona law. Ariz. R. P. Special Actions 2(a). This nominal designation "is a mere formality," and the trial judge "has no interest in the way the case is decided." *State ex rel. Dean v. City Court*, 123 Ariz. 189, 598 P.2d 1008, 1010-11 (Ariz. Ct. App. 1979). Nonetheless, Judge Hilliard filed a responsive pleading...months before the presentation of any evidence in the case

## Law Library ALLRED

against Hurles, that defended her ruling below.

In her response, Judge Hilliard described the murder as "brutal." She noted that defense counsel had not noticed any [706 F.3d 1028] defenses, had not disclosed the names of trial witnesses, had not requested an examination of Hurles and that it was not known whether Hurles would present a mental health expert at trial. Judge Hilliard nevertheless described the state's case against Hurles as "very simple and straightforward, compared to other capital cases" and predicted that it would not involve an inordinate amount of witness testimony. She argued that the denial of second counsel was rationally related to the state's duty to preserve its resources, noting that Hurles had failed to show that his case was "any more complex or difficult to prepare than almost any other criminal case." Judge Hilliard referenced the rules of professional conduct and stated that if defense counsel believed that she could not render competent representation, she was bound to withdraw her and, quite possibly, to withdraw her name from the list of attorneys who contracted with the county to serve as appointed counsel. Judge Hilliard concluded, "Clearly there are other attorneys who provide contract services for Maricopa County who would be able to provide competent representation in a case as simple as this."

The Arizona Court of Appeals published a decision denying Judge Hilliard standing to appear in the special action and ruling it improper for judges to file pleadings in special actions solely to advocate the correctness of an individual ruling in a single case. *Hurles*, 849 P.2d at 3-5. The court noted that the presiding criminal judge, not Judge Hilliard, requested the filing of a responsive pleading and that there was no contact between Judge Hilliard and the Arizona Attorney General's office as the pleading was prepared. *Id.* at 2, n.2. However, Colleen French, of the Arizona

---

Attorney General's Office, represented Judge Hilliard in the special action proceeding and later admitted to having had some communication with Judge Hilliard about this matter. In opposing a motion to disqualify the Arizona Attorney General's Office from representing the state, French referenced her "communications with [Judge Hilliard] during the special action proceedings" but did not describe their nature or content. The record is ambiguous as to the nature and extent of those communications.

Addressing Judge Hilliard's participation in the special action proceeding, the court of appeals held that it was "of the inappropriate 'I-ruled-correctly sort' *Hurles*, 849 P.2d at 4. The court explained that "at every level of the judiciary, judges are presumed to recognize that they must do the best they can, ruling by ruling, with no personal stake-and surely no *justiciable* stake-in whether they are ultimately affirmed or reversed." *Id.* The court stated that "[t]his principle, which is essential to impartial adjudication, does not change from direct appeal to special action, merely because the judge is a nominal respondent in the latter." *Id.* The court then held that Judge Hilliard lacked standing to file a responsive pleading and declined to consider the pleading filed in her name. *Id.*

Judge Hilliard continued to preside over Hurles's trial. A jury found Hurles guilty of all charges. Judge Hilliard then conducted an aggravation and mitigation hearing to determine the appropriate sentence for Hurles. Arizona's capital sentencing scheme provided at the time of trial that Judge Hilliard, sitting alone, would determine the presence or absence of the aggravating factors required by state law for the imposition of the death penalty. *Ring v. Arizona*, 536 U.S. 584, 588, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002). The Supreme Court has since held that capital defendants are entitled to a jury determination of any fact that would support the imposition of a

death sentence. *Id.* at 589. At the aggravation and mitigation hearing, Hurles offered substantial mitigating [706 F.3d 1029] evidence, including his markedly dysfunctional family background, cognitive deficiencies, long-term substance abuse, mental illness, good behavior while incarcerated and an expert opinion that Hurles suffered diminished capacity at the time of the crime.

Following the presentation of penalty phase evidence, Judge Hilliard found one statutory aggravating factor: that Hurles committed the crime in an especially cruel, heinous and depraved manner. She found two nonstatutory mitigating circumstances: that Hurles suffered a deprived childhood in a clearly dysfunctional home and that he behaved well in prison prior to the underlying crime. She concluded that these circumstances did not warrant leniency and condemned Hurles to die. The Arizona Supreme Court affirmed Hurles's conviction and sentence on appeal. *Hurles*, 914 P.2d at 1300.

Hurles filed his first petition for post-conviction review ("PCR") in 1999. Judge Hilliard presided over this PCR. French, the same attorney who represented Judge Hilliard in the prior special action proceeding, represented the state. Judge Hilliard denied the PCR, and the Arizona Supreme Court summarily affirmed.

Hurles commenced federal habeas proceedings in 2000. He then returned to state court to file a second PCR raising additional claims, including one of judicial bias. Hurles moved to recuse Judge Hilliard from presiding over his second PCR. The motion was referred to another judge and denied. Judge Hilliard then denied Hurles's second PCR, and the Arizona Supreme Court summarily affirmed.

Hurles returned to federal court and filed an amended habeas petition, raising ten claims. The district court denied most of them as procedurally barred. After additional briefing,

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

the district court denied the remainder of Hurles's claims on the merits and certified four issues for appeal to this Court.

## II. Jurisdiction and Standard of Review

We have jurisdiction pursuant to 28 U.S.C. § 2253. We review de novo the district court's denial of Hurles's habeas petition, and we review the district court's findings of fact for clear error. *Brown v. Ornoski*, 503 F.3d 1006, 1010 (9th Cir. 2007). We review for abuse of discretion the determination that a petitioner is not entitled to an evidentiary hearing. *Stanley v. Schriro*, 598 F.3d 612, 617 (9th Cir. 2010). Because Hurles filed his federal habeas petition after 1996, the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this case. *Lindh v. Murphy*, 521 U.S. 320, 336, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997).

AEDPA places limitations on a federal court's power to grant a state prisoner's federal habeas petition. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398, 179 L. Ed. 2d 557 (2011). When a state court has adjudicated a claim on the merits, we may grant relief only if the adjudication of that claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). To determine the relevant clearly established federal law, we look to the holdings, but not the dicta, of the Supreme Court at the time the state court adjudicated the claim on the merits. *Terry Williams v. Taylor*, 529 U.S. 362, 412, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). In considering whether the state court unreasonably applied clearly established federal law, we {706 F.3d 1030} are limited to the record before the state court that adjudicated the claim on the merits. *Pinholster*, 131 S. Ct. at 1398.

An unreasonable application of federal law results where the "the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case," or if it "either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407; *see also Panetti v. Quarterman*, 551 U.S. 930, 953, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (holding that AEDPA does not require habeas courts to await "some nearly identical factual pattern" before applying a clearly established rule, nor does it prohibit "finding an application of a principle unreasonable when it involves a set of facts different from those of the case in which the principle was announced") (internal quotation marks and citations omitted). We cannot grant relief unless the state court came to a decision that was objectively unreasonable. *Williams*, 529 U.S. at 410.

We cannot find that the state court made an unreasonable determination of the facts in this case simply because we would reverse in similar circumstances if this case came before us on direct appeal. *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004). Instead, we must be "convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record" before the state court. *Id.* To find the state court's fact finding process defective in a material way, or, perhaps, completely lacking, "we must more than merely doubt whether the process operated properly. Rather, we must be satisfied that any appellate court to whom the defect is pointed out would be unreasonable in holding that the state court's fact-finding process was adequate." *Id.*

If we determine, considering only the evidence before the state court, that the

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

adjudication of a claim on the merits resulted in a decision contrary to or involving an unreasonable application of clearly established federal law, or that the state court's decision was based on an unreasonable determination of the facts, we evaluate the claim de novo, and we may consider evidence properly presented for the first time in federal court. *Pinholster*, 131 S. Ct. at 1401.

## III. Discussion

### A. Ineffective Assistance of Counsel

Hurles brought various claims of ineffective assistance of counsel ("IAC") in his federal habeas petition, all of which the district court either dismissed as procedurally defaulted or denied on the merits.

To bring a successful IAC claim, Hurles must show counsel's deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Deficient performance requires a showing that trial counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional norms. *Wiggins v. Smith*, 539 U.S. 510, 521, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003). "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range of reasonable professional assistance." *Harrington v. Richter*, 131 S. Ct. 770, 787, 178 L. Ed. 2d 624 (2011) (quoting *Strickland*, 466 U.S. at 689). Hurles bears the burden of showing "that counsel made errors so serious that counsel was not functioning as the {706 F.3d 1031} 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. To establish prejudice, Hurles must show a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough 'to show that

the errors had some conceivable effect on the outcome of the proceeding.' Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Richter*, 131 S. Ct. at 787-88 (quoting *Strickland*, 466 U.S. at 693, 687).

"The standards created by *Strickland* and [AEDPA] are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 131 S. Ct. at 788 (internal quotation marks and citations omitted). In considering the state court's denial of Hurles's IAC claims, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Id.* at 785. We do not ask, in the first instance, whether counsel's performance fell below *Strickland*'s standard because "'an unreasonable application of federal law is different from an incorrect application of federal law.'" *Id.* (quoting *Williams*, 529 U.S. at 410). We must "guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under [AEDPA]. . . . The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* at 788. We are mindful that a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004)).

### 1. Procedurally Defaulted IAC Claims

The warden contends that Hurles procedurally defaulted five of his IAC claims. We agree and find federal review of these claims barred.

The relevant claims include trial counsel's failure to locate a key guilt phase witness and appellate counsel's failure to raise (1) the denial of a request for neurological testing, (2) the consideration of improper victim statements, (3) that, generally, Arizona' death penalty statute fails to narrow

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

the class of death-eligible defendants and (4) that, specifically, Arizona's F(6) statutory aggravating factor fails to narrow the class of death-eligible defendants.

Hurles procedurally defaulted these claims when he failed to raise them before the Arizona Supreme Court. See *Zichko v. Idaho*, 247 F.3d 1015, 1021-22 (9th Cir. 2001) (amended) ("A habeas petitioner must present his claims to the highest state court in order to satisfy the exhaustion requirement of [AEDPA]."). "[T]he procedural default rule[barring consideration of a federal claim 'applies . . . if it is clear that the state court would hold the claim procedurally barred.'" *Franklin v. Johnson*, 290 F.3d 1223, 1230-31 (9th Cir. 2002) (quoting *Harris v. Reed*, 489 U.S. 255, 263 n.9, 109 S. Ct. 1038, 103 L. Ed. 2d 308 (1989)). If Hurles presented these IAC claims to the Arizona Supreme Court now, the court would dismiss them as waived. Ariz. R. Crim. P. 32.2 (waiver with narrow exceptions not applicable here). Thus, Hurles's failure to present these claims to the state supreme court "in a timely fashion has resulted in a procedural default of those claims." *Zichko*, 247 F.3d at 1022 (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 848, 119 S. Ct. 1032, 144 L. Ed. 2d 1 (1999); see also *Coleman v. Thompson*, 501 U.S. 722, 732, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991), *overruled on other grounds by Martinez v. Ryan*, 132 S. Ct. 1309, 1315, 182 L. Ed. 2d 272 (2012) (holding petitioner "defaulted his federal claims in state court." . . . so, met "technical requirements for exhaustion" because "no state remedies [were] available to him") (internal quotation marks and citations omitted).

For the procedural default rule to apply, "the application of the state procedural rule must provide an adequate and independent state law basis on which the state court can deny relief." *Bennett v. Mueller*, 322 F.3d 573, 580 (9th Cir. 2003) (amended) (internal quotation marks and citations omitted). Arizona's waiver rules are independent and adequate

bases for denying relief. *Stewart v. Smith*, 536 U.S. 856, 859-60, 122 S. Ct. 2578, 153 L. Ed. 2d 762 (2002) (per curiam) (holding denials pursuant to Arizona waiver rules are independent of federal law); *Ortiz v. Stewart*, 149 F.3d 923, 931-32 (9th Cir. 1998) (finding Arizona waiver rule consistently and regularly applied).

Now that we have found "an independent and adequate state procedural ground, federal habeas review is barred unless [Hurles] can demonstrate cause for the procedural default and actual prejudice, or [can] demonstrate that the failure to consider the claims will result in a fundamental miscarriage of justice." *Bennett*, 322 F.3d at 580 (quoting *Noltie v. Peterson*, 9 F.3d 802, 804-05 (9th Cir. 1993)). Hurles has made neither showing. The district court properly dismissed these claims.

## 2. Sentencing Counsel

Hurles claims that sentencing counsel failed to explain how Hurles's mental illness and deficiencies affected his conduct at the time of the crime, depriving him of the effective assistance of counsel. The state court reasonably denied this claim. As discussed, to bring a successful IAC claim, Hurles must show deficiency and prejudice. *Strickland*, 466 U.S. at 687.

Hurles contends that trial counsel failed to draw a causal nexus between his mental health problems and his conduct at the time of the crime, thus, the mental health evidence presented at sentencing proved worthless. *State v. Wallace*, 160 Ariz. 424, 773 P.2d 983 (Ariz. 1989) (en banc) ("A difficult family background is relevant mitigating circumstance if a defendant can show that something in that background had an effect or impact on his behavior that was beyond the defendant's control."); see also *State v. Greene*, 192 Ariz. 431, 967 P.2d 106, 117 (Ariz. 1998) (en banc) ("This court has held that family background may be a substantial mitigating circumstance when it is shown to have some connection with the

## Law Library ALLRED

defendant's offense-related conduct."). (internal quotation marks and citations omitted).

Counsel did not perform deficiently. First, Supreme Court precedent existing at the time of trial did not require showing a causal nexus between mitigating evidence and the crime. In fact, the Supreme Court had held that "the sentencer in capital cases must be permitted to consider *any relevant* mitigating factor." *Eddings v. Oklahoma*, 455 U.S. 104, 112, 102 S. Ct. 869, 71 L. Ed. 2d 1 (1982) (emphasis added) (explaining *Lockett v. Ohio*, 438 U.S. 586, 98 S. Ct. 2954, 57 L. Ed. 2d 973 (1978) (plurality)); see also *Lockett*, 438 U.S. at 604 ("The Eighth and Fourteenth Amendments require that the sentencer . . . not be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis [706 F.3d 1033] for a sentence less than death."). Therefore, counsel did not perform below the objective standard of care when she did not establish a causal nexus between Hurles's mental conditions and the crime.

Moreover, counsel conducted a rather thorough penalty phase investigation and presented voluminous mitigating evidence. She called four witnesses to testify to Hurles's dysfunctional family background, mental and psychological disabilities and good behavior while incarcerated before the underlying crime. She commissioned a detailed social history that catalogued Hurles's maladjusted family circumstances and deprived life, and that contained affidavits from family members and others who knew Hurles. In her briefing before the trial court, defense counsel highlighted Hurles's intoxication at the time of the crime. Trial counsel also adeptly cross-examined the state's psychiatrist.

On this record, we cannot say that counsel's efforts fell short of what the Constitution requires. *Porter v. McCollum*, 558 U.S. 30,

130 S. Ct. 447, 453, 175 L. Ed. 2d 398 (2009) (finding counsel's failure to investigate and present mitigating evidence, which did not reflect reasonable professional judgment, deficient and prejudicial); *Rompilla v. Beard*, 545 U.S. 374, 390, 125 S. Ct. 2456, 162 L. Ed. 2d 360 (2005) (finding deficient and prejudicial counsel's failure to examine court file relating to petitioner's prior conviction); *Wiggins*, 539 U.S. at 532, 538 (granting petition where counsel conducted unreasonably insufficient mitigation investigation that fell short of prevailing professional standards); see also *Wong v. Belmontes*, 558 U.S. 15, 130 S. Ct. 383, 385, 175 L. Ed. 2d 328 (2009) (per curiam) (denying IAC claim where counsel "understood the gravity of th[e] aggravating evidence" and "built his mitigation strategy around the overriding need to exclude it). The state court reasonably denied this claim.

## 3. Appellate Counsel

Hurles alleges that appellate counsel denied him the effective assistance of counsel by not challenging the trial court's failure to weigh the mitigating evidence cumulatively. The state court reasonably denied this claim.

A criminal defendant enjoys the right to the effective assistance of counsel on appeal. *Evitts v. Lucey*, 469 U.S. 387, 391-97, 105 S. Ct. 830, 83 L. Ed. 2d 821 (1985). We consider claims of ineffective assistance of appellate counsel according to the standard set forth in *Strickland*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674. *Miller v. Keeney*, 882 F.2d 1428, 1433-34 (9th Cir. 1989). Hurles must show that appellate counsel's representation fell below an objective standard of reasonableness, and that, but for counsel's errors, a reasonable probability exists that he would have prevailed on appeal. *Id.* at 1434.

The trial judge found beyond a reasonable doubt that Hurles committed the crime in an especially heinous, cruel and depraved manner, a statutory aggravating factor. As to cruelty, the court found that the victim

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Law Library ALLRED

remained conscious while being stabbed thirty-seven times; she attempted to reach a phone to call for help and responded to paramedics who treated her at the scene. She also suffered fifteen defensive stab wounds struggling to protect herself. The court also found that Hurles inflicted gratuitous violence on the victim, establishing that he committed the murder in a heinous or depraved manner. In addition to the fifteen defensive wounds, the victim suffered eight stab wounds to her head and neck, twelve to her torso and two to her legs. Of the thirty-seven wounds, three could have been fatal; the victim bled to death. The court concluded that the attack "had to have been mind-numbing and terrifying and excruciatingly painful" for the victim (706 F.3d 1034) and that Hurles committed the murder in an especially heinous, cruel and depraved manner.

The trial court also considered the evidence in mitigation. The court found that Hurles did not establish statutory factor (G)(1), A.R.S. § 13-703(G)(1), which concerns diminished capacity, or the ability to appreciate the wrongfulness of one's conduct or to conform one's conduct to the requirements of law. While the court found that Hurles is "borderline mentally retarded" and has a learning disorder, he still understood the consequences of his actions and attempted to cover his tracks to evade detection. The trial court accepted evidence that Hurles had been drinking before the crime but found it insufficient to establish incapacity due to intoxication.

The court found that Hurles had proved, by a preponderance of the evidence, two nonstatutory mitigating circumstances:

Number one, the defendant had a deprived childhood and was raised in a clearly dysfunctional home environment. Defendant's father was abusive to defendant and to his siblings, molested his daughter, had sex with his son's girlfriend. Defendant's brothers were in trouble with the law frequently throughout defendant's life and may have abused alcohol throughout their lives. Number two, the defendant had good behavior while incarcerated prior to the commission of this crime. While incarcerated[,] defendant attended available counseling sessions and performed well in his work as a cook in the prison kitchen. The court then noted that it had considered other factors Hurles had raised in his briefing, including his low intelligence and lack of education, as well as his inadequate mental health treatment while incarcerated. The court did not find those factors mitigating. The trial court concluded that Hurles had not shown that any of the proven mitigating circumstances were sufficiently substantial to warrant leniency and imposed a sentence of death.

Hurles contends that the trial court considered evidence of his mental deficiencies and intoxication for the limited purpose of determining whether he suffered from diminished capacity at the time of the crime. He argues that the trial court failed, in the final analysis, to consider evidence of his mental deficiencies and intoxication cumulatively with the other mitigating evidence. Hurles claims that counsel erred in failing to raise this issue on appeal.

Counsel did not raise any sentencing issues on appeal, which the Arizona Supreme Court noted. *Hurles*, 914 P.2d at 1299. Even so, the state supreme court conducted "a thorough and independent review of a record and of the aggravating and mitigating evidence to determine whether the sentence [wa]s justified." *Id.* (quoting *State v. Brewer*, 170 Ariz. 486, 826 P.2d 783, 797 (Ariz. 1992)). The court summarized the trial court's findings regarding the mitigating evidence and stated:

> A difficult family background, including childhood abuse, does not necessarily have substantial mitigating weight

A09CASES

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

---

absent a showing that it significantly affected or impacted a defendant's ability to perceive, to comprehend, or to control his actions. No such evidence was offered, and the trial judge did not err in concluding that Hurles's family background was not sufficiently mitigating to require a life sentence. The judge also found that Hurles had good behavior while incarcerated, prior to committing the murder. Taken either by itself or in combination with Hurles's family background, we do not believe this sufficiently mitigates the quality of the aggravating circumstance. (706 F.3d 1035) A life sentence would not be more appropriate. *Id.* at 1299-1300 (citation omitted).

The state court denied Hurles's claim of ineffective assistance of appellate counsel, which he raised in his first PCR. The court reasoned that Hurles had not met the *Strickland* standard, that the state supreme court independently reviewed the sentence and that the outcome on appeal would not have been different if Hurles had presented this claim explicitly. First PCR at 3.

We must consider whether this denial of Hurles's claim of ineffective assistance of appellate counsel qualifies as objectively unreasonable. In order for us to grant the petition, Hurles must show that the state court's denial of this claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786-87. Hurles has not made such a showing. Even if we presume deficiency, we find prejudice wanting. *Strickland*, 466 U.S. at 697 (holding a court deciding an IAC claim need not address both components of the inquiry if the defendant makes an insufficient showing on one). Hurles has not shown that, but for appellate counsel's failure to raise this claim, the state court would have invalidated his death sentence. *Miller*, 882 F.2d at 1434.

The Constitution requires a sentencer to consider any and all mitigation evidence offered by a defendant at trial. *Lockett*, 438 U.S. at 604. This mandate requires the consideration of nonstatutory mitigating evidence in order to safeguard individualized decisions that are essential in capital cases and that give due respect to the uniqueness of the individual defendant. *Id.* at 605. Moreover, "[j]ust as the State may not ... preclude the sentencer from considering any mitigating factor, neither may the sentencer refuse to consider, *as a matter of law*, any relevant mitigating evidence." *Eddings*, 455 U.S. at 113-14. In considering mitigating evidence, however, the sentencer "may determine the weight to be given relevant mitigating evidence." *Id.* at 114-15.

Arizona law in existence at the time of trial required sentencing courts to consider all mitigating evidence, even if it did not establish a statutory mitigating factor. *State v. McMurtrey*, 136 Ariz. 93, 664 P.2d 637, 646 (Ariz. 1983) (en banc). In addition, the Arizona Supreme Court specifically directed sentencing courts to consider each mitigating circumstance, whether or not enumerated by statute, both individually and cumulatively. *State v. Gallegos*, 178 Ariz. 1, 870 P.2d 1097, 1118-19 (Ariz. 1994). Also at the time, the Arizona Supreme Court would conduct a de novo review of the trial court's rulings concerning aggravation and mitigation to decide, independently, whether the death sentence should stand. *Brewer*, 826 P.2d at 790-91.

Had counsel presented a claim to the Arizona Supreme Court that the trial court failed to consider the cumulative weight of the mitigating evidence presented, we see no probability that Hurles would have prevailed. At sentencing, the trial court stated on the record that it had considered nonstatutory mitigating circumstances, "including any aspect of [Hurles's] character, propensities or record" that might call for leniency. The court also noted that it had

A09CASES

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

considered Hurles's sentencing memorandum, the testimony presented both at trial and the sentencing hearing, and the arguments of counsel. In addition to Hurles's deprived upbringing and good behavior while incarcerated, the trial court noted it had considered Hurles's low intelligence, lack of education and inadequate (706 F.3d 1036) mental health treatment while incarcerated.

While the mitigating evidence may have moved us to mercy had we presided over Hurles's sentencing trial, such a determination is not appropriate on habeas review. Richter, 131 S. Ct. at 786 (holding a reviewing court must not treat the unreasonableness question as a test of its confidence in the result it would reach under de novo review). Instead, we must ask whether reason supports the state court's conclusion that counsel rendered effective assistance to Hurles, despite not raising this claim on appeal. We find no error in that determination. The record makes plain that the trial court did in fact consider the mitigating evidence offered, as the Constitution requires. Parker v. Dugger, 498 U.S. 308, 314, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991) ("We must assume the trial judge considered all this evidence before passing sentence. For one thing, he said he did."). The Arizona Supreme Court's independent review of the death sentence imposed here also persuades us that Hurles did not suffer an error requiring federal habeas intervention. Hurles, 914 P.2d at 1299-1300. While AEDPA "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state court proceedings . . . [i]t preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court decision conflicts with [the Supreme Court's] precedents." Richter, 131 S. Ct. at 786. Such a conflict does not exist here. The state court did not err in denying this claim.

## B. Judicial Bias

Hurles contends that Judge Hilliard's failure to recuse herself from his trial, sentencing, and post-conviction proceedings denied him due process of law. The state court came to an unreasonable determination of the facts in denying this claim. Accordingly, we remand for an evidentiary hearing.

The Supreme Court held long ago that a "fair trial in a fair tribunal is a basic requirement of due process." In re Murchison, 349 U.S. 133, 136, 75 S. Ct. 623, 99 L. Ed. 942 (1955). "Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness." Id. cf. Mistretta v. United States, 488 U.S. 361, 407, 109 S. Ct. 647, 102 L. Ed. 2d 714 (1989) ("The legitimacy of the Judicial Branch ultimately depends on its reputation for impartiality and nonpartisanship."). This most basic tenet of our judicial system helps to ensure both the litigants' and the public's confidence that each case has been adjudicated fairly by a neutral and detached arbiter.

The Due Process Clause of the Fourteenth Amendment establishes a constitutional floor, not a uniform standard," for a judicial bias claim. Bracy v. Gramley, 520 U.S. 899, 904, 117 S. Ct. 1793, 138 L. Ed. 2d 97 (1997). While most claims of judicial bias are resolved "by common law, statute, or the professional standards of the bench and bar," the "floor" established by the Due Process Clause clearly requires a fair trial in a fair tribunal before a judge with no actual bias against the defendant or interest in the outcome of his particular case." Id. at 904-05 (quoting Withrow v. Larkin, 421 U.S. 35, 46, 95 S. Ct. 1456, 43 L. Ed. 2d 712 (1975)). The Constitution requires recusal where "the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." Withrow, 421 U.S. at 47. Our inquiry is objective. Caperton v. A.T. Massey Coal Co., 556 U.S. 868, 881, 129 S. Ct. 2252, 173 L. Ed. 2d 1208

Law Library ALLRED

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

(2009).) We (706 F.3d 1037) do not ask whether Judge Hilliard actually harbored subjective bias. Id. Rather, we ask whether the average judge in her position was likely to be neutral or whether there existed an unconstitutional potential for bias. Id. "Every procedure which would offer a possible temptation to the average . . . judge to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear and true between the State and the accused, denies the [accused] due process of law." Tumey v. Ohio, 273 U.S. 510, 532, 47 S. Ct. 437, 71 L. Ed. 749, 5 Ohio Law Abs. 159, 5 Ohio Law Abs. 185, 25 Ohio L. Rep. 236 (1927).

Hurles need not prove actual bias to establish a due process violation, just an intolerable risk of bias. Aetna Life Ins. Co. v. Lavoie, 475 U.S. 813, 825, 106 S. Ct. 1580, 89 L. Ed. 2d 823 (1986); see also Caperton, 556 U.S. at 883 ("[T]he Due Process Clause has been implemented by objective standards that do not require proof of actual bias.") (citing Lavoie, 475 U.S. at 825; Mayberry v. Pennsylvania, 400 U.S. 455, 465-66, 91 S. Ct. 499, 27 L. Ed. 2d 532 (1971); Tumey, 273 U.S. at 532). Thus, we must ask whether "under a realistic appraisal of psychological tendencies and human weakness," the "[judge's] interest poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented." Caperton, 556 U.S. at 883-84 (quoting Withrow, 421 U.S. at 47). Due process thus mandates a "stringent rule" that may sometimes require recusal of judges "who have no actual bias and who would do their very best to weigh the scales of justice equally," if there exists a "probability of unfairness." Murchison, 349 U.S. at 136. But this risk of unfairness has no mechanical or static definition. It "cannot be defined with precision" because "[c]ircumstances and relationships must be considered." Id.

For instance, due process requires recusal where the judge has a direct, personal and substantial pecuniary interest in convicting a defendant. Tumey, 273 U.S. at 523, 532. Other financial interests also may mandate recusal, even if less direct. Gibson v. Berryhill, 411 U.S. 564, 579, 93 S. Ct. 1689, 36 L. Ed. 2d 488 (1973); see also Ward v. Monroeville, 409 U.S. 57, 93 S. Ct. 80, 34 L. Ed. 2d 267 (1972) (requiring recusal where village mayor with revenue production role also sat as a judge and imposed revenue-producing fines on the defendant); Lavoie, 475 U.S. at 824-25 (requiring recusal where (1) a justice of the state supreme court cast the deciding vote and authored an opinion upholding punitive damages in certain insurance cases and (2) that same justice was a plaintiff in a pending action involving the same legal issues from which he obtained a large monetary settlement). Non-pecuniary conflicts "that tempt adjudicators to disregard neutrality" also offend due process. Caperton, 556 U.S. at 878. A judge must withdraw where she acts as part of the accusatory process. Murchison, 349 U.S. at 137 ("becomes embroiled in a running, bitter controversy" with one of the litigants). Mayberry, 400 U.S. at 465, or becomes "so enmeshed in matters involving [a litigant] as to make it appropriate for another judge to sit." Johnson v. Mississippi, 403 U.S. 212, 215-16 (706 F.3d 1038) 91 S. Ct. 1778, 29 L. Ed. 2d 423 (1971).

We now turn our attention to the matter at hand. Having catalogued the Supreme Court's clearly established judicial bias jurisprudence and being mindful of the limitations AEDPA places on us, we must determine whether the state court erred in denying Hurles's judicial bias claim. We focus our inquiry on Judge Hilliard's denial of Hurles's second PCR, as that five-page minute order is the last reasoned decision by the state court on the judicial bias claim. Barker v. Fleming, 423 F.3d 1085, 1091-92 (9th Cir. 2005) (citing Ylst v. Nunnemaker, 501 U.S. 797, 803-04, 111 S. Ct. 2590, 115

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

L. Ed. 2d 706 (1991); Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002)).

Ordinarily, we cloak the state court's factual findings in a presumption of correctness. 28 U.S.C. § 2254(e)(1). However, we afford such deference only if the state court's fact-finding process survives our intrinsic review pursuant to AEDPA's "unreasonable determination" clause. See Taylor, 366 F.3d at 1000. Here, the state court's fundamentally flawed fact-finding process, to the extent it constitutes a process, fails our intrinsic review.

In his second PCR, Hurles alleged judicial bias. He argued that Judge Hilliard responded to his special action petition, received contemporaneous copies of each pleading filed in her name, knew the pleadings were framed in terms of her personal opposition to his request for relief, did not object to the tone or content of the defense counsel. Second PCR at 1-3, 1-5. Judge Hilliard then presided over his trial and sentencing, sentenced him to death, presided over and denied his first PCR and presided over and denied Hurles's judicial bias claim.

Judge Hilliard did not hold an evidentiary hearing or provide another mechanism for Hurles to develop evidence in support of his claim, despite her conclusion that Hurles "offer[ed] no factual evidence to support his allegations." Minute Entry, Aug. 9, 2002, at 2. Hurles v. Schriro, No. CIV-00-0118-PHX-RCB (D. Ariz. 2008), ECF 72-1 at 19 ("Minute Entry"). Even worse, she found facts based on her untested memory of the events, putting material issues of fact in dispute. Judge Hilliard concluded that she did not specifically authorize a pleading to be filed on her behalf, did not provide any input on the responsive brief, that she was a nominal party only and that she did not have any contact with the Arizona Attorney General's Office. In effect, she offered

Law Library ALLRED

testimony in the form of her order denying Hurles's second PCR. Minute Entry at 2. Hurles had no opportunity to contest Judge Hilliard's version of events that took place years before. Instead, Judge Hilliard accepted her factual assertions as true and relied on them to conclude that "a reasonable and objective person would not find partiality." See Minute Entry, Aug. 9, 2002, at 2; Hurles v. Schriro, No. CIV-00-0118-PHX-RCB (D. Ariz. 2008), ECF 72-1 at 19 ("Minute Entry").

Judge Hilliard's denial of Hurles's judicial bias claim rests on an unreasonable determination of the facts. We have held repeatedly that where a state court makes factual findings without an evidentiary hearing or other opportunity for the petitioner to present evidence, "the fact-finding process itself is deficient" and not entitled to deference. Taylor, 366 F.3d at 1001 ("If, for example, a state court makes evidentiary findings without holding a hearing and giving petitioner an opportunity to present evidence, such findings clearly result in an unreasonable determination of the facts." (internal quotation marks omitted); see also Perez v. Rosario, 459 F.3d 943, 950 [706 F.3d 1039] (9th Cir. 2006) (amended) ("In many circumstances, a state court's determination of the facts without an evidentiary hearing creates a presumption of unreasonableness.") (citing Taylor, 366 F.3d at 1000; Nunes v. Mueller, 350 F.3d 1045, 1055 (9th Cir. 2003) ("But with the state court having refused [the petitioner] an evidentiary hearing, we need not of course defer to the state court's factual findings—if that is indeed how those stated findings should be characterized—when they were made without such a hearing."); cf. Killian v. Poole, 282 F.3d 1204, 1208 (9th Cir. 2002) ("Having refused [petitioner] an evidentiary hearing on the matter, the state cannot argue now that the factual determinations of the [state] courts."); Weaver v. Thompson, 197 F.3d 359, 363 (9th Cir. 1999) (according

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

---

no deference where written statements by trial judge to defense counsel "were not subject to any of the usual judicial procedures designed to ensure accuracy").

This case presents an especially troubling example of defective fact-finding because the facts Judge Hilliard "found" involved her own conduct, and she based those "findings" on her untested memory and understanding of the events. See Buffalo v. Sunn, 854 F.2d 1158, 1165 (9th Cir. 1988) (finding error when the court relied on "personal knowledge" to resolve disputed issue of fact); cf. Murchison, 349 U.S. at 138 ("Thus, the judge whom due process requires to be impartial in weighing the evidence presented before him, called on his own personal knowledge and impression of what had occurred in the grand jury room and his judgment was based in part on this impression... the accuracy of which could not be tested by adequate cross-examination.")

We cannot conclude, nor could any appellate panel, that the record supports Judge Hilliard's factual findings. Id. at 1000. Any appellate court to whom this defect was pointed out would be unreasonable in holding that Judge Hilliard's fact-finding process was adequate. Id. Based on the flaws in the state court's fact-finding process, we conclude the state court decision resulted in an "unreasonable determination of the facts" and is not entitled to a presumption of correctness. See id. at 999 (holding unreasonable determination clause applies where "the process employed by the state court is defective").

Where a habeas petitioner has not failed to develop the factual basis of his claim in state court as required by 28 U.S.C. § 2254(e)(2), an evidentiary hearing is required if (1) the petitioner has shown his entitlement to an evidentiary hearing pursuant to Townsend v. Sain, 372 U.S. 293, 313, 83 S. Ct. 745, 9 L. Ed. 2d 770 (1963), and (2) the allegations, if true, would entitle him to relief. Stanley, 598 F.3d at 624. A petitioner who has previously

sought and been denied an evidentiary hearing has not failed to develop the factual basis of his claim. Id. (citing 28 U.S.C. § 2254(e)(2)); Second PCR at 1-7, 1-15 (seeking right to litigate judicial bias claim before a trial judge other than Judge Hilliard). Under Townsend, a federal court must grant an evidentiary hearing in circumstances present here: (1) the state courts' factual determinations are not fairly supported by the record as a whole, and (2) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing. Townsend, 372 U.S. at 313. Therefore, Hurles is entitled to an evidentiary hearing if his allegations, if proved, would entitle him to relief. Stanley, 598 F.3d at 624.

In determining whether Hurles enjoyed "a fair trial in a fair tribunal," Bracy, 520 U.S. at 904, we must consider whether the probability that Judge [706 F.3d 1040] Hilliard harbored actual bias against Hurles is too high to be constitutionally tolerable, whether the average judge in Judge Hilliard's position, was likely to sit as a neutral, unbiased arbiter or whether there existed an unconstitutional risk of bias. Caperton, 556 U.S. at 881. But to consider fairly the potential for bias, we must consider the average reasonable judge in the particular circumstances in which Judge Hilliard found herself. Murchison, 349 U.S. at 136 (noting that the probability of unfairness cannot be defined with precision. Circumstances and relationships must be considered."). While Hurles does not face the daunting task of proving actual bias in order to establish a due process violation, Lavoie, 475 U.S. at 825, as the risk of actual bias of prejudgment goes up, so too does the strength of his judicial bias claim. See Caperton, 556 U.S. at 883-84. Thus, a likelihood of unfairness would require recusal even if Judge Hilliard did not actually harbor bias against Hurles. Murchison, 349 U.S. at 136.

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

The tenor of Judge Hilliard's responsive pleading in the special action proceeding by itself suggest strongly that the average judge in her position could not later preside over Hurles's guilt phase, penalty trial and post-conviction proceedings while holding the balance nice, clear and true between the state and Hurles. *Tumey*, 273 U.S. at 532. But proof that Judge Hilliard participated in the special action proceedings as more than a nominal party had contact with French, commissioned or authorized the responsive pleading or provided any input on the brief, would help establish that Judge Hilliard became "so enmeshed in matters involving [Hurles] as to make it appropriate for another judge to sit." *Johnson*, 403 U.S. at 215-16, or that Judge Hilliard became "embroiled in a running, bitter controversy" with Hurles and his counsel. *Mayberry*, 400 U.S. at 465. *See Murchison*, 349 U.S. at 137. *Johnson*, 403 U.S. at 215. Such evidence certainly would show an unconstitutional risk of actual bias.

Because Hurles's allegation of judicial bias would, if proved, entitle him to federal habeas relief, the district court abused its discretion in denying this claim without an evidentiary hearing. *Stanley*, 598 F.3d at 626.

## IV. CONCLUSION

For the foregoing reasons, we remand for an evidentiary hearing on Hurles's claim of judicial bias and otherwise affirm the district court.

AFFIRMED in part; REMANDED.

### Dissent

Dissent by:      Sandra S. Ikuta

IKUTA, Circuit Judge, dissenting:

Today the majority offers a new way to evade AEDPA deference: make an unsupported and unsupportable assertion that the state court's fact finding process is "unreasonable" for purposes of § 2254(d)(2).



In this case, the state judge resolved a recusal motion based on the judge's own understanding of whether her impartiality might be questioned. Nothing about that is unusual: federal courts, including this one, uniformly adopt this approach. *See, e.g., Suever v. Connell*, 681 F.3d 1064, 1065 (9th Cir. 2012); *see also Miles v. Ryan*, 697 F.3d 1090, 1090 (9th Cir. 2012). Yet the majority notes that the state judge did not hold an evidentiary hearing on the petitioner's claim that recusal was appropriate, and concludes that "[a]ny appellate court to whom this defect was pointed out would be unreasonable in holding that [the state judge's] fact-finding process was adequate." Maj. op at 30.

{706 F.3d 1041} Of course this conclusion is wrong. Worse, this conclusion is likely to work mischief by casting doubt on whether state and federal judges can ever appropriately make recusal decisions without first holding evidentiary hearings. Making this conclusion even more absurd, the absence of an evidentiary hearing in this case is entirely irrelevant, because even if all the petitioner's allegations were true, his due process rights were not violated. Because this opinion misreads the law, distorts the record, and casts off AEDPA deference on the basis of a non-existent fact-finding flaw, I dissent.IA

The facts of Hurles's crime form the backdrop for the dispute over whether Hurles needed a second attorney, which is at the heart of his habeas claim. The Arizona Supreme Court provided the following description:

On the afternoon of November 12, 1992, Hurles went to the Buckeye public library, a small, house-type building in a residential neighborhood. The only employee in the library at the time was Kay Blanton. The last patron, other than Hurles, left the library just before 2:40 p.m. Hurles then locked the front doors to the library and attacked Blanton in the back room. He stripped off her underwear and pulled her skirt above her waist in an unsuccessful attempt to rape her.

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

waist in an unsuccessful attempt to rape her. Using a paring knife found in the back room of the library, Hurles mortally wounded Blanton, stabbing her thirty-seven times and inflicting blunt force trauma by kicking her to such an extent he tore her liver. . . . [Hurles then fled the scene.] [Between 3:00 and 4:00 p.m., Hurles rode [a borrowed] bicycle to the home of his nephew, Thomas, in Buckeye and asked Thomas for a ride to Phoenix. Hurles had changed his clothes and cleaned himself up somewhat, and Thomas, who had been asleep and was unaware of Blanton's murder, agreed to drive Hurles to Phoenix. As the two left the house, Hurles was carrying a bundle of clothes. During the drive to Phoenix, Thomas noticed that Hurles had bite marks on his wrist. When asked about them, Hurles told Thomas he had been in a fight with a Spanish man at the library, that he had stabbed the man with the man's knife, and that he had received the bite marks in the fight. As part of his insanity defense, however, Hurles later claimed he had no recollection of anything that occurred between sitting in the library and going out the back door. As they continued toward Phoenix, Hurles had Thomas pull over so he could toss the bundle of clothes out the car window. Thomas left Hurles at a Phoenix bus station, where he purchased a bus ticket to Las Vegas. Thomas returned to Buckeye, where he ultimately made contact with the police and told them of Hurles's destination. Later that evening, the police intercepted Hurles' bus on the way to Las Vegas; Hurles was removed from the bus, arrested, and returned to Phoenix. With Thomas' help, the police recovered Hurles' discarded clothes. Police found blood on the clothing that matched Blanton's blood type, which occurs in one percent of the population. Police also found blood matching Blanton's type on Hurles' shoes, which he was still wearing when taken from the bus. Four bloody shoeprints at the murder scene matched the soles of Hurles' shoes, and Hurles' palm print was found on the paring knife left at the scene. . . . Blanton would have suffered

great terror as she was stabbed repeatedly by (706 F.3d 1042) Hurles. She also must have suffered great pain. In addition to the fifteen defensive stab wounds on her hands, Blanton was stabbed eight times in the head, twelve times in the torso, and twice in her lower extremities. She also suffered blunt trauma consistent with kicking, which tore her liver. The barrage of violence inflicted on Blanton, the fact that she was conscious throughout the attack, and her struggle to fight off her attacker all indicate she suffered terribly and far above the norm of even first-degree murder, leaving no room to doubt that this murder was especially cruel. *State v. Hurles*, 185 Ariz. 199, 914 P.2d 1291, 1293-94, 1299 (Ariz. 1996).B After Hurles was indicted for this murder, Maricopa County appointed private defense counsel to represent him. Hurles made an ex parte motion for the appointment of a second counsel to aid in his defense. His argument was summary, comprising only four and a half pages. In identifying why he required the appointment of additional counsel, he made only three brief points: (1) "[i]t is apparent that this case will involve numerous civilian and law enforcement witnesses"; (2) "the State will utilize the services of forensic experts on the issues of identification and sexual assault"; and (3) "[p]reparation for the possible penalty phase will [be] in itself a time consuming, complex process." To support his arguments on the third point, Hurles cited to California law, and its presumption that a second attorney is required in a death penalty case. As later noted by the Arizona Court of Appeals, Hurles's motion for a second attorney was bare bones, and failed to make "a particularized showing on the need for second counsel." *Hurles v. Superior Court (Hurles I)*, 174 Ariz. 331, 849 P.2d 1, 4 (Ariz. Ct. App. 1993). The motion made no mention of possible defenses, did not discuss the size of the defense's witness pool for either the guilt or penalty phase, and did not specify any additional forensic or other technical information the defense

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

would present on its own account. In short, it provided no substantial factual basis upon which the trial court could have concluded that a second attorney was necessary for Hurles to obtain adequate representation. Instead, the motion simply asserted that failure to appoint second counsel would potentially violate Hurles's constitutional rights because "[d]efense counsel needs such co-counsel assistance due to the nature of the case in order to effectively advise the defendant and ensure the defendant's right to the effective assistance of counsel."

After the state trial court (Judge Hilliard) denied the request, Hurles filed a petition for special action in the Arizona Court of Appeals, 1 raising the same arguments he presented in this motion. Per Arizona's rules for special actions, Hurles named the trial judge, Judge Hilliard, as a nominal respondent, and the State of Arizona, represented by the office of the Maricopa County Attorney, as the real party in interest. See Hurles I, 849 P.2d at 2. In response, the Arizona Attorney General filed a brief in Judge Hilliard's name, in which the Attorney General explained that the presiding criminal judge of the Maricopa County Superior Court (not Judge Hilliard) had requested a responsive pleading in the special action. Id. at 2 n.2. Then-current Arizona precedent held that a [706 F.3d 1043] judge had the right to appear in special action proceedings, even though the judge was merely a nominal party. Fenton v. Howard, 118 Ariz. 119, 575 P.2d 318, 320 (Ariz. 1978). The state Attorney General responded on Judge Hilliard's behalf because Maricopa County, which was prosecuting Hurles, could not take a position on the selection of his counsel in the special action proceeding. Hurles I, 849 P.2d at 2.

1 Under Arizona law, the denial of a motion for appointment of a second attorney is not immediately appealable, and so a petitioner seeks review of such a ruling by filing a petition for special action in the Arizona

Court of Appeals. See Hurles I, 849 P.2d at 1 n.1.

The responsive brief explained the basis for Judge Hilliard's determination that Hurles's case was straightforward enough to be handled by one attorney. The brief reviewed the aspects of the case that were relevant to making this determination. Rather than describing the facts of the underlying sexual assault and murder, the brief stated only that the State had charged Hurles "with the brutal murder of a librarian in Buckeye, Arizona in November, 1992," and listed the three charges in the indictment. It stated that Hurles's counsel had not yet noticed any defenses, disclosed the name of witnesses, or requested a competency examination. It then described the State's case against Hurles: "An examination of the State's evidence illustrates that its case against Petitioner is very simple and straightforward, compared to other capital cases, contrary to Petitioner's assertions." The brief noted that Maricopa County planned to call relatively few witnesses, namely ten law enforcement agents, the medical examiner, and several civilians, contrary to Hurles's claim that a second counsel was required due to the high number of witnesses and forensic experts. Further, the brief stated that the county had expressed its intent to present the following physical evidence: Hurles's clothing, which was "stained with blood of the same PGM type as the victim's," his footprint in the victim's blood at the library, and the "fact that books returned by [Hurles] in the return slot at the library place him at the scene a[t] the time of the murder." Thus, the brief focused on the straightforward nature of the State's case and the facts in evidence; it did not discuss the merits or strength of the State's case or presume that Hurles was guilty of the murder with which he was charged.

Turning to Hurles's legal argument for appointment of a second attorney, the brief asserted that Hurles's reliance on California precedent was misplaced because Arizona had adopted different rules and procedures. Specifically, according to the brief, while

California law presumed the necessity of a second attorney in capital cases, Arizona had no such presumption. Further, in refuting Hurles's claim that the need to prepare simultaneously for the guilt and penalty phases mandated the appointment of a second attorney, the brief noted that while California required sentencing to begin within 20 days of the verdict, Arizona gave a capital defendant 90 days after the verdict to prepare for sentencing, as well as the option to seek an extension of that time for good cause. These procedural differences made concurrent preparation for both phases far less urgent in Arizona than in its sister state. In response to Hurles's argument that appointment of a second attorney was necessary to "ensure the defendant's right to the effective assistance of counsel," the brief stated that "if Appointed Counsel believes, because of her caseload, personal competence, or otherwise, that she is incapable of rendering 'competent representation' of the Petitioner, she is ethically bound to withdraw from this case," and asserted that there were other attorneys who provided contract services for Maricopa County who would be able to provide competent representation.C

Before addressing the merits of the special action petition, the Arizona Court of [706 F.3d 1044] Appeals determined that the case raised "a significant threshold question of standing" that gave the court the chance to refine its jurisprudence on "whether or under what circumstances the trial court may properly respond" to a petition for special action. Hurles I, 849 P.2d at 1-2. After noting that the real party in interest in the special action proceeding was the State of Arizona, the court stated that "the record does not indicate whether Judge Hilliard, the nominal respondent, actually authorized such a pleading to be filed." Id. at 2 n.2. Further, the court stated that from the Attorney General's statement at oral argument, "the pleading was requested by the presiding criminal judge, not by Judge Hilliard, and there was no contact between

Judge Hilliard and the Attorney General's office as the pleading was prepared." Id. Turning to the standing issue, the Arizona Court of Appeals acknowledged that in Fenton v. Howard, 118 Ariz. 119, 575 P.2d 318 (Ariz. 1978), the Arizona Supreme Court had held that "a judge does have the right to appear and to be represented in a special action against him, where the judge is a named respondent." 575 P.2d at 320, and that a later appellate decision, State ex rel. Dean v. City Court of Tucson, 123 Ariz. 189, 598 P.2d 1008, 1009 (Ariz. Ct. App. 1979), had interpreted Fenton as establishing "a trial judge's unequivocal right to respond to a special action, whatever the nature of the decision the judge seeks to defend." Hurles I, 849 P.2d at 3. Notwithstanding this precedent, after examining cases suggesting a narrower reading of Fenton, see, e.g., Dunn v. Superior Court, 160 Ariz. 311, 772 P.2d 1164, 1166-67 (Ariz. Ct. App. 1989), the Arizona Court of Appeals held that a judge designated as the nominal respondent in a special action proceeding may file a brief for the purpose of defending an administrative policy or practice, but "that it is improper for a judge to respond merely to advocate the correctness of an individual ruling in a single case." Hurles I, 849 P.2d at 4.

3. Applying its new standing rule to the case before it, the court noted that because "the pleading merely argues that the respondent judge ruled properly on the evidence before her . . . the trial judge lacked standing" to file a brief in the special action. Id. Turning its attention to the merits of the special action, the Arizona Court of Appeals upheld Judge Hilliard's ruling. Because Hurles's counsel had failed to make "a particularized showing" of the need for a second lawyer and did not "submit evidence to the trial court regarding customary practice in defense of capital cases," the court found "no matter that warrants special action intervention at this time." Id. The case proceeded to trial. Hurles did not raise a judicial bias concern before or after

Law Library ALLRED

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

the trial in which the jurors unanimously found him guilty of premeditated and felony murder. Nor did he raise such a concern at sentencing, where under then-current Arizona rules, the trial judge acted alone in imposing the death penalty. Nor did Hurles's direct appeal or first petition for post-conviction relief raise a judicial bias claim.2

2 Per Arizona Rule of Criminal Procedure 32.4(e), Hurles's first petition for post-conviction relief was assigned to Judge Hilliard. The trial court denied the petition, and the Arizona Supreme Court affirmed. *Arizona v. Hurles*, No. CR-99-0422-PC, Order Denying Petition for Review (Ariz. Jan 7, 2000).D

In January 2000, Hurles filed his first federal habeas petition in district court and filed an amended petition a few months later. The district court determined that Hurles had failed to present two of his claims to state court, and so (706 F.3d 1045) Hurles returned to the state court to exhaust these claims. In January 2001, Hurles filed a motion in the state court proceedings to recuse Judge Hilliard from further involvement in this case because he intended to file a second petition for post-conviction relief that would raise an appearance-of-bias due process claim based on the special action proceeding. Hurles's recusal motion was referred to a different state trial judge, Judge Ballinger, who ruled that there was no basis to transfer Hurles's case to another judge.3

3 Judge Ballinger construed Hurles's motion as a motion for change of judge for cause, which, under Arizona Rule of Criminal Procedure 10.1(a) entitles a defendant "to a change of judge if a fair and impartial hearing or trial cannot be had by reason of the interest or prejudice of the assigned judge."

In March 2001, Hurles submitted his second petition for post-conviction relief, which was assigned to Judge Hilliard pursuant to Arizona Rule of Criminal Procedure 32.4(e) and Judge Ballinger's determination. Judge Hilliard noted the applicable objective test under Arizona law for recusal, specifically, "whether a reasonable and objective person knowing all the facts would harbor doubts concerning the judge's impartiality." In describing the facts of the special action, Judge Hilliard stated that the Attorney General had no specific authorization to file a pleading on her behalf in the special action, and that she (Judge Hilliard) had made no contact with the Attorney General's office. She further noted that Hurles had not pointed to any aspects of the trial or the first petition for post-conviction relief that indicated bias. After ruling that the facts did not require her recusal as a matter of state law and did not amount to a due process violation, Judge Hilliard rejected Hurles's bias claim in August 2002. The Arizona Supreme Court affirmed without opinion. While this state court proceeding was ongoing, Hurles's federal habeas proceedings were also moving forward slowly. In September 2008, the district court denied Hurles's amended federal petition on the merits. Hurles timely appealed.II

The correct application of AEDPA to this case is straightforward. The state court determined that Judge Hilliard's role in Hurles's proceedings did not deprive him of his due process rights. We are tasked with determining whether that determination was contrary to Supreme Court precedent for purposes of § 2254(d)(1).4 A state court decision is "contrary to" clearly established Supreme Court precedent only if "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases or if the state court confronts a set of facts materially indistinguishable from those at issue in a decision of the Supreme Court and, nevertheless, arrives at a result different from this precedent." *Lambert v. Blodgett*, 393 F.3d 943, 974 (9th Cir. 2004) (citing *Lockyer v. Andrade*, 538 U.S. 63, 73, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003)). For AEDPA purposes, a point of law is not

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

not rise to a constitutional level." *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 876, 129 S. Ct. 2252, 173 L. Ed. 2d 1208 (2009) (quoting *FTC v. Cement Inst.*, 333 U.S. 683, 702, 68 S. Ct. 793, 92 L. Ed. 1010, 44 F.T.C. 1460 (1948)) (internal alteration omitted) and it is only in "rare instances" that the Constitution requires recusal. *See Caperton*, 556 U.S. at 890.

"Supreme Court precedent reveals only three circumstances in which an appearance of bias-as opposed to evidence of actual bias-necessitates recusal." *Crater v. Galaza* 491 F.3d 1119, 1131 (9th Cir. 2007). The first arises where a judge "has a direct, personal, substantial pecuniary interest in reaching a conclusion against [one of the litigants]." *id.* (quoting *Turney*, 273 U.S. at 523) (internal quotation marks omitted), or where a financial connection to a litigant [such as a massive campaign donation from one party to the judge] creates a constitutionally intolerable risk of bias. *Caperton*, 556 U.S. at 884. The second occurs when a judge "becomes embroiled in a running, bitter controversy" with one of the litigants. *id.* (quoting *Mayberry v. Pennsylvania*, 400 U.S. 455, 465, 91 S. Ct. 499, 27 L. Ed. 2d 532 (1971)) (internal quotation marks omitted). Finally, due process might require recusal when a judge "acts as 'part of the accusatory process.'" *Crater*, 491 F.3d at 1131 (quoting *In re Murchison*, 349 U.S. at 137).

Other than those cases in which judges have financial interests, which are not relevant here, the Supreme Court cases requiring recusal based on an appearance of bias arise in the context of criminal contempt proceedings. *Caperton*, 556 U.S. at 880 (discussing precedent). In *Murchison*, for example, the Court held unconstitutional a Michigan practice in which judges would order witnesses to appear before them, hold them in contempt, and then preside over their contempt trials. 349 U.S. at 134. The Court held unconstitutional for a judge to preside over a trial in this situation; it amounted to a "judge-grand jury," which clearly established" if a state court can draw a "principled distinction" between the case before it and the Supreme Court (706 F.3d 1046) precedent establishing that rule of law. *Murdoch v. Castro*, 609 F.3d 983, 991 (9th Cir. 2010) (en banc).

4 The state trial court's decision is the last reasoned decision on this claim, and therefore the one that we must consider under AEDPA review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 805, 111 S. Ct. 2590, 115 L. Ed. 2d 706 (1991). Because the court did not expressly apply the Supreme Court's decisions considering when a probability of judicial bias rises to a constitutional level, only the "contrary to" prong of § 2254(d)(1) is at issue here. *See Williams v. Taylor*, 529 U.S. 362, 405-07, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000) (describing the situations in which the "contrary to" prong will apply).A

Here, a state court could certainly draw a principled distinction between the situation in this case and those in the Supreme Court precedents cited by Hurles, and it is actually quite a stretch to hold these precedents applicable at all. The Due Process Clause requires recusal when "the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." *Withrow v. Larkin*, 421 U.S. 35, 47, 95 S. Ct. 1456, 43 L. Ed. 2d 712 (1975). This standard is objective; judges must recuse themselves in circumstances that "would offer a possible temptation to the average man as a judge not to hold the balance nice, clear, and true between the State and the accused." *In re Murchison*, 349 U.S. 133, 136, 75 S. Ct. 623, 99 L. Ed. 942 (1955) (quoting *Turney v. Ohio*, 273 U.S. 510, 532, 47 S. Ct. 437, 71 L. Ed. 749, 5 Ohio Law Abs. 159, 5 Ohio Law Abs. 185, 25 Ohio L. Rep. 236 (1927)). Judges are presumed to adjudicate with "honesty and integrity." *Withrow*, 421 U.S. at 47, however, and the situations in which this presumption is overcome are rare: "[M]ost matters relating to judicial disqualification do

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Law Library ALLRED

inappropriately involved the judge in the "accusatory process." Id. at 137. In Johnson v. Mississippi, 403 U.S. 212, 91 S. Ct. 1778, 29 L. Ed. 2d 423 (1971) (per curiam), the Court held it unconstitutional for a judge to preside over an individual's contempt trial, where the individual had been held in contempt two days after successfully enjoining the judge from systematically excluding blacks and women from juries. Id. at 214. That same year, in Mayberry v. Pennsylvania, 706 F.3d 1047, 400 U.S. 455, 91 S. Ct. 499, 27 L. Ed. 2d 532 (1971), the Court held that a judge who had been berated continuously by a litigant before finally holding him in contempt could not preside over the contempt trial. Id. at 465 ("No one so cruelly slandered is likely to maintain that calm detachment necessary for fair adjudication."); see also Taylor v. Hayes, 418 U.S. 488, 501-02, 94 S. Ct. 2697, 41 L. Ed. 2d 897 (1974) (relationship between judge and lawyer was such that Due Process Clause required another judge for lawyer's contempt trial).

The fact that all these cases arise in the context of criminal contempt proceedings is instructive because this highlights the circumstances where "the probability of actual bias . . . is too high to be constitutionally tolerable." Caperton, 556 U.S. at 877 (quoting Withrow, 421 U.S. at 47). Specifically, the probability of bias reaches constitutional proportions when a judge is in a position to first accuse an individual of wrongdoing and then sit in judgment of whether any wrong was in fact committed.B

The state court's rejection of Hurles's due process claims was not contrary to these precedents because Hurles's allegations, even if true, do not give rise to any of these circumstances. According to the majority, Hurles makes four allegations that, if true, "would show an unconstitutional risk of actual bias." Maj. op. at 31-32. These four allegations are that Judge Hilliard: (1) "participated in the special action proceedings as more than a nominal party";

(2) "had contact with French"; (3) "commissioned or authorized the responsive pleading"; or (4) "provided any input on the brief." Id. All four of these assertions are essentially the same: they allege that Judge Hilliard had some (or even significant) responsibility for the contents of the special action brief defending her decision to deny Hurles's motion for a second attorney. But even accepting these allegations as true, the concerns identified by the Supreme Court do not arise. First, this case does not involve a contempt hearing or any analogous situation; in the special action proceeding, Judge Hilliard neither acted as a prosecutor nor sought to advance the prosecutor's interest, and thus was not part of the "accusatory process." See Crater, 491 F.3d at 1131. The special action proceeding was ancillary to any determination of guilt or penalty, and involved an evaluation of evidence only for the purpose of determining whether a second attorney was necessary. As the Arizona Court of Appeals noted, Judge Hilliard's pleading "merely argues that the respondent judge ruled properly on the evidence before her." Hurles I, 849 P.2d at 4. This sort of pleading is fully consistent with impartial adjudication.

Second, the record here does not show that Judge Hilliard was "enmeshed" in matters involving Hurles, or that "someone in her position would likely have a personal animus toward him." The contents of Judge Hilliard's brief are unremarkable. As described above, the brief explains the reasons Judge Hilliard denied the motion, namely, that the state's evidence was simple and straightforward. Hurles's counsel had not indicated an intent to put on a more complex defense, and what was "required to prepare for trial in this case is exactly what is required of defense counsel in any criminal case." The Arizona Court of Appeals agreed with this conclusion.

Indeed, a fair review of the brief provides no support for the majority's assertion that the "tenor of Judge Hilliard's responsive pleading in the special action proceeding, by

itself," suggest[s] strongly that the average judge in her position could not later preside over Hurles's guilt phase, penalty trial and post-conviction proceedings" in an unbiased fashion. Maj. op. at 31 (emphasis added). While the brief made mildly disparaging remarks regarding Hurles's counsel (suggesting that if the counsel did not feel up to the task of rendering competent representation without court-appointed co-counsel, she should withdraw), the Supreme Court has never held that a judge's sour or ill-tempered remarks alone create an appearance of bias necessitating recusal. See, e.g., Liteky v. United States, 510 U.S. 540, 555-56, 114 S. Ct. 1147, 127 L. Ed. 2d 474 (1994) ("[E]xpressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display," do not necessitate recusal under 28 U.S.C. § 455(a)); see also United States v. McTiernan, 695 F.3d 882, 892 (9th Cir. 2012) (holding that the presiding judge's negative comments toward the defendant, such as stating that the defendant "is clearly willing to lie whenever it suits his purpose" did not warrant recusal); cf. United States v. Wilkerson, 208 F.3d 794, 799 (9th Cir. 2000) ("The dissent erroneously conflates a judge's asserted displeasure with 'assuming the role of prosecutor'"). Thus, even if Judge Hilliard had personally penned the special action brief, Hurles did not suffer a due process violation.

In sum, even if we were to review the due process issues in this case de novo, Hurles would be unable to establish a due process violation. From this, it follows a fortiori that the state's conclusion was not "contrary to" clearly established precedent. Thus, the court is not relieved of AEDPA deference under § 2254(d)(1), and the district court's decision should be affirmed.III

The majority does not engage in this § 2254(d)(1) analysis. Instead, the majority holds that it is relieved of AEDPA deference

under § 2254(d)(2) because the state trial court made an unreasonable determination of the facts. But the majority's claim that the state court's fact-finding process was deficient in some material way is entirely baseless.A

In considering a challenge to a state court's finding of fact, AEDPA requires deference to state court decisions unless those decisions are "objectively unreasonable," not just incorrect. Lambert, 393 F.3d at 972; see also Schriro v. Landrigan, 550 U.S. 465, 473, 127 S. Ct. 1933, 167 L. Ed. 2d 836 (2007). In considering this sort of challenge, "we must more than merely doubt whether the process operated properly." Taylor v. Maddox, 366 F.3d 992, 1000 (9th Cir. 2004). "Rather, we must be satisfied that any appellate court to whom the defect is pointed out would be unreasonable in holding that the state court's fact-finding process was adequate." Id.

According to the majority, when Judge Hilliard rejected Hurles's claim (in his second PCR petition) that she was biased due to her participation in the special action proceeding, Judge Hilliard engaged in objectively unreasonable fact-finding. Maj. op. at 27-28. The majority claims that Judge Hilliard's fact-finding process was deficient because: (1) she relied on her own recollections in determining that her role in the special action proceeding did not require her recusal, Maj. op. at 28, and (2) she did not hold an evidentiary hearing to give Hurles an opportunity to present evidence, Maj. op. at 28. The majority asserts that any appellate panel would be unreasonable in finding Judge Hilliard's fact-finding process adequate. Maj. op. at 30.B

With all due respect, this reasoning does not pass the straight face test. We cannot (706 F.3d 1049) hold that Judge Hilliard was objectively unreasonable in ruling on this recusal motion when federal judges, like Arizona judges, routinely rule on motions to recuse themselves. See 28 U.S.C. § 455(a); Ariz. Code of Jud. Conduct R. 2.11(A) (2009); see e.g., Miles, 697 F.3d at 1090 (Berzon, J. & Tallman, J.) (stating that "each

Law Library ALLRED

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Law Library ALLRED

judge may decide for himself or herself whether recusal is appropriate"). *Suever*, 681 F.3d at 1065 (Nelson, J.) (determining that she need not recuse herself from case because of class membership). For the same reason, Judge Hilliard was not objectively unreasonable in consulting her own recollections; federal judges regularly determine the relevant facts in making recusal decisions. *See, e.g., Cheney v. U.S. Dist. Ct. for the Dist. of Columbia*, 541 U.S. 913, 929, 124 S. Ct. 1391, 158 L. Ed. 2d 225 (2004) (Scalia, J.) (explaining his friendship with then-Vice President Cheney, and deciding not to recuse himself from a case in which Cheney was a nominal party). *Microsoft Corp. v. United States*, 530 U.S. 1301, 1301-02, 121 S. Ct. 25, 147 L. Ed. 2d 1048 (2000) (Rehnquist, C.J.) (discussing his son's representation of Microsoft in another matter, but deciding not to recuse himself because no "well-informed individual would conclude that an appearance of impropriety exists"); *Perry v. Schwarzenegger*, 630 F.3d 909, 912 (9th Cir. 2011) (Reinhardt, J.) (discussing his relationship with his wife and her involvement in the matter before him in the course of concluding that "[p]roponents' contention that I should recuse myself due to my wife's opinions is based upon an outmoded conception of the relationship between spouses.").

If anything, the fact-finding process Judge Hilliard engaged in was more careful and reasonable than those engaged in by judges of this circuit on a regular basis, because she received a separate opinion from Judge Ballinger, a different state court judge, who independently reviewed the record and concluded that there was no appearance of impropriety requiring recusal. *Cf. Sivak v. Hardison*, 658 F.3d 898, 924-25 (9th Cir. 2011) (rejecting a similar judicial bias claim, and noting with approval that an independent judge determined that recusal was not necessary). *Miles*, 697 F.3d at 1090 (holding that a federal judge may decide her own recusal and rejecting the argument that other federal judges should vote on the issue). In light of Judge Ballinger's review of the record and determination that Judge Hilliard's impartiality could not be reasonably questioned, it seems impossible to conclude that *all* jurists would agree that the state court made an unreasonable determination of the facts.C

The majority's second rationale for holding that it is relieved of AEDPA deference, that no reasonable jurist could decide a recusal issue without holding an evidentiary hearing, is completely untenable and lacks any support in circuit or Supreme Court precedent. Until today, judges routinely decided for themselves whether recusal was appropriate in cases where their impartiality might be questioned. *See, e.g., Suever*, 681 F.3d at 1065. Evidentiary hearings were neither required nor typically employed. *See, e.g., Miles*, 697 F.3d at 1090. Today's opinion, however, raises troubling implications, and casts serious doubt on the permissibility of this longstanding practice. This case is a particularly bad springboard for imposing a new evidentiary hearing requirement. We do not fault a state court for failing to hold an evidentiary hearing if the petitioner has not identified any evidence material to the constitutional claim. See *Hibbler v. Benedetti*, 693 F.3d 1140, 1148 (9th Cir. 2012) (noting that a well-established [706 F.3d 1050] rule "that no [evidentiary] hearing is required [i]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief." (quoting *Landrigan*, 550 U.S. at 474) (quotation marks omitted, second alteration in original). Rather, unless an alleged factual error "goes to a material factual issue that is central to petitioner's claim." *Taylor*, 366 F.3d at 1001. there is no "unreasonable determination of the facts" to justify relieving a federal court of AEDPA deference under § 2254(d)(2). Here, as previously explained, *supra* Section II, even if an evidentiary hearing proved that Hurles's factual allegations were true, and we deemed Judge Hilliard to be responsible for every word in

© 2015 Matthew Bender & Company, Inc. a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

the special action brief, Hurles did not suffer any violation of his due process rights. Under these circumstances, an evidentiary hearing would have been pointless, and thus the state court was not unreasonable in declining to hold one. *See Hibbler*, 693 F.3d at 1147 ("[a] state court's decision not to hold an evidentiary hearing does not render its fact-finding process unreasonable so long as the state court could have reasonably concluded that the evidence already adduced was sufficient to resolve the factual question." (citing *Earp v. Ornoski*, 431 F.3d 1158, 1170 (9th Cir. 2005))).

In short, there was nothing wrong with the state court's fact-finding process. This makes the majority's conclusion that any appellate panel "would be unreasonable in holding that Judge Hilliard's fact-finding process was adequate." Maj. op. at 30, not only wrong, but objectively unreasonable. There is no rational justification for the majority to hold that it is relieved of AEDPA deference under § 2254(d)(2).D

Finally, even if we were relieved of AEDPA deference, the majority errs in remanding the case to the district court for an evidentiary hearing. As the majority notes, if true, would entitle him to relief. See *Stanley v. Schiro*, 598 F.3d 612, 624 (9th Cir. 2010). But as previously discussed, there is simply nothing in the record, even under de novo review, that suggests an unconstitutional risk of bias. As the Supreme Court recently reminded us, it is not enough for a federal court to identify an unreasonable determination of the facts, there must also be a constitutional violation. See *Wilson v. Corcoran*, 131 S. Ct. 13, 14, 178 L. Ed. 2d 276 (2010) ("Federal courts may not issue writs of habeas corpus to state prisoners whose confinement does not violate federal law.") (per curiam). Here there was neither, and the remand is erroneous.

The Supreme Court has harshly criticized our non-compliance with AEDPA deference.5 Here the majority repeats the same mistake corrected by the Supreme Court in *Harrington v. Richter*, [706 F.3d 1051] 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011), now under the guise of a § 2254(d)(2) analysis instead of § 2254(d)(1) review. As in *Harrington*, the majority used its de novo conclusion that Hurles suffered a due process violation as a springboard for its § 2254(d)(2) ruling. In effect, the majority holds that the state court's factual determination was unreasonable because the court failed to acknowledge that its participation in the special action proceeding had violated Hurles's due process rights. *Harrington* corrected a similar error. "The Court of Appeals appears to have treated the unreasonableness question as a test of its confidence in the result it would reach under de novo review," and because the court "had little doubt that [defendant's constitutional] claim had merit, the Court of Appeals concluded the state court must have been unreasonable in rejecting it." *Harrington*, 131 S. Ct. at 786. Equally applicable is *Harrington's* criticism of the Ninth Circuit for "overlook[ing] arguments that would otherwise justify the state court's result." *Id.* As in *Harrington*, the majority here failed to weigh the evidence in the record that made the state court's fact-finding process and factual conclusions reasonable, relying instead on an unprecedented view that judges must hold evidentiary hearings on recusal motions. Finally, as *Harrington* stated, "[i]t bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* The majority clearly lost sight of its holding that the state court's fact-finding was either substantively or procedurally unreasonable. And even if Hurles's factual allegations were true, they do not form the basis of a due process claim, making remand for an evidentiary hearing wholly inappropriate. *Turner v. Calderon*, 281 F.3d 851, 890 (9th Cir. 2002).

5

See, e.g., *Cavazos v. Smith*, 132 S. Ct. 2, 7,

© 2015 Matthew Bender & Company, Inc. a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

181 L. Ed. 2d 311 (2011) (per curiam) ("Doubts about whether Smith is in fact guilty are understandable. But it is not the job of this Court, to decide whether the jury decided that question, was correct. The jury decided that question, and its decision is supported by the record."); *Cullen v. Pinholster*, 131 S. Ct. 1388, 1410-11, 179 L. Ed. 2d 557 (2011); *Felkner v. Jackson*, 131 S. Ct. 1305, 1307, 179 L. Ed. 2d 374 (2011) (per curiam); *Harrington v. Richter*, 131 S. Ct. 770, 785, 178 L. Ed. 2d 624 (2011); *Premo v. Moore*, 131 S. Ct. 733, 740, 178 L. Ed. 2d 649 (2011); *Rice v. Collins*, 546 U.S. 333, 342, 126 S. Ct. 969, 163 L. Ed. 2d 824 (2006) ("The panel majority's attempt to use a set of debatable inferences to set aside the conclusion reached by the state court does not satisfy AEDPA's requirements for granting a writ of habeas corpus."); *Schriro v. Smith*, 546 U.S. 6, 8, 126 S. Ct. 7, 163 L. Ed. 2d 6 (2005) (per curiam) ("[T]he Court of Appeals exceeded its limited authority on habeas review . . . ."); *Middleton v. McNeil*, 541 U.S. 433, 437, 124 S. Ct. 1830, 158 L. Ed. 2d 701 (2004) (per curiam) ("[T]he Ninth Circuit's conclusion failed to give appropriate deference to the state court's decision."); *Yarborough v. Gentry*, 540 U.S. 1, 11, 124 S. Ct. 1, 157 L. Ed. 2d 1 (2003) (per curiam); *Woodford v. Visciotti*, 537 U.S. 19, 20, 123 S. Ct. 357, 154 L. Ed. 2d 279 (2002) (per curiam) (reversing Ninth Circuit's grant of habeas relief because it "exceeded[ed] the limits imposed on federal habeas review by 28 U.S.C. § 2254(d)"); *Early v. Packer*, 537 U.S. 3, 10, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) (per curiam) (admonishing the Ninth Circuit for "repeatedly and erroneously substituting[] the phrase "failed to apply" for the more demanding requirement of §

Law Library ALLRED

2254(d)(1): that the decision be 'contrary to' clearly established Supreme Court law" (emphases added)); *see generally* Hon. Diarmuid F. O'Scannlain, *A Decade of Reversal: The Ninth Circuit's Record in the Supreme Court Through October Term 2010*, 87 Notre Dame L. Rev. 2165, 2168-76 (2012).

Our responsibility here is clear: under the strictures of AEDPA and Supreme Court precedent, we are bound to uphold the state court's denial of Hurles's due process claim, which is neither contrary to Supreme Court precedent nor based on an unreasonable determination of the facts. Because the majority's decision invalidates a lawfully imposed capital sentence, further frays the (increasingly threadbare) fabric of our AEDPA jurisprudence, and lays the groundwork for other frivolous habeas challenges to trial judges' impartiality, I dissent.

**Footnotes**

\* Charles L. Ryan is substituted for his predecessor, Dora B. Schriro, as Director for the Arizona Department of Corrections. Fed. R. App. P. 43(c)(2).

1 We cite to *Caperton*, the Supreme Court's recent decision regarding judicial bias, throughout this opinion. *Caperton* is not controlling insofar as it announces new clearly established Supreme Court precedent that post-dates the state court decision at issue here, although we do not read *Caperton* to announce a new rule of law that affects our analysis. We refer to *Caperton*, however, where we find its analysis of previously established Supreme Court jurisprudence helpful to our resolution of this matter.

Under Arizona law, the denial of a motion for appointment of a second attorney is not immediately appealable, and so a petitioner

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

seeks review of such a ruling by filing a petition for special action in the Arizona Court of Appeals. *See Hurles I*, 849 P.2d at 1 n.1.

2 Per Arizona Rule of Criminal Procedure 32.4(e), Hurles's first petition for post-conviction relief was assigned to Judge Hilliard. The trial court denied the petition, and the Arizona Supreme Court affirmed. *Arizona v. Hurles*, No. CR-99-0422-PC, Order Denying Petition for Review (Ariz. Jan 7, 2000).

3 Judge Ballinger construed Hurles's motion as a motion for change of judge for cause, which, under Arizona Rule of Criminal Procedure 10.1(a), entitles a defendant "to a change of judge if a fair and impartial hearing or trial cannot be had by reason of the interest or prejudice of the assigned judge."

4 The state trial court's decision is the last reasoned decision on this claim, and therefore the one that we must consider under AEDPA review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 805, 111 S. Ct. 2590, 115 L. Ed. 2d 706 (1991). Because the court did not expressly apply the Supreme Court's decisions considering when a probability of judicial bias rises to a constitutional level, only the "contrary to" prong of § 2254(d)(1) is at issue here. *See Williams v. Taylor*, 529 U.S. 362, 405-07, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000) (describing the situations in which the "contrary to" prong will apply).

5 *See, e.g., Cavazos v. Smith*, 132 S. Ct. 2, 7, 181 L. Ed. 2d 311 (2011) (per curiam) ("Doubts about whether Smith is in fact guilty are understandable. But it is not the job of this Court, and was not that of the Ninth Circuit, to decide whether the State's theory was correct. The jury decided that question, and its decision is supported by the record."); *Cullen v. Pinholster*, 131 S. Ct. 1388, 1410-11, 179 L. Ed. 2d 557 (2011); *Felkner v. Jackson*, 131 S. Ct. 1305, 1307, 179 L. Ed. 2d 374 (2011) (per curiam) (stating that our decision that the state court's determination was an unreasonable determination of the facts was "as inexplicable as it is unexplained"); *Swarthout v. Cooke*, 131 S. Ct. 859, 863, 178 L. Ed. 2d 732 (2011) (per curiam); *Harrington v. Richter*, 131 S. Ct. 770, 785, 178 L. Ed. 2d 624 (2011); *Premo v. Moore*, 131 S. Ct. 733, 740, 178 L. Ed. 2d 649 (2011); *Rice v. Collins*, 546 U.S. 333, 342, 126 S. Ct. 969, 163 L. Ed. 2d 824 (2006) ("The panel majority's attempt to use a set of debatable inferences to set aside the conclusion reached by the state court does not satisfy AEDPA's requirements for granting a writ of habeas corpus."); *Schriro v. Smith*, 546 U.S. 6, 8, 126 S. Ct. 7, 163 L. Ed. 2d 6 (2005) (per curiam) ("[T]he Court of Appeals exceeded its limited authority on habeas review . . . ."); *Middleton v. McNeil*, 541 U.S. 433, 437, 124 S. Ct. 1830, 158 L. Ed. 2d 701 (2004) (per curiam) ("[T]he Ninth Circuit's conclusion failed to give appropriate deference to the state court's decision."); *Yarborough v. Gentry*, 540 U.S. 1, 11, 124 S. Ct. 1, 157 L. Ed. 2d 1 (2003) (per curiam); *Woodford v. Visciotti*, 537 U.S. 19, 20, 123 S. Ct. 357, 154 L. Ed. 2d 279 (2002) (per curiam) (reversing Ninth Circuit's grant of habeas relief because it "exceeded[ed] the limits imposed on federal habeas review by 28 U.S.C. § 2254(d)"); *Early v. Packer*, 537 U.S. 3, 10, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) (per curiam) (admonishing the Ninth Circuit for "repeatedly and erroneously substituting[] the phrase "failed to apply" for the more demanding requirement of § 2254(d)(1): that the decision be 'contrary to' clearly established Supreme Court law" (emphases added)); *see generally* Hon. Diarmuid F. O'Scannlain, *A Decade of Reversal: The Ninth Circuit's Record in the Supreme Court Through October Term 2010*, 87 Notre Dame L. Rev. 2165, 2168-76 (2012).

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

IN THE GALVESTON COUNTY 56th DISTRICT COURT

EXPARTE: THOMAS WAYNE FLORENCE

X APPLICANTS COPY X

PLEASE STAMP FILED/RETURN

COPY A71

10CR1217-83-5

15 FEB 26 AM 9:02

PETITIONER'S MOTION TO RECUSE LONNIE COX, FROM ANY FORM OF INVOLVMENT IN ART. 11.07 10CR1217-83-5 OR PEND-MOTION'S T.R.E. 201 JUDICIAL NOTICE FILED WITH 10CR1217-83-5 ON 2-14-2015

COMES NOW PRO SE, PETITIONER THOMAS WAYNE FLORENCE, ILLEGALLY AND UNLAWFULLY RE-STRAINED OF HIS LIBERTY IN VIOLATION OF U.S. CON. AM. 14 INCARCERATED IN WICHITA-FALLS TEXAS COUNTY AT THE T.D.C.J. JAMES V. ALLRED PLANTATION (UNIT 2101 FM 369 N. IOWA PARK, TEX. 76367.

HEREBY CERTIFY UNDER THE PENALTY OF PER-JURY THAT ON FEBRUARY 14, 2015 HE PLACED SAID MOTION IN THE TDCJ MAILBOX FILED WITH HIS ART. 11.07 10CR1217-83-5 WITH EXHIBITS A1-A84, WITNESS LIST AND A MOTION TO TAKE T.R.E. 201 JUDICIAL NOTICE. SEE, HOUSTON V. LACK 487 U.S. 266, (1988), MAIL BOX RULE.

HEREBY GIVE NOTICE UNDER T.R.C.P. 18 a(a) SEE FN1 EXPARTE SINCLAIR, 324 SW3d 575 (TEX. CRIM. APP. 2011). (TX CODE JUD. COND. CANON 2A)

PETITIONER, THOMAS W. FLORENCE, HEREBY CERT-IFY THAT HIS ALLEGATIONS, CLAIMS AGAINST

FN1 SEE TEX. CODE OF JUDICIAL CON- KLOT CANON 3B (2)

A71

LONNIE COX ARE TRUE AND CORRECT AND THAT SAID MOTION IS BEING FILED IN GOOD FAITH AND THAT SAID BIASNESS IS SUPPORTED BY THE RECORDS IN SAID CAUSE.

SEE, BROSSETTE v. RANZAU, 28 SW3d 235, 238 (TEX. APP. BEAUMONT, 2000). [T]HE JUDGE, (LONNIE COX) NAMED IN THE MOTION TO RECUSE IS NOT PERMITTED TO ACT IN ANY WAY OTHER THAN THE TWO OPTIONS PROVIDED FOR IN T.R.C.P. 18a. [I]F A TRIAL COURT FAILS TO COMPLY WITH THE STRICTURES PROVIDED IN RULE 18a ALL ACTIONS TAKEN BY (LONNIE COX) THE JUDGE SUBSEQUENT TO SUCH VIOLATION IS VOID. SEE ALSO IN RE A.R. 236 SW3d 460, 477 (TEX. APP. DALLAS 2007).

SEE, T.R.C.P. 18b, (2), (A), (B); f(iii).
A TRIAL JUDGE MUST BE RECUSED IF A REASONABLE PERSON KNOWING ALL THE CIRCUMSTANCES INVOLVED, WOULD HARBOR DOUBTS AS TO THE ~~CERTAIN~~ IMPARTIALITY OF (LONNIE COX) THE TRIAL JUDGE. GREEN v. STATE, 374 SW3d 434, 446 (TEX. CRIM. APP. 2012).

SEE, U.S. v. COHAK, 137 F3d 252 (5TH CIR. 1993) OBSTRUCTION OF JUSTICE INVOLVES ANY ATTEMPT TO IMPEDE DUE COURSE OF ADMINISTRATION OF JUSTICE.

THE TEXAS COURT OF CRIMINAL APPEALS STATES THAT T.R.C.P. 18a APPLIES TO HABEAS PROCEEDINGS REGARDING THE RECUSAL OF JUDGES.

2

BEXAR COUNTY DISTRICT CLERK AND DEPUTY
CLERK(S) (HON) DONNA K. MCKINNEY
300 DOLOROSA ST. STE. 217
SAN ANTONIO, TX. 78205

A72(2b)

MARCH 12th 2015

SEE. T.C.C.P. DUTY OF CLERKS 2.21

MOTION OR AND NOTICE TO CLERK, PLEASE
FILE ENCLOSED ART. 11.07 AND EXHIBITS WITH
HON. JUDGE OF 227TH, BEXAR COUNT.

SEE. ART. 11.00. AUTHORIZES MY RIGHT TO
FILE SAID ART. 11.07 (ART. 11.06) IN ANY
COUNTY PRIOR TO INDICTMENT.

SEE. NIX. V. STATE. 65 S.W.3d 664. 668 N.9
TEX. CRIM. APP. 2001), CITING EXPARTE PATTER-
SON, 969 S.W.2d 16. 19 (TEX. CRIM. APP. 1998)
IT IS ONLY WHERE AN INSTRUMENT (CR#
2010-139826 EXHIBITS A1-A9 PRESENTED TO THE
MAGISTRATE (4-22-2010 ILLEGALLY) SEE. EXH-
IBITS A10-A11 RECENTLY UNCOVERED AND PRE-
SENTED TO THE JULY 14, 2010 GRAND JURY. EXH-
IBIT A-39 R.R. VOL. 5 of 9 P.176, 182.188
FAILS TO SATISFY THAT REQUIREMENT THAT IT
IS VOID AND INCAPLE OF INVOKING
MAGISTRATE; GRAND JURY; COURTS JURIS-
DICTION. RENDERS THE (ARREST, INDICTMENT,
JUDGMENT LOCRIA) A COMPLETE NULLITY
AND EXEMPTS THE DEFENDANT FROM

1

A72(2)

# THE RULES OF PROCEDURAL DE-
FAULT. SEE, (AEOPA) CITED IN MERCADEL
v. CAIN, 179 F.3d 271, 274 (5TH CIR. 1999)
CITING GREEN TEST (1-3).

SEE, HERRERA v. COLLINS, 113 S.CT. 853, 860
1993), HABEAS COURTS SIT TO ENSURE THAT
INDIVIDUALS ARE NOT IMPRISONED IN
VIOLATION OF THE CONSTITUTION, IT IS NOT
THE PETITIONER'S INNOCENCE OR GUILT BUT
SOLELY THE QUESTION(S) WHETHER THEIR
CONSTITUTIONAL RIGHTS HAVE BEEN PER-
SERVED. EXPARTE MC CAIN, 67 SW3d AT 801

SEE, BRECHT v. ABRAMSON, 113 S.CT. 1710,
1717 (1993), STRUCTURAL ERRORS.

THE APPLICANT IS ~~CROSSED OUT~~ EXEMPT
FROM THE PROCEDURAL RULES UNDER
ART. 11.07 SEC. 2, BECAUSE THERE WAS
FN1 NEVER SUBJECT MATTER JURISDICTION UPON
THE 122 ND DIST. COURT TO ISSUE THE
7-14-2010 INDICTMENT OBTAINED WITH
VOID DOCUMENTS A1-A9 (ALLEGALLY ON
4-22-2010 BUT SEE, A10-A17).
THEREFORE THE 506TH DIST. COURT ALSO
LACKED SUBJECT MATTER JURISDICTION TO
ENTER ORDERS ( SEE, A39).
APPLICANT HAS ART. 11.06 RIGHT TO HAVE
WRIT FILED/ACTED ON 11.06, NIX. 668. A72(b)

FN1. NIX. 668, SUPRA    2    Thomas F. Lee
                                3-12-15